Christina Chung, State Bar No. 194630
Matthew Goldberg, State Bar No. 240776
Carole Vigne, State Bar No. 251829
THE LEGAL AID SOCIETY –
   EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone: (415) 864-8848
Facsimile: (415) 864-8199

Hillary Ronen, State Bar No. 228606
Rocio Avila, State Bar No. 252719
LA RAZA CENTRO LEGAL, INC.
474 Valencia Street, Suite 295
San Francisco, CA 94103
Telephone: (415) 575-3500
Facsimile: (415) 255-7593

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VILMA SERRALTA, | No. C 08-01427 EDL |
| Plaintiff, | **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO CONDUCT LIMITED EXPEDITED DISCOVERY AND TO PERMIT ENTRY AND INSPECTION OF LAND AND TANGIBLE THINGS** |
| v. | |
| SAKHAWAT KHAN; ROOMY KHAN; and DOES ONE through TEN, inclusive, | [Fed. R. Civ. P. 26(d) and 34(a)(2)] |
| Defendants. | Honorable Elizabeth D. Laporte<br>Hearing Date: May 28, 2008<br>Time: 2:30 p.m.<br>Place: Courtroom E, 15th Floor |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

    I.   INTRODUCTION ........................................................................................................ 1

    II.  ARGUMENT ............................................................................................................... 2

        A.   **Good Cause Exists to Order Limited Expedited Discovery Because of the Risk that Defendants' Property Will be Sold Before Plaintiff Can Gather Key Evidence Through the Normal Discovery Process.** ............................................................ 2

            1.   Expedited discovery is appropriate where there is a risk that key evidence could be lost, which is exactly the situation here because Defendants are attempting to sell their house to a third party. ............................................................................ 2

        B.   **Plaintiff's Expedited Discovery Requests Seek Highly Relevant Information, and Defendants Are Unable to Establish Good Cause for a Protective Order** ...................................................... 8

            1.   Plaintiff's discovery requests are reasonably calculated to lead to admissible evidence because Defendants' residence and the tangible items located inside are the objects that Plaintiff cleaned on a regular basis and constitute physical evidence of Plaintiff's duties and hours worked. ............................................. 8

            2.   Defendants cannot meet their burden of establishing good cause for a protective order under Rule 26(c) because they cannot demonstrate specific harm or prejudice or a reasonable expectation of privacy that outweighs Plaintiff's need for the on-site inspection .......... 10

    III. CONCLUSION ........................................................................................................ 15

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

## **TABLE OF AUTHORITIES**

## CASES

*Banks v. The Interplast Group, Ltd.*,
    2003 U.S. Dist. LEXIS 26916 (S.D.Tex. 2003)..................................................10

*Bell v. State of Maryland*, 378 U.S. 226 (1964)...........................................................12

*Cartwright v. Viking Industries, Inc.*, 2008 WL 413271 (E.D.Cal. 2008)...................3, 4

*Channelmark Corp. v. Destination Prods. Int'l., Inc.*,
    2000 U.S. Dist. LEXIS 9854 (N.D.Ill. 2000)........................................................9

*Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329 (N.D.Cal. 1995)........9

*Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548 (E.D.Cal. 1990).........................14

*Cross v. Tuesday Morning, Inc.*, 2007 WL 2344914 (S.D.Cal. 2007)...........................13

*Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994).......9

*Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003)....11

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D.Cal. 2006)..............................................9

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D.Cal. 1990).......................................11

*Hill v. NCAA*, 7 Cal.4th 1 (1994).................................................................................13, 14

*Interscope Records v. Does 1-14*, 2007 WL 2900210 (D.Kan. 2007)..............................3

*Kerr v. United States Dist. Court for Northern Dist.*, 511 F.2d 192 (9th Cir. 1975).........9

*Leybovich v. City of New York*, 1992 WL 104828 (E.D.N.Y. 1992).............................13

*Long v. U.S. Brass Corp.*, 2004 WL 1725766 (D.Colo. 2004).......................................12

*Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.*,
    2008 WL 954161 (N.D.Ill. April 8, 2008).............................................................12

*Magellan Group Inv., LLC v. First Indigenous Depository Co., LLC*,
    2005 WL 1629940 (N.D.Cal. 2005) .................................................................3, 4

*Metal Building Components, L.P. v. Caperton*,
    2004 U.S. Dist. LEXIS 28854 (D.N.M. 2004) .........................................2, 3, 5, 6

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960)..................................................14

*Monsanto Co. v. Woods*, 2008 WL 821717 (E.D.Mo. 2008) ..................................................2, 5

*Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340 (1978)..................................................9

*People v. Dumas*, 9 Cal.3d 871 (1973)..................................................13, 15

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002)..................11

*Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*,
    204 F.R.D. 675 (D.Colo. 2002) ..................................................2, 3, 5, 6

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004)..................................................11

*Semitool v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D.Cal. 2002)..................2, 3, 4

*Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207 (Fed.Cir. 1987)............9

*Welzel v. Bernstein*, 233 F.R.D. 185 (D.D.C. 2005)..................................................9, 10

**FEDERAL RULES**

Fed.R.Civ.P. 1..................................................2

Fed.R.Civ.P. 23..................................................4

Fed.R.Civ.P. 26(b)(1)..................................................9, 11

Fed.R.Civ.P. 26(b)(2)(C)..................................................9

Fed.R.Civ.P. 26(c).................................................. *passim*

Fed.R.Civ.P. 26(d)..................................................2

Fed.R.Civ.P. 26(f)..................................................7

Fed.R.Civ.P. 30(b)(6)..................................................4

Fed.R.Civ.P 34..................................................13

**OTHER AUTHORITIES**

Americans with Disabilities Act of 1990 ("ADA")..................................................13

California Constitution, Article I, § 1..................................................13

Fair Labor Standards Act of 1938 ("FLSA")..................................................14

Wright & Miller, *Federal Practice and Procedure* § 2035..................................................11

42 U.S.C. § 1983..................................................13

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' Opposition ("Opp.") to Plaintiff's Motion ("Mtn.") is thin on the law and thick on red herrings. Rather than address the merits of the applicable law, Defendants instead rely on groundless assertions or inapposite cases – first, in failing to counter the dispositive factors establishing good cause to expedite discovery in this situation; and second, in arguing without authority that an attenuated right to privacy should bar Plaintiff from conducting discovery that is central to this case.

Defendants' constant refrain is that their residence has no relevance whatsoever to Plaintiff's claims. However, Defendants cannot pretend to ignore the fact their house is the *key piece of physical evidence* in this case. Plaintiff did not merely work *in* Defendants' residence; the house and its contents were the actual physical objects that she cleaned and maintained for Defendants on a daily basis. The physical dimensions and characteristics of Defendants' residence, including the tangible items located in it, defined the very nature of Plaintiff's duties and her long hours of work – which comprise the fundamental dispute in this case.

Good cause exists to grant Plaintiff's narrowly-tailored discovery requests. Plaintiff's need for expedited discovery of key physical evidence in this case – evidence that Defendants are attempting to sell to a third party – substantially outweighs any prejudice such discovery may cause Defendants, including any putative privacy concerns.

Moreover, during the meet and confer on this issue that took place over the course of several days, phone conversations, and e-mail exchanges, Defendants made it clear that they opposed Plaintiff's entry onto their land for purposes of inspection and videography. *See* Declaration of Christina N. Chung ("Chung Decl.") ¶¶ 2-7. Although Plaintiff requested that in lieu of this motion, the parties stipulate that should Defendants accept an offer on their residence, Plaintiff would be allowed to conduct an on-site inspection immediately upon 72 hours' notice of the acceptance, Defendants refused. Chung Decl. ¶ 7. Because the parties are already at an impasse, resolving the dispute now would ultimately advance the just and speedy determination

1

of this action and serve "the interests of justice" as contemplated under Rule 26(d). *Semitool v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *see also* Fed.R.Civ.P. 1.

## II.    ARGUMENT

### A.    Good Cause Exists to Order Limited Expedited Discovery Because of the Risk that Defendants' Property Will be Sold Before Plaintiff Can Gather Key Evidence Through the Normal Discovery Process.

Defendants' argument boils down to two assertions: (1) case law does not support Plaintiff's need for expedited discovery [Opp. at 4-6]; (2) exigent circumstances do not exist because the Defendants' residence is not under contract nor is there an outstanding offer on the property [Opp. at 5, 6]. Neither has any merit.

#### 1.    Expedited discovery is appropriate where there is a risk that key evidence could be lost, which is exactly the situation here because Defendants are attempting to sell their house to a third party.

Tellingly, Defendants ignore those cases finding good cause where the *potential* existed that physical evidence could be lost or transferred, due to the passage of time alone. [Mtn. at 6-7.] See *Monsanto Co. v. Woods*, No. 4:08-CV-00137 CEJ, 2008 WL 821717, at *1-2 (E.D.Mo. Mar. 25, 2008); *Metal Building Components, L.P. v. Caperton*, No. CIV-04-0256 MV/DJS, 2004 U.S. Dist. LEXIS 28854, at *4-5 (D.N.M. Apr. 2, 2004); *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.RD. 675, 676 (D.Colo. 2002).

What mattered to the courts in *Monsanto*, *Metal Building Components*, and *Pod-Ners* was not the *actual* loss, transfer, or destruction of the physical evidence at issue, but rather the *risk* that the evidence, a commodity, could be sold to a third party. In fact, expedited discovery was ordered precisely so that plaintiffs could gather evidence *before* it was actually lost, transferred, or destroyed. Indeed, in *Metal Building Components*, the plaintiff requested an expedited inspection of defendant's property to photograph, test and sample building products that allegedly belonged to plaintiff. *See* 2004 U.S. Dist. LEXIS 28854, at *4-5. Emphasizing the *risk* that "physical goods...can be easily sold or otherwise disposed or concealed," the court ordered expedited discovery even though a preliminary injunction was in effect that prohibited defendant from actually disposing of plaintiff's property, and therefore arguably prevented the actual loss

2

of evidence from occurring. *Id.*, at *11-12 (emphasis added). *See generally Semitool*, 208 F.R.D. at 278 (granting expedited entry onto defendants' business premises for purposes of inspection, videotaping, and photography of defendants' cleaning system, even where loss or destruction of evidence was not at issue).

Instead of squarely addressing these cases, Defendants miss the mark by stating that good cause has been found in cases involving the "imminent unavailability" of a witness, "ongoing" copyright or patent infringement violations, challenges to personal jurisdiction, or preliminary injunctions.[1] [Opp. at 4-6.] Plaintiff does not disagree. Such cases, however, do not detract from the fact that "[s]ufficient good cause [for expedited discovery] can also exist 'where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation.'" *Interscope Records v. Does 1-14*, Slip Copy, 2007 WL 2900210, at *1 (D.Kan. Oct. 1, 2007) (noting that good cause exists not only in cases involving infringement claims and unfair competition, but also where the destruction or loss of evidence was at issue) (internal citation omitted); *see also Metal Building Components*, 2004 U.S. Dist. LEXIS 28854, at *11 (commenting that "[g]ood cause is frequently found…when physical evidence may be consumed or destroyed with the passage of time….") (referencing *Pod-Ners*, 204 F.R.D. at 676).

Additionally, Defendants devote much of their energy to a discussion of two cases of no relevant import, *Magellan Group Inv., LLC v. First Indigenous Depository Co., LLC*, and *Cartwright v. Viking Industries, Inc.*, where expedited discovery was denied. While Defendants assert that these cases present stronger arguments than the situation at bar for the need to conduct

---

[1] Pointing to copyright infringement and permanent injunction cases, Defendants proceed to conclude that good cause should not be found here because "this case does not involve ongoing wrongdoing that can only be addressed through immediate intervention." [Opp. at 6:6-7.] Defendants appear to imply that "ongoing harm" is a prerequisite to find good cause. To the extent that Defendants thus attempt to import a preliminary injunction analysis into the good cause standard, that argument has been rejected by numerous courts in this Circuit. *See, e.g., Semitool*, 208 F.R.D. at 276 (declining to adopt preliminary injunction standard); *see also* Mtn. at 5 (citing line of cases adopting good cause standard).

3

expedited discovery [Opp. at 5:11-21, 6:21-24], the opposite is true. In neither case was the risk of loss or destruction of physical evidence at issue.[2]

Indeed, if anything, *Magellan* and *Cartwright* support Plaintiff's argument, as examples of cases where good cause was not found because the discovery requested was arguably overbroad and free-ranging (a 30(b)(6) deposition and discovery of class certification issues, respectively), in contrast to cases where expedited discovery was limited to *existing physical evidence*. Compare *Magellan Group Inv., LLC v. First Indigenous Depository Co., LLC*, No. C 05-01994 JSW, 2005 WL 1629940, at *1-2 (N.D.Cal. July 8, 2005) and *Cartwright v. Viking Industries, Inc.*, No. 2:07-CV-02159-FCD-EFB, 2008 WL 413271, at *7 (E.D.Cal. Feb. 12, 2008), with *Semitool*, 208 F.R.D. at 277 (finding good cause where discovery requested was

---

[2] As part of their contention that the sale of their residence is merely "hypothetical," Defendants imply that *Magellan* is a case in which loss of *evidence* was genuinely at stake, when in fact it was not. [Opp. at 6, stating that plaintiff had a "genuine concern about the status of their collateral while defendant was in financial distress."] *Magellan* involved an alleged default on a loan that was secured by collateral pursuant to a security agreement between the parties. See *Magellan Group Inv., LLC v. First Indigenous Depository Co., LLC*, No. C 05-01994 JSW, 2005 WL 1629940, at *1 (N.D.Cal. July 8, 2005). The plaintiff corporation in *Magellan* requested an expedited 30(b)(6) deposition to determine the extent, condition, and location of the collateral. See *id.*, at *2. Unlike the situation here, in *Magellan* the collateral itself did not constitute key physical evidence of the legal dispute (the default) but was merely security for the loan. In other words, whether the collateral was sold or not would have no impact on plaintiff's ability to prove its legal claim against defendant, but instead related to the remedy available. In fact, the plaintiff made no showing why monetary damages could not properly compensate it if the collateral were sold. See *id.*, at *1. Moreover, the court denied the expedited request *without prejudice* to allow plaintiff to resubmit its request upon a showing of good cause, and therefore did not rule out the appropriateness of expedited discovery altogether. See *id.*, at *2.

Similarly, *Cartwright* is inapposite. Defendants speciously contend that because the plaintiffs in *Cartwright* were "at least able to cite" to Federal Rule 23 to support their argument to expedite discovery, their need for early discovery was somehow compelling. [Opp. at 6:21-22.] But Defendants compare apples to oranges. Defendants overlook the significance of the fact that *Cartwright* was a complex class action suit where plaintiffs sought leave to conduct expedited discovery of *class certification issues* and relied *solely* on Rule 23's requirement that class certification be determined "[a]t an early practicable time." See *Cartwright v. Viking Industries, Inc.*, No. 2:07-CV-02159-FCD-EFB, 2008 WL 413271, at *7 (E.D.Cal. Feb. 12, 2008). The court held that Rule 23 "*standing alone*" did not establish good cause for expedited discovery because class certification could still occur according to Rule 23 in the normal course of litigation. See *id.* (emphasis added). Thus, unlike the exigent situation here, *Cartwright* did

4

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

limited to "existing documents and a physical inspection" and "entail[ed] not…a free ranging deposition for which… [d]efendants may not have had sufficient time or information with which to prepare"), *Monsanto*, 2008 WL 821717, at *2 (finding good cause where plaintiffs "narrowly tailored their request to a limited set of documents and physical samples"), and *Pod-Ners,* 204 F.R.D. at 676 (finding good cause where plaintiff's requests for expedited discovery were "reasonable in scope" and plaintiff sought inspection of property and things that "already exist," as opposed to interrogatory answers).

        2.    <u>Exigent circumstances exist because of the risk that Defendants' residence could be transferred into the hands of a third party in as little as 30 days or less, upon close of escrow.</u>

To argue that exigent circumstances do not exist, Defendants engage in sophistry: first, by asserting that the concern should be whether evidence will actually "vanish" and second, by casting the sale of their residence as merely "hypothetical." [Opp. at 6.]

First, Defendants improperly focus on the unsubstantiated notion that real property should not be the subject of expedited discovery because it "represents the opposite example of evidence likely to vanish… or a commodity that will disappear on the open market…." [Opp. at 6:3-5.] This is a red herring. The dispositive point in expedited discovery cases dealing with loss of evidence is not the literal disappearance of the evidence, but the risk of its *inaccessibility* – because the evidence is subject to sale and could be transferred as a commodity to a third party. *See Metal Building Components*, 2004 U.S. Dist. LEXIS 28854, at *10-13 (finding good cause because "physical goods… can be easily sold or otherwise disposed or concealed"); *Pod-Ners,* 204 F.R.D. at 676 (granting expedited discovery request because the beans "at issue are commodities and subject to sale, resale, and consumption or use with the passage of time"); *Monsanto*, 2008 WL 821717, at *2 (finding good cause because "as time passes, the likelihood of discovering evidence relevant to their claims will decrease, due to intentional destruction or transfer of evidence by defendant...").

---

not involve the risk of loss or destruction of physical evidence, but instead the management of complex class certification issues.

5

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

Certainly, Defendants' house is as much a commodity packaged for sale as the beans in *Pod-Ners* or the building materials in *Metal Building Components*, a commodity that can analogously "disappear on the open market" [Opp. at 6:4-5] and become inaccessible in the hands of a third party. Moreover, Defendants conveniently ignore the fact that tangible items located on their property that Plaintiff regularly cleaned may also easily "vanish" or "disappear" if disposed of, concealed, or sold.[3]

Second, despite their attempts to distract from the plain and simple facts, Defendants cannot deny that they are indeed trying to sell their house with the assistance of a top realtor and numerous on-line advertisements [Chung Decl. ¶ 9], and that an offer and acceptance could occur any day. Far from a "reasonably lengthy process" as Defendants would have it [Opp. at 6:19], it is well known that escrow periods (*i.e.*, the period between acceptance of a purchase offer and the time the buyer takes possession of the house) are typically between 30 to 45 days, and can be shorter in duration if the parties agree.[4] Not only could the physical structure of the house be transferred to a third party within this relatively short span of time, but the tangible items inside the house (items which Plaintiff regularly cleaned) could be moved, packed up, sold, or discarded even sooner.

Thus, the present situation – involving the *risk* of transfer of evidence to a third party – is exactly the type of situation contemplated by courts that have allowed early discovery *before* the

---

[3] On this point, Defendants cannot have it both ways. Defendants have curiously argued that Plaintiff's motion is at once made too early *and* too late. On the one hand, Defendants assert that too much time has elapsed since Plaintiff's employment with Defendants to claim any exigent need to inspect the house "as it *was* at the time of her employment." [Opp. at 6:9 (emphasis added)]. But Defendants' contention actually supports Plaintiff's position that an inspection should be allowed as soon as possible, since by Defendants' own logic, the passage of each day means the growing loss of evidence. On the other hand, Defendants stop short of actually stating that the house's interior features have been altered since Plaintiff's employment, thereby further bolstering Plaintiff's argument that an on-site inspection would still reveal evidence of tangible items that are highly relevant to Plaintiff's claims.

[4] *See, e.g.*, http://www.expercent.com/tools/q&a.asp ("The escrow period can be any length both buyer and seller agree upon."); http://www.realadvisor.com/buyers/escrow.jsp ("An average escrow period runs between 30 to 45 days, although it can be shorter.").

6

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

actual loss of evidence occurs. However, by arguing that the need for early discovery would only be "genuinely exigent" if Defendants' house is currently in escrow or its sale imminent due to an outstanding offer [Opp. at 4:26-27, 6:15-17], Defendants are essentially asking Plaintiff, and this Court, to accept without basis that no offers will be forthcoming any time soon, or to gamble with the unpredictable timing of third party buyers and the housing market. To put it differently, Defendants simply want Plaintiff to wait until it may be too late to collect evidence central to this case.

Moreover, neither of Defendants' proffered alternative courses of action – waiting for 72 hours' notice of an actual offer and acceptance [Opp. at 6:17-18], or waiting for normal discovery to proceed [Opp. at 10] – mitigates against the risk of loss of key evidence in this case. Waiting for an actual offer and acceptance jeopardizes Plaintiff's ability to conduct an on-site inspection before the close of a typical 30- to 45- day escrow period, given the time it would take to resolve a 35-day noticed motion to compel (necessitated because Defendants have made clear that Plaintiff should not be allowed entry onto their land [Chung Decl. ¶¶ 4, 7]), or even a motion on shortened time. Similarly, waiting for normal discovery to proceed would also involve the same risk of loss of evidence. Factoring in the regular 30-day period to respond to discovery, coupled with a motion to compel, would mean that this issue may not be resolved until several months from now. In the interim, an offer could be accepted and escrow could close. Plaintiff could scramble and move for an order shortening time on the discovery response and on the motion to compel, but the transfer of ownership would already be advancing along a separate timeline that neither Plaintiff, nor this Court, can control.

Finally, it would not ultimately serve the speedy and just determination of this case to allow Defendants to hide behind the 26(f) conference that has yet to occur as of this briefing. Discussing the overall scope of discovery and engaging in the "give and take" of the Rule 26(f) conference [Opp. at 10:11-12] would not have resolved this dispute or made it any less central. Indeed, the parties have already extensively met and conferred on this issue. Chung Decl. ¶¶ 2-7. During the meet and confer, Plaintiff's counsel informed defense counsel that exigent circumstances existed because Defendants' residence was currently on the market and could be

7

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

sold to a third party before Plaintiff could conduct an on-site inspection through the normal discovery procedures and timeline. Chung Decl. ¶ 3. Plaintiff's counsel also explained that the exigency of the situation was not limited to whether the house was currently in escrow or its sale was imminent, since a third party buyer could submit an offer at any moment. Chung Decl. ¶¶ 6, 8. Upon 72 hours' notice of an acceptance, escrow would already be open and ownership of the house would be in the process of changing hands. Therefore, Plaintiff's counsel explained to defense counsel that provision of such notice was not sufficient to address Plaintiff's concern, without also allowing Plaintiff to conduct an on-site inspection immediately upon 72 hours' notice of an offer and acceptance. Chung Decl. ¶ 8. Plaintiff requested that Defendants stipulate to the foregoing compromise, but Defendants refused. Chung Decl. ¶¶ 6-7. At no time during the meet and confer did Defendants offer any other alternatives to Plaintiff's request.[5] Chung Decl. ¶¶ 2-7.

Plaintiff maintains it is her right to inspect Defendants' property, and Defendants contend otherwise. Delaying the ultimate resolution of this issue will not serve the interests of justice, particularly in light of the fact that delay may also result in Plaintiff's inability to access key evidence in this case.

### B. Plaintiff's Expedited Discovery Requests Seek Highly Relevant Information, and Defendants Are Unable to Establish Good Cause for a Protective Order.

In an attempt to counter Plaintiff's point that her expedited discovery requests merely seek information to which she would be entitled through normal discovery procedures, Defendants make two arguments: (1) Plaintiff's discovery requests are not relevant; and (2) Defendants are entitled to a protective order under Federal Rule 26(c). Both arguments fail.

1. Plaintiff's discovery requests are reasonably calculated to lead to admissible evidence because Defendants' residence and the tangible items located inside are the objects that Plaintiff cleaned on a regular basis and constitute physical evidence of Plaintiff's duties and hours worked.

---

[5] Defendants mention other potential sources of information (such as a floor plan and existing photos) for the first time in their brief. Such a tactic calls into question the motive behind their eleventh-hour suggestion, which at any rate does not extinguish Plaintiff's right to seek the type and category of discovery she deems appropriate to marshal evidence in support of her claims.

Fed.R.Civ.P. 26(b)(1) provides in relevant part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.[6]

This rule has been broadly construed in favor of permitting discovery and, indeed, creating a presumption of discoverability even where doubts may exist.[7] For instance, in *Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340, 351 (1978), the Supreme Court found discoverable "any matter than bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *See also Kerr v. United States Dist. Court for Northern Dist.*, 511 F.2d 192, 196 (9th Cir. 1975) ("[T]he question of relevancy is to be more loosely construed at the discovery stage than at the trial.") (internal citation omitted); *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) ("Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth.") (internal citation omitted).

It is scarcely unusual for entry upon land to be permitted in employment-related actions in order to conduct needed and relevant discovery. For example, in *Welzel v. Bernstein*, 233 F.R.D. 185, 186-87 (D.D.C. 2005), a Title VII gender discrimination and retaliation case, the plaintiff was permitted entry into defendants' corporate headquarters to "obtain demonstrative evidence of how it was that her treatment by defendants was exacerbated by virtue of the office's

---

[6] While all discovery is subject to the limitations imposed by Fed.R.Civ.P. 26(b)(2)(C), none of these limitations apply here. Appropriately, Defendants do not advance such arguments in their Opposition.

[7] *See, e.g., Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) ("Where relevance is in doubt, the rule [26(b)(1)] indicates that the court should be permissive"); *see also Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D.Cal. 2006); *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335 (N.D.Cal. 1995); *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99 C 214, 2000 U.S. Dist. LEXIS 9854, at *6 (N.D.Ill. July 7, 2000).

configuration. . . . [P]laintiff may argue, for example, that she suffered heightened emotional distress by virtue of the fact that the office had glass walls and that other employees were keenly aware of how she was being treated." *Id.* at 187. Similarly, in *Banks v. The Interplast Group, Ltd.*, NO. V-02-92, 2003 U.S. Dist. LEXIS 26916, at *1 (S.D.Tex. Apr. 16, 2003), a sexual and racial harassment case, the court permitted the plaintiff to enter and inspect defendant's plant, reasoning that since the plaintiff had to prove that the employer knew or should have known of the alleged harassment, evidence of the physical layout of the workplace and the proximity of plaintiff's office to his supervisors' offices was relevant. *Id.*, at *3. Quite appropriately, the court observed that "photographs can make the presentation of evidence on physical distances and locations much clearer and more concise than verbal testimony alone and can easily resolve factual disputes regarding these matters." *Id.*

In the present case, the presumption in favor of discovery plainly counsels in favor of Plaintiff's request, particularly inasmuch as Defendants' residence was in fact her workplace. Indeed, their residence is *the* singular piece of physical evidence regarding her duties, since it defined those duties and her hours of work as a practical matter.[8] To the extent that Plaintiff's job required her to clean and maintain Defendants' residence [*See* Complaint ¶¶ 14-16, 18-21, 23; Docket No. 1], its nature, size, and physical characteristics are unavoidably at issue in this litigation. Indeed, Plaintiff's counsel has conferred with expert consultants who have stated that an on-site inspection would be critical in collecting information to corroborate the nature of Plaintiff's duties and her hours of work. Chung Decl. ¶ 10. Plaintiff's request for entry and inspection patently satisfies the requirements of Fed.R.Civ.P. 26(b)(1).

> 2. <u>Defendants cannot meet their burden of establishing good cause for a protective order under Rule 26(c) because they cannot demonstrate specific harm or prejudice or a reasonable expectation of privacy that outweighs Plaintiff's need for the on-site inspection.</u>

---

[8] If anything, Plaintiff's entitlement to discovery is even more compelling than in either *Welzel* or *Banks*. In those cases, discovery was permitted inasmuch as certain discriminatory actions happened to occur in the workplaces at issue. Here by comparison, Defendants' residence was the very object of Plaintiff's duties as Defendants' housekeeper, and those duties cannot be understood without reference to its nature, size, and physical characteristics.

10

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

Although Defendants do not formally move for a protective order under Fed.R.Civ.P. 26(c), their apparent argument that they are entitled to a blanket prohibition against the inspection sought by Plaintiff is tantamount to such a request. [Opp. at 7.] Defendants lack any legal or factual foundation for a protective order, however, because they are unable to meet the good cause standard of demonstrating specific harm or prejudice, and their invocation of a right to privacy is of no avail.

"The burden is upon the party seeking [a Rule 26(c) protective order] to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). A showing of harm or prejudice must be expressed for each particular aspect of the discovery request. *See Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citing *Phillips* at 1210-11). "The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citing Wright & Miller, *Federal Practice and Procedure* § 2035). Finally, and importantly, the Rule 26(c) analysis requires that a protective order is appropriate only where the need for the discovery is outweighed by its harms. *Rivera*, 364 F.3d at 1063-64, 1066.

In this case, Defendants have stated only that the proposed inspection will cause them "embarrassment and stress" [Opp. at 7:3], and that it will somehow "serve to embarrass them in front of their neighbors."[9] [Opp. at 7:27.] No other allegations of harm are made. These are precisely the sort of "stereotyped or conclusory" claims of injury that are insufficient to justify a protective order – particularly where, as here, Plaintiff has proposed a narrowly tailored inspection and, moreover, is amenable to strict limits as to whom the products of the inspection may be disclosed. Furthermore, Defendants fail to cite any case law in support of their

---

[9] It is difficult to understand how the entrance upon Defendants' premises of a small group of individuals, accompanied by a videographer and spending most of their time inside the residence, would "serve to embarrass them in front of their neighbors."

11

generalized claims of harm. Although Defendants refer to *Long v. U.S. Brass Corp.*, No. Civ.A. 03-B-968BNB, 2004 WL 1725766, at *2-3 (D.Colo. June 29, 2004), for the proposition that entry on land was denied under Rule 26(c), the case is inapposite because it involved trade secrets, an extremely particularized body of law not applicable here.

Defendants go on to suggest that Plaintiff's request to inspect their residence constitutes an impermissible invasion of federal and state privacy rights. This suggestion is specious and should be rejected.

First, although Defendants contend that they have a "well-defined constitutional right to privacy in their home under . . . federal law," they fail to identify the basis for any such federal privacy right in the case at bar, let alone one so absolute in its scope as to trump the Rule 26(c) balancing test, as they imply. Indeed, the two federal cases Defendants cite in this connection are entirely inapposite.

In *Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.*, Nos. 03 C 5311, 03 C 4844, 2008 WL 954161, at *1 (N.D.Ill. Apr. 8, 2008), the district court rejected plaintiff's attempt (misleadingly styled, as the district court noted, as a "*motion for inspection*") to enter the home of the defendant corporation's owners with U.S. Marshals in order to "seize any cash, checks, or other negotiable instruments [and] all of their financial and accounting records." Not only was the facially overreaching discovery request in *Lorillard* completely different from that at issue here, but the court moreover did not address any privacy issues; it only made the unremarkable determination that Rule 34 did not allow "a party's counsel, under the auspices of the court and with the compulsion of the United States Marshals, to conduct searches and seizures" as a substitute for civil discovery. *Id.*, at *2. And the language quoted from *Bell v. State of Maryland*, 378 U.S. 226 (1964) – taken not from the majority opinion but, instead, from Justice Douglas's partial concurrence – is presented entirely out of context in that Justice Douglas in fact *rejected* a segregated restaurant's argument that its asserted "privacy rights" permitted it to violate the rights of African-Americans by excluding them from its premises. *Id.* at 253-60 (Douglas, J., concurring).

12

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

In contrast to Defendants' cases, Plaintiff submits that *Leybovich v. City of New York*, No. 89 CV 1877, 1992 WL 104828 (E.D.N.Y. April 23, 1992), is on point. In *Leybovich*, an action under 42 U.S.C. § 1983, defendant police officers were permitted to enter plaintiffs' home to photograph and measure it under Rule 34 because the discovery requested was relevant to their defense that they had previously illegally entered and searched the premises. *See id.*, at *1. Plaintiffs argued that the request violated their right to privacy under the Fourth Amendment. *See id.* In granting the inspection of plaintiffs' residence, the court declared: "It is absurd to suggest that a discovery order permitting entry into a residence under Rule 34 necessarily violates the Fourth Amendment." *Id.*

Next, Defendants' assertion of a California state right to privacy rests solely on a citation to Article I, § 1 of the California Constitution and to a footnote in a criminal case, *People v. Dumas*. Neither citation supports their argument.

In *Hill v. NCAA*, 7 Cal.4th 1, 39, 40 (1994), the California Supreme Court held that in order to establish an unconstitutional invasion of a privacy right under Article I, § 1, a party is required to demonstrate (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct constituting a serious invasion of privacy. Here, assuming *arguendo* that Defendants have a legally protected privacy interest in their residence, Defendants have nonetheless failed to demonstrate a "reasonable expectation of privacy," especially with respect to Plaintiff, who lived and worked in that residence for over four years.[10]

---

[10] The fact that Defendants' residence is no longer Plaintiff's workplace is irrelevant. *See, e.g., Cross v. Tuesday Morning, Inc.*, No. 07cv0213 BEN (AJB), 2007 WL 2344914, at *1 (S.D. Cal. Aug. 15, 2007), an ADA case in which the plaintiffs sought to inspect a restroom, formerly open to the public, that had since been closed to the public. The district court granted plaintiffs' Rule 34 request, noting that "[t]he Court need not address the parties [sic] arguments concerning the [sic] whether the restroom is closed to the public or the effect of closing the restroom to the public, because the fact is that the parties do not contest that the restroom was open to the public when Plaintiff visited Defendants' store. As such, Plaintiff is entitled to conduct a Rule 34 inspection of the restroom, because it is relevant to the claims set forth in Plaintiff's complaint. Defendants' subsequent decision to close the restroom and Defendants' contention that the Plaintiff already has sufficient evidence to support her claims is without merit and does not in any way effect [sic] Plaintiff's right to the requested discovery." *Id.*, at *2.

*See* Complaint ¶ 14. The additional fact that the residence is advertised for sale (not only in California, but also in other states including Nevada and Texas) and available for inspection by prospective buyers,[11] as well as depicted in photographs on numerous realty websites [Chung Decl. ¶ 9], further weakens any claim Defendants could make that their residence is nonetheless somehow off-limits when it comes to civil discovery.[12]

Even if Defendants were able to demonstrate the presence of all three of the aforementioned *Hill* factors, it would still be incumbent upon them to demonstrate that they outweighed Plaintiff's legitimate interest in being able to prove up her claims against them:

> "Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest. Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities. . . . Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests."
> *Hill*, 7 Cal.4th at 38.

Here, it can scarcely be disputed that Plaintiff's legitimate need to obtain discovery relating to Defendants' residence is both "legally authorized" and "socially beneficial." *Id*. Were discovery requests such as Plaintiff's to be defeated as a matter of course by employers asserting a right to privacy over a plaintiff's very place of work, the strong public policy in favor of private actions to enforce the Fair Labor Standards Act in such settings would be significantly frustrated.[13]

---

[11] In this respect, Defendants' plaint that "[t]he prolonged presence of several individuals in their home will be invasive and stressful for Defendants" [Opp. at 7:26-27] may, at best, be exaggerated.

[12] In any event, the courts have recognized that any expectation of privacy must be tempered by the fact that "litigation has a tendency to make public the sort of information that individuals otherwise would prefer to keep private. Public disclosure in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant [sic] on accuracy and truth. . . . A balance must be struck." *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D.Cal. 1990).

[13] *See, e.g., Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) ("Congress did not seek to ensure compliance [with the FLSA] through continuing detailed federal supervision

14

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY

Finally, Defendants' citation to *People v. Dumas*, 9 Cal.3d 871, 882, fn. 8 (1973), is misplaced inasmuch as *Dumas* was a criminal case; the "maximum protection" the court referred to relates to protection against unreasonable searches and seizures by the police, and Fourth Amendment principles are simply inapplicable here. In any event, the intrusion complained of in *Dumas* was a forcible entry into defendants' apartment for search and seizure purposes without first "knocking and announcing." *Id.* at 877. Nothing in the case suggests that a private residence is somehow *per se* immune from civil discovery.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be granted.

DATED: May 22, 2008                    Respectfully submitted,

Christina Chung
Matthew Goldberg
Carole Vigne
The LEGAL AID SOCIETY
  --EMPLOYMENT LAW CENTER

Hillary Ronen
Rocio Avila
LA RAZA CENTRO LEGAL, INC.


By /S/ CHRISTINA CHUNG
   CHRISTINA CHUNG
   Attorneys for Plaintiff

---

or inspection of payrolls. Rather it chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied.")

---

15

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
MOTION FOR EXPEDITED DISCOVERY