1  Christopher Ho, State Bar No. 129845
   Christina N. Chung, State Bar No. 194630
2  Carole Vigne, State Bar No. 251829
   The Legal Aid Society – Employment Law Center
3  600 Harrison Street, Suite 120
   San Francisco, CA 94107
4  Telephone (415) 864-8848
   Facsimile (415) 864-8199
5
6  Hillary Ronen, State Bar No. 228606
   Rocío Alejandra Avila, State Bar No. 252719
7  LA RAZA CENTRO LEGAL, INC.
   474 Valencia Street, Suite 295
8  San Francisco, CA 94103
   Telephone: (415) 575-3500
9  Facsimile: (415) 255-7593
10
   Attorneys for Plaintiff
11 VILMA SERRALTA

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14 VILMA SERRALTA,                    ) No.  C 08-01427 CW
                                      )
15                      Plaintiff,    )
                                      ) **PLAINTIFF'S NOTICE OF MOTION AND**
16        v.                          ) **MOTION TO COMPEL PRODUCTION**
                                      ) **OF ORIGINAL DOCUMENTS**
17 SAKHAWAT KHAN; ROOMY KHAN; and     )
   DOES ONE through TEN, inclusive,   ) **[Fed.R.Civ.P. 34 and 37]**
18                                    )
                      Defendants.     )
19                                    ) Date & Time:  [To be set]
                                      ) Courtroom: 2 (4th Floor)
20                                    ) Judge: Honorable Claudia Wilken
                                      )
21                                    )
                                      )
22 _____ )

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   MEMORANDUM OF POINTS AND AUTHORITIES........................................................1

3       I.   STATEMENT OF ISSUES .......................................................................1

4       II.  STATEMENT OF FACTS .......................................................................3

5            A.   Plaintiff's Outstanding Requests for Production..................................3

6            B.   Defendants Produced Copies of Plaintiff's Canceled Checks *Seven*
                  *Months Late.* ...............................................................................4
7

8            C.   Defendants Produced a Copy of "Khan 000308" *Eight Months Late*............5

9            D.   The Documents at Issue – Original Checks and the First Copy of
                  "Khan 308" – Are Located in Defendants' Residence.............................8

10           E.   Defendants and Their Counsel Have Engaged in Questionable
                  Tactics to Hide Key Evidence in This Case. .....................................10
11

12      III. ARGUMENT .......................................................................................13

13           A.   The Machinations of Defendants and Their Counsel Have Obstructed
                  Plaintiff's Timely Inspection of Key Evidence..................................13

14           B.   Plaintiff Has Been Prejudiced By Defendants' Below-Board Conduct. .......16

15      IV.  CONCLUSION ....................................................................................17

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bryant v. Mattel, Inc.*, 2007 WL. 5432962 *4 (C.D.Cal. 2007)....................................................13

## FEDERAL STATUTES

Fed.R.Civ.P. 26(b)(1) ....................................................................................................13

Fed.R.Civ.P. 34 ......................................................................................................1, 3

Fed.R.Civ.P. 34(a) ........................................................................................................13

Fed.R.Civ.P. 34(b)(2)(A) ...........................................................................................13

Fed.R.Civ.P. 37 ..............................................................................................................3

Fed.R.Civ.P. 37(a)(3)(B)(iv) ...................................................................................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO COMPEL PRODUCTION OF ORIGINAL DOCUMENTS
NO. C 08-01427 CW

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

      PLEASE TAKE NOTICE that at a date and time to be determined, Plaintiff hereby makes this motion pursuant to Federal Rules of Civil Procedure 34 and 37 for an Order compelling Defendants to immediately produce the originals of documents responsive to Plaintiff's discovery requests propounded on June 18, 2008.  Plaintiff also moves for an Order that Defendants and their attorneys of record pay to the moving party reasonable costs and attorneys' fees incurred by Plaintiff in connection with this motion.  Plaintiff's motion for fees and costs is filed concurrently herewith.  Plaintiff's Motion for an Order Shortening Time is also filed concurrently herewith.

      Plaintiff's Motion to Compel is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations filed in support thereof, Plaintiff's Requests for Production (copies of which are attached hereto and incorporated herein), and on any other matters that may be presented at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     STATEMENT OF ISSUES

      This motion is necessitated by the highly questionable tactics of Defendants and their counsel that have denied Plaintiff a full and fair opportunity to examine original documents responsive to Plaintiff's written discovery requests prior to the expiration of the current expert disclosure cut-off of April 20, 2009.

      At sole issue are two discrete categories of documents – namely, (1) the clearest, best available copy of a one-page document of suspect origin, and (2) the originals of canceled checks paid to Plaintiff – that Plaintiff's expert consultant, a forensic document examiner, believes may reveal evidence important to his analysis and that, in turn, Plaintiff believes may indicate that Defendants have engaged in document fraud.  *See* Declaration of Christina Chung in Support of Plaintiff's Motion to Compel Production of Original Documents and Motion for an Order Shortening Time ("Chung Decl.") ¶ 14; Declaration of David S. Moore in Support of Plaintiff's Motion to Compel Production of Original Documents and Motion for an Order Shortening Time ("Moore Decl.") ¶¶ 2,10.

      Rather than comply with Plaintiff's legitimate outstanding requests to inspect these

documents prior to the expert disclosure deadline, Defendants and their counsel have instead chosen to resist producing this highly relevant evidence to Plaintiff. Indeed, on April 8, 2009, Defendants' counsel initially represented that Defendants were in the process of "diligently working to collect these original documents," only to contradict that statement *the next day* by informing Plaintiff's counsel that the documents were actually "not currently available" because Defendants were "out of town" and that a defense expert hastily retained after the fact would "not be able to return the original documents until April 27th *at the earliest*" (emphasis added). Chung Decl. ¶¶ 23-24. In other words, Defendants have refused to turn over documents that Plaintiff believes may indicate their illegal conduct until *after* the expert disclosure deadline has expired.

On April 7-10 and 13, Plaintiff's counsel met and conferred with Jonathan Hicks of Hoge Fenton Jones & Appel, counsel for Defendants. Chung Decl. ¶¶ 17-29. Plaintiff's counsel asked if Defendants would agree to produce the documents requested by April 10 or anytime prior to April 27, but Defendants refused these requests. Chung Decl. ¶¶ 17-24. Defendants instead represented that they would stipulate to an extension of the expert disclosure date. Chung Decl. ¶¶ 25. Given Defendants' conduct and refusal to produce the documents before the expert disclosure deadline on April 20, Plaintiff's counsel agreed in the spirit of compromise that it would be acceptable to jointly request an extension of this deadline, but informed Mr. Hicks that a mere stipulation to that effect would not be sufficient because a discretionary Court Order was required to modify the deadlines. Chung Decl. ¶ 25. As such, Plaintiff's counsel informed Mr. Hicks that a modification of the Case Management Order could not be relied upon as certain by Plaintiff, that the timing of Defendants' production was at issue because Defendants have refused to produce documents for examination by Plaintiff's expert until *after* expert reports must be disclosed, and that Plaintiff was therefore left with no meaningful option but to file the instant motion. Chung Decl. ¶ 25. Plaintiff's counsel thereupon requested that Defendants stipulate to hearing the motion on shortened time, which Mr. Hicks would not agree to do. Chung Decl. ¶ 28.

In addition, the parties further discussed but could not agree upon a stipulation to extend the expert disclosure and expert discovery completion dates. Chung Decl. ¶ 26. Plaintiff requested a stipulation that the expert disclosure cut-off would occur 10 court days after April 27 or the date

Defendants are ordered to produce the documents requested, whichever date is earlier.  Accordingly, Plaintiff further requested that Defendants stipulate to a modification of the expert discovery cut-off date, to occur 45 days[1] after the expert disclosure deadline.  Plaintiff did not believe any other modification to the case timeline was necessary.  However, Defendants countered with an expert disclosure deadline of May 11, 2009, regardless of whether Defendants are ordered to produce the documents at issue earlier than April 27, *and without acknowledging that Defendants would actually produce the documents on April 27.*  Mr. Hicks also insisted on extending the fact discovery cut-off, without suggesting a date.  Plaintiff did not agree with Defendants' proposal.  Chung Decl. ¶ 27.

Pursuant to Federal Rules of Civil Procedure 34 and 37, Plaintiff requests that Defendants immediately produce the documents at issue and, for reasons to be explained below, *prior* to their examination by Defendants' expert.  Should the Court not grant Plaintiff's concurrently filed motion to extend the expert-related deadlines, Plaintiff also seeks to reserve her right to issue a supplemental expert report based on the late production of documents to Plaintiff after April 20.

## II.   STATEMENT OF FACTS

On March 13, 2008, Plaintiff filed the instant action under the federal Fair Labor Standards Act and cognate state laws, alleging that Defendants deprived Plaintiff of her most basic workplace rights and protections by failing to pay her lawful wages.  Compl. ¶ 1-2, 14-41.

### A.   Plaintiff's Outstanding Requests for Production.

On June 18, 2008, Plaintiff propounded her Second Set of Requests for Production to Defendant Roomy Khan (hereinafter, "Mrs. Khan") and Sakhawat Khan, which included the following requests and responses: [2]


### REQUEST FOR PRODUCTION NO. 4:

ALL DOCUMENTS, including COMMUNICATIONS, constituting, reflecting, recording, concerning, describing, referring, or relating to PLAINTIFF'S job duties and/or responsibilities while she was employed by YOU.

---

[1]   This is equal to the same number of days in the current Case Management Order between the expert disclosure date and completion of expert discovery.

[2]   Both sets of requests and responses were identical.  A true and correct copy of Plaintiff's discovery requests are attached as Exhibit A to the Chung Decl. ¶ 2.

**REQUEST FOR PRODUCTION NO. 5:**

ALL DOCUMENTS, including COMMUNICATIONS, constituting, reflecting, recording, concerning, describing, referring, or relating to the payment of any compensation to PLAINTIFF while she was employed by YOU, including but not limited to canceled checks, payroll records, payroll ledgers, wage statements, and IRS documents.

**REQUEST FOR PRODUCTION NO. 6:**

ALL DOCUMENTS, including COMMUNICATIONS, constituting, reflecting, recording, concerning, describing, referring, or relating to the hours and/or days worked by PLAINTIFF while she was employed by YOU, including but not limited to calendars, schedules, journals, and travel records.

As part of her requests, Plaintiff included the following instruction with respect to the production of original documents: "Copies of all documents that can be legibly and accurately reproduced can be provided by YOU to PLAINTIFF within the time prescribed in lieu of production of the original, except as follows: in the instance of electronically-stored information, for which specific instructions are set forth below; *any original DOCUMENT which has been duplicated in any manner that alters or adds to the original DOCUMENT shall be produced in addition to any duplicated DOCUMENT that differs in any manner from the original*; *and PLAINTIFF reserves the right to inspect any originals of copies produced*."  Chung Decl. ¶ 2, Exh. A.  (emphasis added.)

Subject to various objections, in July 2008, Defendants agreed to provide all non-privileged documents in their possession or control that were responsive to Plaintiff's requests.  Chung Decl. ¶ 3, Exh. B.  At issue in this motion are the **originals, or closest copy to the original**, of the responsive documents that Defendants subsequently late-produced.

 **B.**   **Defendants Produced Copies of Plaintiff's Canceled Checks *Seven Months Late*.**

Although Plaintiff's Request for Production No. 5 (reproduced above) asked Defendants to produce canceled checks paid to Plaintiff, Defendants failed to turn over copies of the checks until

1   *seven months after* Plaintiff sought their production.  Chung Decl. ¶ 4.  Defendants finally provided

2   Plaintiff with copies on *February 18, 2009* – on the morning of Defendant Roomy Khan's deposition,

3   and only after Defendants' third party witness, Harleen Chopra, testified the day before at her

4   deposition that she had access to the canceled checks at Defendants' residence as of *September 2007*

5   – after Plaintiff had filed a wage claim against Defendants.  At that deposition, attended by Roomy

6   Khan and her counsel, Plaintiff's counsel immediately requested production, as they were responsive

7   to Plaintiff's previous discovery request from June 2008.  Deposition of Harleen Chopra, February

8   17, 2009 ("Chopra Depo. Vol. 1), 201:4-17; 210:17-23; 284:23-285:21.  Chung Decl. ¶¶ 4-5, Exh. C.

9         Because Defendants had represented in July 2008 that all responsive non-privileged

10  documents within their possession or control would be produced, Plaintiff's counsel had been misled

11  into believing Defendants did not retain possession or control of the checks until Ms. Chopra

12  disclosed otherwise in February 2009.  Chung Decl. ¶ 6.

13        **C.    Defendants Produced a Copy of "Khan 000308" *Eight Months Late*.**

14        Despite the fact that Plaintiff's Request for Production Nos. 4 and 6 (reproduced above)

15  sought all documents describing or relating to Plaintiff's job duties and work hours, Defendants late-

16  produced a copy of a responsive document, Bates-stamped "Khan 000308" (hereinafter "Khan 308")

17  under highly suspect circumstances.  Purportedly setting forth Plaintiff's job responsibilities and

18  work schedule for Defendants, "Khan 308" is a document that was allegedly signed in 2002 by

19  Plaintiff and Ms. Chopra.  Chung Decl. ¶ 7, Exh. D.

20        Tellingly, Defendants did not produce "Khan 308" until *March 13, 2009*, the very morning

21  that Defendants took Plaintiff's deposition, and almost *eight months after* Plaintiff had issued her

22  Requests for Production.  Chung Decl. ¶ 7.  This was the very first time Plaintiff had been provided

23  with any indication that a document such as "Khan 308" even existed, despite Plaintiff's requests and

24  deposition testimony from Roomy Khan to the contrary.  Chung Decl. ¶ 9.  In fact, Defendants late-

25  produced "Khan 308" only *after* Defendants had already been deposed on February 18 and 19, 2009.

26  Chung Decl. ¶ 8.

27        Significantly, during her February 18 deposition, Roomy Khan expressly testified that, other

28

than two previously-produced documents that allegedly related to Plaintiff, *she was not aware of any other documents setting forth Plaintiff's job duties*:

> "Q.   Are you aware of any other documents that lay out or explain the duties [Plaintiff] was required to perform?
> A.    I don't know.
> Q.    So you're not aware of any other –
> A.    I'm not aware.
> Q.    – documents, other than the two exhibits that we've presented here so far, No. 11 [Bates stamped "Khan 0013"] and No. 12 [Bates stamped "Khan 0014"].
> A.    The reason I said I don't know is because I had a habit of telling my assistant, "Draft this for me," okay?  And if I had something that needed to be communicated – you know, that is one thing I did; have her type it up and quickly glance at it and, you know, pass it on to whoever it needed to go to.
>           So the reason I said I don't know is, I don't recall if I said something to her which she might have done.  I don't know.  But to what we have come up with is, you know, these two things which she found, because I normally used to communicate to her that, "Do this," and then she would type it up the way I told her."

Deposition of Roomy Khan, February 18, 2009 ("Roomy Khan Depo. Vol. 1"), 70:17 – 71:10.

Chung Decl. ¶ 10, Exh. E.

However, after Plaintiff's counsel demanded to reopen Defendants' depositions due to the delinquent production of Khan 308, Roomy Khan admitted during her subsequent testimony on April 7, 2009, that she had actually "known… all along" of the existence of "Khan 308" – which was a type of employment document describing job duties that she regularly drafted and asked her assistant, Ms. Chopra, to type up for "practically everybody" Roomy Khan hired – and that she had in fact been asking Ms. Chopra *since last year* to locate the document on her behalf:

> "Q.   So it was a regular practice for you to rough draft a document like Khan 308 for your assistant, Harleen Chopra, during the time that Ms. Chopra worked for you?
> A.    Yeah, rough draft means I actually almost used to write up on a pad or speak up while she was writing, and then she would type it up.  And I'd look it over and, you know, make sure that this was fine with us.  **And we did that with practically everybody we hired during that time.**" (emphasis added.)
> …
>
> "Q.   When did you locate this document, Khan 308?
> A.    So we located this document – I did not locate it personally…
>           …So when we were contacted by you guys asking for documents, you know, I had to request [Harleen Chopra] to come back and come look for stuff.  And, you know, during the time that – over time, as your requests were coming, I would call her and say,

Hey, look for stuff.  **And I was asking her for a while that, Where is that paper which you had [Plaintiff] sign which articulated what she was supposed to do and what her hours were?**

And she couldn't find it.  She looked for it…. However, when you guys requested for all the checks, recently I had her come in and spend a fair amount of time because we had to – she's the one that boxed all these things.  So we had to open all the boxes where all these old checkbooks were lying.  And in one of those boxes is where she found this paper, because I – I had told – **I had been telling her for a while that, Please locate that paper.**

And she said, I can't find it.

Because when she left, she got an awful lot of stuff and she boxed a bunch of things.  So we found it very, very recently.  And as soon as we found it, we produced it to you guys."  (emphasis added.)

…

"Q.   So when was the first time that you asked Ms. Chopra to look for that particular document Khan – which happens to be Khan 308?

A.   **I asked her, I would believe, last year**…. (emphasis added.)

...

"Q.   When did you first recollect that there was a document like Khan 308 for Ms. Serralta?

A.   Because I asked Harleen, I said, Didn't you have her sign – **didn't you give her the job duties one?  Because I had her do it for everybody.**

Q.   Yes.  And when did you recollect that this document had not been produced for – in this case?

A.   No.  I thought it was lost.

Q.   You thought it was lost?

A.   I thought it was lost because she couldn't find it.  **I've known it all along that it was there.**  And I thought that when she moved – when she boxed everything, maybe she lost it or something happened.  So in my mind she had lost it, but however she – when she opened the old boxes, she found this." (emphasis added.)

Deposition of Roomy Khan, April 7, 2009 ("Roomy Khan Depo. Vol. 2"), 235:14-22; 236:5 – 237:13; 238:11-14; 240:25 – 241:14.  Chung Decl. ¶ 11, Exh. F.

During her deposition on April 7, Roomy Khan also admitted that "Khan 308" had been located *on the same day that the canceled checks* for Plaintiff had been found, purportedly by Ms. Chopra:

"Q.   So when was the first time that you asked Ms. Chopra to look for that particular document Khan – which happens to be Khan 308?

A.   I asked her, I would believe, last year…

And it's only when we opened the box – it's by, **it's fortuitous, in fact, that you guys pushed us to get the checks.  And when we opened the box where all the checks were lying, is where we found this**."  (emphasis added.)

…

"Q.   Did Ms. Chopra go down to your basement in your guesthouse and look at the boxes herself?
A.    That's correct.
Q.    On what day did she do that when she found Khan 308?
A.    I don't know the date, ma'am, **but the day she came for the checks, for the cancelled checks, that's the day.**  And I don't know the date.  You have to ask her.
Q.    **So the date that she looked for the cancelled checks –**
A.    **That's the day she found it.  That's correct.**
Q.    **-- was the day she found Khan 308?**
A.    **That's correct."** (emphasis added.)

Roomy Khan Depo. Vol. 2, 238:11-22; 239:18 – 240:4.  Chung Decl. ¶ 11, Exh. F.

Consequently, because the canceled checks had been located *prior to February 18, 2009*, when the canceled checks were first produced by Defendants, Roomy Khan's subsequent deposition testimony not only reveals that Defendants concealed the existence of "Khan 308" from Plaintiff but also *withheld its production for almost a full month* – in order to produce it for the first time at Plaintiff's deposition on March 13, 2009, after Defendants had already been deposed.

### D.   The Documents at Issue – Original Checks and the First Copy of "Khan 308" – Are Located in Defendants' Residence.

Significantly, Defendants have already produced *copies* of the documents at issue in this motion – and did so within the past two months.  Chung Decl. ¶¶ 4, 7.  Moreover, in her deposition on April 7, Roomy Khan specified that "Khan 308" was located in the basement of the guesthouse of her residence:

"Q.   And where were the boxes located in which you found this document [Khan 308]?
A.    They were in my basement.
Q.    The basement in your house at Isabella?
A.    Yes.  In my office.  The basement is not – well, I guess it is a house.
Q.    Your guesthouse, then?
A.    That's correct.

…
Q.    When did you locate this document, Khan 308?
A.    … So we found it very, very recently.  And as soon as we found it, we produced it to you guys."

Roomy Khan Depo. Vol. 2, 237:14-21; 236:5 – 237:13.  Chung Decl. ¶ 11, Exh. F.

1    She also testified that she still retained the copy of "Khan 308" that was found in her files at

2    home, and that she would not have a problem providing that copy to Plaintiff:

3

4    "Q.    The copy of Khan 308 that you gave to your attorney, is that the copy that you found in
             your files at home, or was it a copy of that copy?

5    A.    I believe I faxed it to him.
     Q.    So you still have the document that you found in the files at your home?

6    A.    Yeah, I do, I believe.
     Q.    Would you have any problem sharing with me that copy – that exact copy that you

7           found in your files at home?

8    A.    You have to ask him.  I have no problem.
     Q.    I'd actually like to request that specific document, not a copy of that copy then.

9    A.    That's fine."

10   Roomy Khan Depo. Vol. 2, 273:11-24.  Chung Decl. ¶ 11, Exh. F.

11   Subsequently, Ms. Chopra testified in her deposition that there was only one copy of "Khan

12   308" that she made from the putative original, and that she filed the copy she made in Roomy Khan's

13   file cabinet in her guesthouse:

14   "Q.    So your testimony is you got the signatures on Khan 308, and then you gave the original
             to Ms. Serralta?

15   A.    Yes.
     Q.    And you made a copy of the original that you then put in the file cabinet in Mrs. Khan's

16           office in the guesthouse?

17   A.    Yes, I did.  I made a copy – after give the original to Vilma and made a copy for
             ourselves – for Mrs. Khan and filed it away.

18   Q.    How many copies did you make?

19   A.    Only one copy."

20   Deposition of Harleen Chopra, April 7, 2009 ("Chopra Depo. Vol. 2"), 330:25 – 331:11.  Chung

21   Decl. ¶ 12, Exh. G.

22   During her deposition, Ms. Chopra also confirmed that she had recently located copies of the

23   original checks for Plaintiff in Roomy Khan's guesthouse office:

24

25   "Q.    Where did you find copies of Ms. Serralta's cancelled checks?
     A.    There is another office besides Roomy's office, and behind that there is a filing cabinet.

26           The checks were right there.
     Q.    In the guesthouse?

27   A.    Yes.

28

Q.   Were the cancelled checks that you found, were those copies or were those the original cancelled checks?

A.   Original cancelled checks.

Q.   And that was within 2009 that you found them?

A.   This year I found all the cancelled checks?  Yes, I found all – it's not only hers, it's everyone's.  I have my checks there, too.  I have like what their monthly expenses, everything's there."

Chopra Depo. Vol. 2, 339:9-23.  Chung Decl. ¶ 12, Exh. G.


E.      **Defendants and Their Counsel Have Engaged in Questionable Tactics to Hide Key Evidence in This Case.**

Immediately after Defendants produced a copy of "Khan 308" at Plaintiff's deposition on March 13, 2009, Plaintiff's counsel worked assiduously to examine the document, including an analysis of other documents produced by Defendants.  Plaintiff's counsel did not believe "Khan 308" bore Plaintiff's genuine signature.  Chung Decl. ¶ 13.  As part of this document analysis, Plaintiff's counsel was able to secure the assistance of a forensic document examiner, David S. Moore, by the end of March.  Chung Decl. ¶ 13.

After Plaintiff's counsel was informed by Mr. Moore that the original canceled checks for Plaintiff as well as the original of "Khan 308" – or the best available, clearest copy (i.e., the very first copy) of the "original" – could provide him with evidence important to his analysis of "Khan 308," Plaintiff's counsel prepared to ascertain at Defendants' upcoming reopened depositions whether Defendants possessed the "original" or the first copy of "Khan 308," as well as the current location of the original checks.  Chung Decl. ¶ 14; *see also* Moore Decl. ¶ 10.

Subsequently, on April 7, when Roomy Khan and Ms. Chopra revealed the fact that Mrs. Khan still retained the very first copy made of "Khan 308" in her guesthouse basement, as well as the location of the original canceled checks in an office in her guesthouse, Plaintiff's counsel obtained the necessary information justifying prompt production of these documents.  Chung Decl. ¶ 15.  Consequently, immediately after the depositions concluded and Defendants had been apprised of Plaintiff's concern that Defendants may have engaged in document forgery, on April 7, Plaintiff's counsel provided Defendants' counsel, Jonathan Hicks, with a letter requesting that Defendants produce the originals, or first generation copy, of "Khan 308" and Plaintiff's canceled checks, by no

later than April 10.[3]  Chung Decl. ¶¶ 16-17.

The next day, on April 8, Plaintiff's counsel e-mailed Mr. Hicks inquiring whether Defendants would comply with Plaintiff's request, and at minimum, with the production of the first generation copy of "Khan 308" and the original canceled checks – since Mrs. Khan currently possessed these documents in *her home office*.  Chung Decl. ¶ 18.

In response, Mr. Hicks sent an e-mail stating, **"I assure you we are diligently working to collect these original documents, but I do not think we will have the complete set available for your inspection in our office by 2 PM on Friday [April 10].  [¶]  My clients are aware of your request and we are working to gather these documents.  I will let you know tomorrow when we will make the documents available for your inspection in our office."**  Chung Decl. ¶ 19.  Mr. Hicks asserted that the documents would not be sent to Plaintiff as requested but would be made available at a "reasonable time" in defense counsel's office in San Jose.  Chung Decl. ¶ 19.

Thereupon, Plaintiff's counsel asked that Mr. Hicks provide the basis for not releasing the documents to Plaintiff.  Plaintiff's counsel also offered to enter into a stipulation to file with the Court that Plaintiff's examination of the documents would not be destructive.  In response to the implication that Defendants required additional time to "gather" the documents requested, Plaintiff's counsel also stated that Defendants had ample time to produce the first generation copy of "Khan 308" and the original canceled checks, *since their location had already been identified just the day before*.  Chung Decl. ¶ 20.

When Plaintiff's counsel did not hear back from Mr. Hicks the following day, on April 9, Plaintiff's counsel sent Mr. Hicks a letter, yet again requesting a response as to whether Defendants would produce their clearest copy of "Khan 308" and the original canceled checks by April 10.  Plaintiff's counsel also noted that Mr. Hicks had provided Plaintiff's counsel with no reason or legal basis for refusing to release the documents requested to Plaintiff and instead demanding an inspection in his law office.  Plaintiff's counsel then explained why Plaintiff required temporary possession of the documents requested, including the lack of portability of the laboratory equipment utilized by

---

[3]    Plaintiff's counsel also requested production of the originals, or first generation copies, of eight other documents, but those documents are not at issue in the present motion.  Chung Decl. ¶ 17.

1   Plaintiff's forensic document examiner.  Chung Decl. ¶ 21; *see also* Moore Decl. ¶ 8.   Thereupon,

2   Plaintiff's counsel renewed the offer to stipulate that Plaintiff's inspection of the documents would be

3   non-destructive and that the documents would be returned to Defendants.  Plaintiff's counsel also

4   made the further assurance that Mr. Hicks could send a firm associate to remain outside the

5   laboratory of Plaintiff's forensic document examiner while the inspection was conducted.  Chung

6   Decl. ¶ 22.   Moreover, Plaintiff's counsel observed that the documents at issue were a discrete set of

7   documents that had already been located and copied by Defendants, so additional time beyond April

8   10 for their production was not reasonable.  Chung Decl. ¶ 22.

9        Finally, in the April 9 letter, Plaintiff's counsel requested *at least an immediate on-site*

10   *inspection of the documents at defense counsel's office* if Defendants continued in their refusal to

11   release the documents directly to Plaintiff – as a necessary interim measure while Plaintiff reserved

12   the right to move to compel their release so that Plaintiff could have a full and fair opportunity to

13   examine the documents.  Chung Decl. ¶ 22.

14        Later that day, Mr. Hicks responded with a letter stating, **"…the original documents that**

15   **you requested are not currently available.  Our expert is in southern California and he will not**

16   **be able to return the original documents until April 27th at the earliest."**  Chung Decl. ¶ 23.

17   When Plaintiff's counsel called Mr. Hicks upon receipt of his letter, he stated that Defendants were

18   "out of town," and that therefore at no time "at or before Friday at 2 PM" would he have access to the

19   documents requested.  Although Plaintiff's counsel requested that Mr. Hicks inform her when

20   Defendants would be returning from "out of town" and if Plaintiff's counsel could have access to the

21   documents upon their return, prior to sending the documents to Defendants' expert, Mr. Hicks

22   refused.  Instead, Mr. Hicks stated that the documents would not be made available to Plaintiff's

23   counsel until "on or after April 27" at the earliest – *18 days later, and after the expert disclosure*

24   *deadline* – once the documents were returned by Defendants' expert.  When Plaintiff's counsel asked

25   if Defendants would provide the documents anytime prior to April 27, Mr. Hicks denied that request.

26   Moreover, Mr. Hicks refused to set forth any basis for why Defendants' expert should be provided

27   with the documents before Plaintiff's inspection of them, despite Plaintiff's outstanding discovery

28   requests, Plaintiff's repeated requests for the documents *prior to* the involvement of Defendants'

1    expert, and the imminent expiration of the expert disclosure deadline.  Chung Decl. ¶ 24.  Mr. Hicks'

2    only response was that the parties could stipulate to an extension of the expert disclosure date.

3    Chung Decl. ¶ 25.

### III.   ARGUMENT

5        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, a party may serve on any other

6    party a request to produce and permit inspection, copying, testing or sampling of relevant documents

7    and things.  *See* Fed.R.Civ.P. 34(a).  Unless otherwise stipulated or ordered by the court, "[t]he party

8    to whom the request is directed must respond in writing within 30 days after being served."

9    Fed.R.Civ.P. 34(b)(2)(A).  When a party fails to respond or to permit inspection as requested, Rule 37

10   of the Federal Rules of Civil Procedure empowers a party to move to compel the requested discovery.

11   Fed.R.Civ.P. 37(a)(3)(B)(iv).  *See Bryant v. Mattel, Inc.*, 2007 WL 5432962 *4 (C.D.Cal. 2007)

12   (ordering production of original documents under Federal Rules 26(b)(1) and 34 and emphasizing

13   that "[t]here is no question that originals…are discoverable.").

14       In the case at bar, Plaintiff's Requests for Production Nos. 4, 5, and 6, propounded on June

15   18, 2008, demanded and reserved Plaintiff's right to inspect the documents at issue.  Indeed,

16   Defendants have not disputed that, pursuant to Plaintiff's discovery requests from ***last year***, they are

17   required to produce the originals of Plaintiff's canceled checks and the copy of "Khan 308" that, by

18   Defendants' own account, is the clearest copy of the putative original – nor do they have a valid legal

19   basis for so disputing.  Chung Decl. ¶¶ 2-3, 29.  The only issue here is ***when*** Defendants must

20   produce these documents – either immediately and prior to examination by Defendants' expert, as

21   Plaintiff requests, or sometime "on or after April 27" as Defendants have proposed (when the current

22   expert disclosure deadline has elapsed).  Chung Decl. ¶¶ 23-25.  Allowing the latter would only serve

23   to reward the dilatory tactics of Defendants and their counsel.

### A.    The Machinations of Defendants and Their Counsel Have Obstructed Plaintiff's Timely Inspection of Key Evidence.

26       Defendants and their counsel have acted in complete disregard of the Federal Rules.  Instead

27   of conducting themselves with the transparency of parties who have nothing to conceal, they have

28   chosen to play it fast and loose with the Rules by effectively suppressing key evidence in this case.

First, Defendants very delinquently produced copies of the documents at issue, ***seven to eight months after*** Plaintiff had asked for the documents.  Copies of the checks were not produced until ***February 18, 2009***.  "Khan 308," which Plaintiff contends does not bear her genuine signature, was in fact not produced, and its very existence apparently concealed by Mrs. Khan based on her own deposition testimony, until ***March 13, 2009*** – the very morning of Plaintiff's deposition, and only after Plaintiff's counsel had already deposed Defendants.  Chung Decl. ¶¶ 4, 6-9.

Second, once Plaintiff requested the original canceled checks and clearest copy of "Khan 308" and set forth her reasons for doing so, Defendants' counsel made contradictory and misleading statements to Plaintiff's counsel regarding Defendants' purported efforts to respond to Plaintiff's requests:

- Initially, on April 8, Mr. Hicks stated that he wanted to "assure" Plaintiff's counsel that he and his clients were "diligently working to collect these original documents," raised what now appears to be a red herring issue that Plaintiff would not be allowed possession of the documents but had to conduct the inspection at his office, and represented that he would "let [Plaintiff's counsel] know tomorrow" when the documents would be available in his office.

- That same day, on April 8, Mr. Hicks ignored Plaintiff's request to provide a basis for refusing to release the documents at issue directly to Plaintiff, as well as the reason that Defendants needed more than two days to "gather" documents that had already been recently found in Mrs. Khan's guesthouse.

- *The very next day*, on April 9, after Plaintiff's counsel provided Mr. Hicks with various proposals addressing Defendants' possible concerns behind their refusal to allow Plaintiff temporary possession of the documents at issue, Mr. Hicks suddenly asserted that he did not have access to the documents, which were "not currently available" because Defendants were now conveniently "out of town" – even though he had indicated *the day before* that Defendants had been "working diligently to collect" the documents.  Mr. Hicks provided no explanation as to why this information could not have been communicated to Plaintiff's counsel on the previous day.

- Moreover, Mr. Hicks proceeded to inform Plaintiff's counsel that the requested documents would not be provided to Plaintiff until *18 days later "at the earliest"* – conveniently for Defendants, *after* the expert disclosure deadline of April 20 and after the documents were sent to an expert Defendants had hastily retained after the fact.

- Finally, Mr. Hicks refused to inform Plaintiff's counsel when Defendants would return to town and when he would therefore again have access to the documents, and refused to allow Plaintiff even an on-site inspection of the documents at his offices prior to sending the documents to Defendants' expert.

Chung Decl. ¶¶ 16-24.

In sum, once confronted with evidence of Defendants' alleged illegal conduct, Defendants and their counsel have engaged in highly dubious actions in an effort to stall – and then hide the ball. Were it not for Defendants' obstructionist tactics, there would have been no need for Plaintiff to file the instant motion; the case timeline could have proceeded accordingly, as Plaintiff's expert was prepared to examine the documents requested once he was provided timely access to them and, accordingly, to issue a report by the current expert disclosure deadline of April 20.[4]   Chung Decl. ¶ 30.   Defendants, in turn, would have had their opportunity to inspect the documents during the 30-

---

[4]   Indeed, from the outset of this case, Plaintiff has endeavored to diligently prosecute this matter.  Plaintiff successfully moved to conduct limited expedited discovery of the Defendants' residence, as well as promptly propounded requests for production and interrogatories on Defendants less than a month after the Rule 26(f) conference in May 2008.  Chung Decl. ¶ 2.  For over seven months beginning at the Rule 26(f) conference, Plaintiff's counsel also attempted to secure dates certain for Defendants' depositions.  Chung Decl. ¶ 31.

In contrast, Defendants have engaged in a pattern of dilatory conduct since the inception of this case.  Defendants effectively prevented their depositions from taking place until mid-February 2009 – first, by insisting on negotiating an overbroad protective order for all discovery conducted by Plaintiff that would allow Defendants to designate all deposition transcripts and discovery produced as "confidential"; and second, by refusing to provide Plaintiff with complete responses to written discovery requests that Plaintiff deemed necessary to adequately examine Defendants at their depositions.  Chung Decl. ¶ 31.  In fact, Defendants took *six months* to provide complete responses to Plaintiff's written discovery requests from June 2008 – and only after Plaintiff engaged in an extensive good faith effort to address the discovery disputes and was forced to file a motion to compel in November 2008.  Chung Decl. ¶ 32.  Furthermore, Defendants' delinquent supplemental responses provided on December 19, 2008 included, for the first time, the names and contact information of more than a dozen potential witnesses whose identities and contact information were previously unknown to Plaintiff.  This new and highly relevant information was produced by Defendants in the eleventh hour, preventing Plaintiff from having sufficient time before the previously-set discovery cut-off date to locate potential third party witnesses, conduct adequate fact investigation, and subpoena their depositions as well as possible documents.  Chung Decl. ¶ 32.  As a cumulative result of Defendants' dilatory conduct, Plaintiff was forced to file a Motion to Modify the Case Management Schedule, which was granted by the Court on January 30, 2009.  Chung Decl. ¶ 33.  As the latest in their series of questionable conduct since this case began, the actions at issue in the present motion have taken Defendants' conduct to an unprecedented low.

day period for designation of a rebuttal expert.  Not surprisingly, Defendants could not state a single

legitimate basis for refusing to provide Plaintiff with immediate access to the documents, or even an

on-site inspection in the law offices of defense counsel in the interim (pending resolution of the issue

of whether the documents should be released to Plaintiff).  Mr. Hicks' only excuse was that

Defendants were "out of town" – which still begged the question of why Defendants could not have

produced the documents to Plaintiff upon their return, prior to sending the documents to their expert.

### B.       Plaintiff Has Been Prejudiced By Defendants' Below-Board Conduct.

Defendants will no doubt attempt to argue that their offer to stipulate to an extension of the

expert disclosure deadline would have mooted the instant motion, but for Plaintiff's refusal to

stipulate.  That assertion is disingenuous at best.  By refusing to produce the best available copy of

"Khan 308" and originals of Plaintiff's canceled checks until after expiration of the current deadline

for expert disclosures, Defendants have left Plaintiff with no meaningful recourse but to file the

instant motion.

First, as Plaintiff's counsel informed Mr. Hicks, Plaintiff could not assume that the Court

would grant an extension of the expert disclosure deadline even upon stipulation of the parties (had

the parties been able to reach agreement), since such an Order modifying the deadline is not

automatic.  Essentially, Defendants have asked Plaintiff to bear the entire risk of gambling that an

extension will remedy the situation *created solely by Defendants*' unreasonable refusal to provide

timely access to the documents responsive to Plaintiff's RFPs issued in June 2008.  Meanwhile,

Defendants have asserted no proper legal basis for such a refusal.  Relying on a mere stipulation

would have placed Plaintiff in the untenable position of waiting to see if the Court would grant an

extension, while Defendants, who have nothing to lose and everything to gain from their waiting

game, could take their time providing documents to their own expert *on a timeline they dictated* –

despite Plaintiff's repeated requests for these documents.  Plaintiff, in turn, has been denied a full and

fair opportunity to inspect the documents before expiration of the current expert disclosure deadline.

Second, even if the parties had reached a stipulation for an extension of the expert disclosure

deadline and the Court were to grant it, the issue of *when* Plaintiff would be provided access to the

documents is still paramount.  To date, Defendants' counsel has at best represented that April 27

would be the "*earliest*" date that Defendants would produce the documents, and has alternatively stated that the documents would be made available "on *or after*" April 27 (emphasis added).  Chung Decl. ¶¶ 23-24.  In other words, Defendants have provided no date certain for production.  Tellingly, when discussing the possibility of a stipulation, Mr. Hicks proposed an expert disclosure deadline of May 11, 2009, without acknowledging when Defendants would actually produce the documents.  Chung Decl. ¶ 27.

Moreover, Plaintiff's forensic document examiner has attested that based on his years of experience and knowledge, the more times documents are handled, the greater the chance of poorer results upon examination, or even inadvertent spoliation of evidence, and that therefore he believes **it is critical for him to receive the documents at issue in his laboratory promptly, preferably with no intermediaries handling the documents prior to his examination**.  Moore Decl. ¶ 11.  In light of Plaintiff's clear legal basis to inspect the documents requested, the fact that Plaintiff asked for the documents *prior to* Defendants' maneuverings with their hastily-retained expert, and the possibility that Defendants have already once committed document fraud in this case, it remains a serious concern that key evidence may be lost – even if inadvertently – by the time Plaintiff's expert receives the documents per Defendants' proposed timeline.

On the other hand, Defendants would face no prejudice in first providing the documents to Plaintiff's expert and then utilizing their time to inspect the documents during the 30-day period for designating rebuttal experts.  *See* Moore Decl. ¶¶ 3-7 (setting forth Mr. Moore's experience as a forensic document examiner of over 30 years, including with the United States Army and the California Department of Justice, and his attestation that his examinations are non-altering and would be conducted in a manner that would not compromise future additional examinations).

## IV.  CONCLUSION

For the reasons submitted herein, Plaintiff respectfully requests an Order requiring Defendants to immediately produce to Plaintiff's expert the originals of Plaintiff's canceled checks as well as the best available, clearest copy of "Khan 308" in their possession, and to do so prior to sending these documents to Defendants' expert.  Should the Court not grant Plaintiff's concurrently filed motion

requesting an extension of the expert-related deadlines, Plaintiff also seeks to reserve her right to issue a supplemental expert report based on the late production of documents to Plaintiff after April 20.  Plaintiff's requested relief is set forth in the [Proposed] Order (filed concurrently herewith).


DATED: April 13, 2009                    Respectfully submitted,
                                         Christopher Ho
                                         Christina Chung
                                         Carole Vigne
                                         The LEGAL AID SOCIETY
                                           --EMPLOYMENT LAW CENTER

                                         Hillary Ronen
                                         Rocio Avila
                                         LA RAZA CENTRO LEGAL, INC.

                                         By: /S/ CHRISTINA CHUNG
                                             CHRISTINA CHUNG
                                             Attorneys for Plaintiff