1  Christopher Ho, State Bar No. 129845
   Christina N. Chung, State Bar No. 194630
2  Carole Vigne, State Bar No. 251829
   The Legal Aid Society – Employment Law Center
3  600 Harrison Street, Suite 120
   San Francisco, CA 94107
4  Telephone (415) 864-8848
   Facsimile (415) 864-8199
5
6  Hillary Ronen, State Bar No. 228606
   Rocío Alejandra Avila, State Bar No. 252719
7  LA RAZA CENTRO LEGAL, INC.
   474 Valencia Street, Suite 295
8  San Francisco, CA 94103
   Telephone: (415) 575-3500
9  Facsimile: (415) 255-7593
10
   Attorneys for Plaintiff
11 VILMA SERRALTA

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14 VILMA SERRALTA,                    )  No.  C 08-01427 CW
                                      )
15                    Plaintiff,      )
                                      )  **PLAINTIFF'S NOTICE OF MOTION**
16      v.                            )  **AND MOTION FOR ATTORNEYS' FEES**
                                      )  **IN CONNECTION WITH PLAINTIFF'S**
17 SAKHAWAT KHAN; ROOMY KHAN; and     )  **MOTION TO COMPEL PRODUCTION**
   DOES ONE through TEN, inclusive,   )  **OF ORIGINAL DOCUMENTS**
18                                    )
                    Defendants.       )  **[Fed.R.Civ.P. 34 and 37;**
19                                    )  **Civ.L.R. 7-8 and 37-3]**
                                      )
20                                    )
                                      )  Date & Time:  [To be set]
21                                    )  Courtroom: 2 (4th Floor)
                                      )  Judge: Honorable Claudia Wilken
22                                    )
23 _____)

24

25

26

27

28 PLAINTIFF'S NOTICE OF MOTION AND
   MOTION FOR ATTORNEYS' FEES
   NO. C 08-01427 CW

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at a date and time to be determined, Plaintiff hereby makes this motion pursuant to Federal Rules of Civil Procedure 34 and 37 and Civil Local Rules 7-8 and 37-3, and moves for an Order that Defendants and their attorneys of record pay to Plaintiff the reasonable expenses incurred by Plaintiff in connection with Plaintiff's Motion to Compel Production of Original Documents ("Motion to Compel"), Motion for an Order Shortening Time on Plaintiff's Motion to Compel, and the instant Motion for Attorneys' Fees ("Motion for Fees").  Plaintiff's underlying Motion to Compel and Motion for an Order Shortening Time were filed on April 13, 2009.

Plaintiff's Motion for Fees is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declarations filed in support thereof, and on any other matters that may be presented at the hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES

Pursuant to Fed.R.Civ.P. 37(a)(5)(A), Plaintiff moves for her reasonable attorneys' fees incurred in connection with Plaintiff's Motion to Compel, should Plaintiff's Motion to Compel be granted by the Court.  Plaintiff's Motion to Compel was necessitated by the highly questionable tactics of Defendants and their counsel that have denied Plaintiff a full and fair opportunity to examine original documents responsive to Plaintiff's written discovery requests prior to the expiration of the current expert disclosure cut-off of April 20, 2009.  An award of attorneys' fees is appropriate should Plaintiff prevail on her Motion to Compel, given the unjustifiable conduct of Defendants and their counsel – their most recent in an escalating series of bad faith acts that have impeded Plaintiff's ability to conduct legitimate discovery in this case.

At sole issue in Plaintiff's underlying Motion to Compel are two discrete categories of documents – namely, (1) the clearest, best available copy of a one-page document of suspect origin, Bates-stamped "Khan 308," and (2) the originals of canceled checks paid to Plaintiff – that Plaintiff's expert consultant, David S. Moore, a forensic document examiner, believes may reveal evidence important to his analysis and that, in turn, Plaintiff believes may indicate that Defendants have

1  engaged in document fraud.  *See* Declaration of Christina N. Chung in Support of Plaintiff's Motion

2  for Attorneys' Fees ("Chung Decl.") ¶ 14; Declaration of David S. Moore in Support of Plaintiff's

3  Motion to Compel Production of Original Documents, Motion for an Order Shortening Time, and

4  Motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates ("Moore

5  Decl.") ¶¶ 2,10.

6          Rather than comply with Plaintiff's legitimate outstanding requests to inspect these

7  documents prior to the expert disclosure deadline, Defendants and their counsel have instead chosen

8  to resist producing this highly relevant evidence to Plaintiff.  Indeed, on April 8, 2009, Defendants'

9  counsel initially represented that Defendants were "aware of [Plaintiff's] request" and were in the

10 process of "diligently working to collect these original documents," only to contradict that statement

11 *the next day* by informing Plaintiff's counsel that the documents were actually "not currently

12 available" because Defendants were "out of town" and that a defense expert hastily retained after the

13 fact would "not be able to return the original documents until April 27th *at the earliest*" (emphasis

14 added).  Chung Decl. ¶¶ 19, 23-24.  In other words, Defendants have refused to turn over documents

15 that Plaintiff believes may indicate their illegal conduct until *after* the expert disclosure deadline has

16 expired – and only after misleading Plaintiff's counsel by stating the documents were being

17 "collected" pursuant to Plaintiff's request.  Chung Decl. ¶ 19.

18                    **II.    STATEMENT OF FACTS**

19          As set forth in Plaintiff's Motion to Compel, Plaintiff's Requests for Production Nos. 4, 5, and

20 6, propounded on June 18, 2008 to Defendants, demanded and reserved Plaintiff's right to inspect the

21 original canceled checks for Plaintiff and the document Bates-stamped "Khan 308."  Chung Decl. ¶¶

22 2, 4, 7.

23        **A.    Defendants Very Delinquently Produced Copies of the Documents at Issue.**

24          Tellingly, Defendants very delinquently produced copies of the documents at issue – ***seven to***

25 ***eight months after*** Plaintiff had asked for them in June 2008.  Defendants did not provide Plaintiff

26 with copies of her canceled checks until ***February 18, 2009*** – on the morning of Defendant Roomy

27 Khan's deposition, and only after Defendants' third party witness, Harleen Chopra, testified the day

28 before that she had access to the canceled checks as of ***September 2007***.  Chung Decl. ¶ 4.

Meanwhile, "Khan 308," which Plaintiff contends does not bear her genuine signature, was in fact not produced until ***March 13, 2009*** – the very morning of Plaintiff's deposition, and only after Plaintiff's counsel had already deposed Defendants.  Chung Decl. ¶¶ 7-9.  Indeed, its very existence had previously been concealed by Roomy Khan.  During her February 18 deposition, Roomy Khan testified that, other than two previously-produced documents that allegedly related to Plaintiff, she was not aware of any other documents setting forth Plaintiff's job duties.  Chung Decl. ¶ 10.  However, after Plaintiff's counsel demanded to reopen Defendants' depositions due to the delinquent production of "Khan 308," Roomy Khan admitted during her subsequent testimony on April 7, 2009, that she had actually "known… all along" of the existence of "Khan 308" – which she claimed was an employment document describing job duties that she regularly drafted and asked her assistant, Ms. Chopra, to type up for "practically everybody" Roomy Khan hired – and that she had in fact been asking Ms. Chopra *since last year* to locate the document on her behalf.  Chung Decl. ¶ 11.

**B.**    **Defendants and Their Counsel Have Engaged in Evasive Conduct to Hide Key Evidence in This Case.**

Immediately after Defendants produced a copy of "Khan 308" at Plaintiff's deposition on March 13, Plaintiff's counsel worked assiduously to evaluate the document, including an analysis of other documents produced by Defendants, since Plaintiff's counsel did not believe "Khan 308" was authentic.  As part of this document analysis, Plaintiff's counsel was able to secure the assistance of a forensic document examiner, David S. Moore, by the end of March.  Chung Decl. ¶ 13.

Subsequently, on April 7, when Roomy Khan and Ms. Chopra revealed during their depositions that Mrs. Khan still retained the very first copy made of "Khan 308" in her guesthouse basement, as well as the location of the original canceled checks in an office in her guesthouse, Plaintiff's counsel obtained the necessary information justifying prompt production of these documents that Mr. Moore believed may be important to his analysis.  Chung Decl. ¶ 15.

Consequently, immediately after the depositions concluded and Defendants had been apprised of Plaintiff's concern that they may have engaged in document forgery, on April 7, Plaintiff's counsel provided Defendants' counsel, Jonathan Hicks, with a letter requesting that Defendants produce the

originals (or first generation copy) of "Khan 308" and Plaintiff's canceled checks, by no later than April 10.  Chung Decl. ¶¶ 16-17.

Once Plaintiff requested these documents and set forth her reasons for doing so, Defendants' counsel made contradictory and misleading statements to Plaintiff's counsel regarding Defendants' purported efforts to respond to Plaintiff's requests:

- Initially, on April 8, Mr. Hicks stated that he wanted to "assure" Plaintiff's counsel that he and his clients were "aware of [Plaintiff's] request and we are working to gather these documents."  He also raised what now appears to be a red herring issue that the documents would not be released to Plaintiff but would be available for inspection in his office, and represented that he would "let [Plaintiff's counsel] know tomorrow" when the documents, which he and his clients were "diligently working to collect," would be available.

- That same day, on April 8, Mr. Hicks ignored Plaintiff's request to provide a basis for refusing to release the documents to Plaintiff and the reason that Defendants needed more than two days to "gather" documents that had already been recently found in their own guesthouse.

- *The very next day*, on April 9, after Plaintiff's counsel provided Mr. Hicks with various proposals addressing Defendants' possible concerns behind their refusal to allow Plaintiff temporary possession of the documents, Mr. Hicks suddenly asserted that he did not have access to the documents, which were "not currently available" because Defendants were now conveniently "out of town"– even though he had indicated *the day before* that Defendants had been "working diligently to collect" the documents.  Mr. Hicks provided no explanation as to why this information could not have been communicated to Plaintiff's counsel the previous day.

- Moreover, Mr. Hicks proceeded to inform Plaintiff's counsel that the requested documents would not be provided to Plaintiff until *18 days later "at the earliest"* – conveniently for Defendants, *after* the expert disclosure deadline of April 20 and after the documents were sent to an expert Defendants hastily retained after the fact.  Mr.

1 Hicks' only excuse was that Defendants were "out of town" – which still begged the

2 question of why Defendants could not produce the documents to Plaintiff upon their

3 return, prior to sending the documents to their expert.

4  • Finally, Mr. Hicks refused to inform Plaintiff when his clients would return to town and

5 when he would therefore again have access to the documents, and refused to allow

6 Plaintiff even an on-site inspection of the documents at his offices prior to sending them

7 to Defendants' expert.

8 Chung Decl. ¶¶ 18-24.

9

### III. ARGUMENT

10  Pursuant to Rule 37(a)(5)(A), when a motion for an order compelling discovery is granted, a

11 court must require the party whose conduct necessitated the motion to pay the movant's reasonable

12 expenses incurred in making the motion, including attorneys' fees. *See NXP Semiconductors USA,*

13 *Inc., v. LSI Corp.*, 2009 WL 462746 *1 (N.D.Cal.); *see also L.H. v. Schwarzenegger*, 2008 WL

14 2073958 *4-5 (E.D. Cal.) (awarding fees and costs to prevailing plaintiff on motion to compel and

15 discussing defendants' delay in document production and its prejudicial impact on plaintiff due to

16 impending case deadlines).  The court must not order this payment only if: (1) the movant filed the

17 motion before making a good faith effort to obtain discovery without court intervention; (2) the

18 opposing party's nondisclosure was substantially justified; or (3) other circumstances make an award

19 of expenses unjust. *Id.*  Given the highly questionable tactics of Defendants and their counsel, as

20 well as Defendants' history of dilatory conduct in this case, none of the three factors militating

21 against an award to Plaintiff of reasonable expenses exists in the situation at bar.

22

23  A. **Defendants and Their Counsel Should be Required to Pay Plaintiff's Reasonable**
   **Attorneys' Fees Because Their Unjustifiable Conduct Has Prevented Plaintiff's**
24   **Timely Inspection of Key Evidence, Thereby Necessitating Plaintiff's Motion to**
   **Compel and Accompanying Motions.**

25  As detailed above, Defendants and their counsel have acted in complete disregard of the

26 Federal Rules.  Instead of conducting themselves with the transparency of parties who have nothing

27

28

1   to hide, they have chosen to play it fast and loose with the Rules by effectively suppressing key

2   evidence in this case.

3                      1.      Plaintiff engaged in extensive meet and confer efforts to obtain the documents
                               at issue prior to seeking Court intervention.

4           On April 7-10 and 12, Plaintiff's counsel met and conferred with Jonathan Hicks of Hoge

5   Fenton Jones & Appel, counsel for Defendants.  Chung Decl. ¶¶ 17-29.  Plaintiff's counsel asked if

6   Defendants would agree to produce the documents requested by April 10 or anytime prior to April

7   27, but Defendants refused these requests.  Chung Decl. ¶¶ 17-24.  Defendants instead represented

8   that they would stipulate to an extension of the expert disclosure date.  Chung Decl. ¶¶ 25.  Given

9   Defendants' conduct and refusal to produce the documents before the expert disclosure deadline on

10  April 20, Plaintiff's counsel agreed in the spirit of compromise that it would be acceptable to jointly

11  request an extension of this deadline, but informed Mr. Hicks that a mere stipulation to that effect

12  would not be sufficient because a discretionary Court Order was required to modify the deadlines.

13  Chung Decl. ¶ 25.  As such, Plaintiff's counsel informed Mr. Hicks that a modification of the Case

14  Management Order could not be relied upon as certain by Plaintiff, that the timing of Defendants'

15  production was at issue because Defendants have refused to produce documents for examination by

16  Plaintiff's expert until *after* expert reports must be disclosed, and that Plaintiff was therefore left with

17  no meaningful option but to file the instant motion, and to move for all available sanctions.  Chung

18  Decl. ¶ 25.  Plaintiff's counsel thereupon requested that Defendants stipulate to hearing the motion on

19  shortened time, which Mr. Hicks would not agree to do.  Chung Decl. ¶ 28.

20          In addition, the parties further discussed but could not agree upon a stipulation to extend the

21  expert disclosure and expert discovery completion dates.  Chung Decl. ¶ 26.  Plaintiff requested a

22  stipulation that the expert disclosure cut-off would occur 10 court days after April 27 or the date

23  Defendants are ordered to produce the documents requested, whichever date is earlier.  Accordingly,

24  Plaintiff further requested that Defendants stipulate to a modification of the expert discovery cut-off

25  date, to occur 45 days[1] after the expert disclosure deadline.  Plaintiff did not believe any other

26  modification to the case timeline was necessary.  However, Defendants countered with an expert

27

28  [1]      This is equal to the same number of days in the current Case Management Order between the expert disclosure
    date and completion of expert discovery.

disclosure deadline of May 11, 2009, regardless of whether Defendants are ordered to produce the documents at issue earlier than April 27, *and without acknowledging that Defendants would actually produce the documents on April 27.*  Mr. Hicks also insisted on extending the fact discovery cut-off, without suggesting a date.  Plaintiff did not agree with Defendants' proposal.  Chung Decl. ¶ 27.

In sum, Plaintiff's counsel engaged in reasonable efforts to resolve this issue short of a motion, but Defendants remained intransigent in their refusal to timely produce the documents at issue.  Due to the exigent circumstances in light of the impending expert discovery deadlines and the possibility of spoliation of evidence, Plaintiff was left with no meaningful option but to file the underlying Motion to Compel, Motion for an Order Shortening Time, and Motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates.

2.      The conduct of Defendants and their counsel cannot be justified.

Defendants have not disputed that, pursuant to Plaintiff's discovery requests from ***last year***, they are required to produce the originals of Plaintiff's canceled checks and the copy of "Khan 308" that, by Defendants' own account, is the clearest copy of the putative original – nor do they have a valid legal basis for so disputing.  Chung Decl. ¶ 29.  The central issue in Plaintiff's underlying Motion to Compel is ***when*** Defendants must produce these documents – either immediately and prior to examination by Defendants' expert, as Plaintiff requests, or sometime "on or after April 27" as Defendants have proposed (when the current expert disclosure deadline has conveniently elapsed).

Compounding the fact that Defendants' counsel has not committed to an actual production date (but instead has utilized qualified phrases such as "at the earliest"), Defendants' representation that they would produce the documents at some point "on or after April 27" stands as an empty offer in a situation *created solely* by Defendants' dilatory and suspect behavior, unless and until the expert deadlines are extended – a contingency that Defendants cannot know will be the case.  Meanwhile, what remains, separate and apart from the question of whether the deadlines may be extended, is Defendants' refusal to produce key documents in a *timely* manner but rather on a timeline dictated by their own convenience, as well as the potential loss of evidence that Plaintiff's expert has attested could occur in the interim.  *See* Moore Decl. ¶ 11 (stating that it is critical for him to receive the documents at issue in his laboratory promptly, preferably with no intermediaries handling the

documents prior to his examination).

Indeed, were it not for the obstructionist tactics of Defendants and their counsel, there would have been no need for Plaintiff to file the underlying Motion to Compel; the case timeline could have proceeded accordingly, as Plaintiff's expert was prepared to examine the documents requested once he was provided timely access to them and, accordingly, to issue a report by the current expert disclosure deadline of April 20.  Chung Decl. ¶ 30.   Defendants, in turn, would have had their opportunity to inspect the documents during the 30-day period for designation of a rebuttal expert. Not surprisingly, Defendants could not state a single legitimate basis for refusing to provide Plaintiff with immediate access to the documents, or even an on-site inspection in the law offices of defense counsel in the interim (pending resolution of the issue of whether the documents should be released to Plaintiff).  Mr. Hicks' only excuse was that Defendants were "out of town" – which still begged the question of why Defendants could not have produced the documents to Plaintiff upon their return, prior to sending the documents to their expert.

Particularly in light of Plaintiff's clear legal basis to inspect the documents requested, as well as the fact that Plaintiff asked for the documents *prior to* Defendants' maneuverings with their hastily-retained expert, the conduct of Defendants and their counsel is unreasonable and unjustified.

3.   <u>Defendants' latest tactics are the most egregious in a series of bad faith conduct since the beginning of this case.</u>

Not only is Defendants' conduct in the situation at bar unjustified, but it constitutes the latest – and most egregious – in a string of bad faith attempts to impede legitimate discovery in this case. *See L.H. v. Schwarzenegger*, 2008 WL 2073958 *4-5 (E.D. Cal.) (considering "litany of delays" by defendants, including failure to provide timely responses to written discovery and delay in producing deponents, in awarding fees and costs to prevailing plaintiff on motion to compel).

From the outset of this case, Plaintiff has endeavored to diligently prosecute this matter. Plaintiff successfully moved to conduct limited expedited discovery of the Defendants' residence, as well as promptly propounded requests for production and interrogatories on Defendants less than a month after the Rule 26(f) conference in May 2008.  Chung Decl. ¶ 2.  For over seven months

beginning at the Rule 26(f) conference, Plaintiff's counsel also attempted to secure dates certain for Defendants' depositions.  Chung Decl. ¶ 31.

In contrast, Defendants have engaged in a pattern of dilatory conduct since the inception of this case.  Defendants effectively prevented their depositions from taking place until mid-February 2009 – first, by insisting on negotiating an overbroad protective order for all discovery conducted by Plaintiff that would allow Defendants to designate all deposition transcripts and discovery produced as "confidential"; and second, by refusing to provide Plaintiff with complete responses to written discovery requests that Plaintiff deemed necessary to adequately examine Defendants at their depositions.  Chung Decl. ¶ 31.  In fact, Defendants took *six months* to provide complete responses to Plaintiff's written discovery requests from June 2008 – and only after Plaintiff engaged in an extensive good faith effort to address the discovery disputes and was forced to file a motion to compel in November 2008.  Chung Decl. ¶ 32.  Furthermore, Defendants' delinquent supplemental responses provided on December 19, 2008 included, for the first time, the names and contact information of more than a dozen potential witnesses whose identities and contact information were previously unknown to Plaintiff.  This new and highly relevant information was produced by Defendants in the eleventh hour, preventing Plaintiff from having sufficient time before the previously-set discovery cut-off date to locate potential third party witnesses, conduct adequate fact investigation, and subpoena their depositions as well as possible documents. Chung Decl. ¶ 32.

As a cumulative result of Defendants' dilatory conduct, Plaintiff was forced to file a Motion to Modify the Case Management Schedule, which was granted by the Court on January 30, 2009. Chung Decl. ¶ 33.

### B.  Plaintiff Has Incurred Otherwise Unnecessary Expenses In Connection With Plaintiff's Underlying Motion to Compel and Accompanying Motions.

For the reasons set forth above, Plaintiff seeks an amount of $13,903.68 in attorneys' fees incurred in connection with Plaintiff's Motion to Compel, after exercising billing discretion.  Chung Decl. ¶ 35.  Plaintiff's counsel expended a total of 41.38 billable hours on Plaintiff's Motion to Compel, Motion for an Order Shortening Time, and the instant Motion for Attorneys' Fees, including time spent meeting and conferring with Defendants' counsel, conducting legal research, reviewing

1  written discovery and deposition transcripts, and drafting the motions and accompanying

2  Declarations in support thereof.  Chung Decl. ¶ 35.   Plaintiff's counsel has set forth the basis of her

3  reasonable hourly rate of $420 in her accompanying Declaration in support of this Motion.   Chung

4  Decl. ¶¶ 34, 36-38.

5

6  DATED: April 14, 2009                    Respectfully submitted,
                                            Christopher Ho
7                                           Christina Chung
                                            Carole Vigne
8                                           The LEGAL AID SOCIETY
                                              --EMPLOYMENT LAW CENTER
9
                                            Hillary Ronen
10                                          Rocio Avila
                                            LA RAZA CENTRO LEGAL, INC.
11
                                            By: /S/ CHRISTINA CHUNG
12                                              CHRISTINA CHUNG
                                                Attorneys for Plaintiff
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28