Christopher Ho, State Bar No. 129845
Christina N. Chung, State Bar No. 194630
Carole Vigne, State Bar No. 251829
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone (415) 864-8848
Facsimile (415) 864-8199

Hillary Ronen, State Bar No. 228606
Rocío Alejandra Avila, State Bar No. 252719
LA RAZA CENTRO LEGAL, INC.
474 Valencia Street, Suite 295
San Francisco, CA 94103
Telephone: (415) 575-3500
Facsimile: (415) 255-7593

Attorneys for Plaintiff
VILMA SERRALTA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VILMA SERRALTA,<br><br>                    Plaintiff,<br><br>     v.<br><br>SAKHAWAT KHAN; ROOMY KHAN; and DOES ONE through TEN, inclusive,<br><br>                    Defendants.<br>_____ | No.  C 08-01427 CW<br><br>**DECLARATION OF CHRISTINA N. CHUNG IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES IN CONNECTION WITH PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ORIGINAL DOCUMENTS**<br><br>**[Fed.R.Civ.P. 34 and 37; Civ.L.R. 7-8 and 37-3]**<br><br>Date & Time:  [To be set]<br>Courtroom: 2 (4th Floor)<br>Judge: Honorable Claudia Wilken |

1     I, CHRISTINA N. CHUNG, declare:

2          1.     I am an attorney at the Legal Aid Society – Employment Law Center and am duly

3     licensed to practice before this Court.  I am one of the attorneys for the Plaintiff in the case,

4     *Serralta v. Khan*, Case No. C 08-01427 (CW).  I make this declaration in support of Plaintiff's

5     Motion for Attorneys' Fees in Connection with Plaintiff's Motion to Compel Production of

6     Original Documents.  I make this declaration based on my personal knowledge.  If called as a

7     witness, I could and would testify thereto.

8          2.     At the inception of this case, I promptly propounded interrogatories and requests

9     for production on Defendants less than a month after the Rule 26(f) conference of counsel in

10    May 2008.  On June 18, 2008, I propounded identical sets of Plaintiff's Second Set of Requests

11    for Production to Roomy Khan ("Mrs. Khan") and Sakhawat Khan, which included Plaintiff's

12    Requests for Production Nos. 4, 5, and 6.  As part of these requests, the following instruction

13    was included with respect to the production of original documents: "Copies of all documents that

14    can be legibly and accurately reproduced can be provided by YOU to PLAINTIFF within the

15    time prescribed in lieu of production of the original, except as follows: in the instance of

16    electronically-stored information, for which specific instructions are set forth below; any original

17    DOCUMENT which has been duplicated in any manner that alters or adds to the original

18    DOCUMENT shall be produced in addition to any duplicated DOCUMENT that differs in any

19    manner from the original; and PLAINTIFF reserves the right to inspect any originals of copies

20    produced."  A true and correct copy of the relevant excerpts of Plaintiff's Second Set of

21    Requests for Production to Roomy Khan was attached as **Exhibit A** to my Declaration in

22    Support of Plaintiff's Motion to Compel Production of Original Documents, Motion for an Order

23    Shortening Time, and Motion for an Order to Extend the Expert Disclosure and Expert

24    Discovery Cut-off Dates.

25         3.     Subject to various objections, in July 2008, Defendants agreed to provide all non-

26    privileged documents in their possession or control that were responsive to Plaintiff's Requests

27    for Production Nos. 4, 5, and 6.  A true and correct copy of the relevant excerpts from Defendant

28

1    Roomy Khan's Objections and Responses to Plaintiff's Second Set of Requests for Production

2    was attached as **Exhibit B** to my Declaration in Support of Plaintiff's Motion to Compel

3    Production of Original Documents, Motion for an Order Shortening Time, and Motion for an

4    Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates.  Defendant

5    Sakhawat Khan's Objections and Responses to Plaintiff's Second Set of Requests for Production

6    were identical to those of Roomy Khan.

7            4.      Although Plaintiff's Request for Production No. 5 asked Defendants to produce

8    canceled checks paid to Plaintiff, Defendants did not provide copies of any checks until seven

9    months after Plaintiff sought their production.  Defendants finally provided Plaintiff with copies

10   on February 18, 2009, on the morning of Mrs. Khan's deposition.  The day before, on February

11   17, Defendants' third party witness, Harleen Chopra, had revealed that she had access to the

12   canceled checks at Defendants' residence as of September 2007 – after Plaintiff had filed a wage

13   claim against Defendants.  At Ms. Chopra's deposition, which Mrs. Khan attended with her

14   counsel, I immediately requested production of the canceled checks, as they were responsive to

15   Plaintiff's previous discovery request from June 2008.

16           5.      A true and correct copy of relevant excerpts from the Deposition of Harleen

17   Chopra (Vol. 1) on February 17, 2009 was attached as **Exhibit C** to my Declaration in Support

18   of Plaintiff's Motion to Compel Production of Original Documents, Motion for an Order

19   Shortening Time, and Motion for an Order to Extend the Expert Disclosure and Expert

20   Discovery Cut-off Dates.

21           6.      Because Defendants had represented in July 2008 that all responsive non-

22   privileged documents within their possession or control would be produced, I had been misled

23   into believing Defendants did not retain possession or control of Plaintiff's canceled checks until

24   Ms. Chopra disclosed otherwise in February 2009.

25           7.      Although Plaintiff's Request for Production Nos. 4 and 6 sought all documents

26   describing or relating to Plaintiff's job duties and work hours, Defendants produced a copy of a

27   responsive document, Bates-stamped "Khan 000308" (hereinafter "Khan 308"), on March 13,

28

2009, eight months after Plaintiff had requested production. "Khan 308" is a document that was allegedly signed in 2002 by Plaintiff and Ms. Chopra and purportedly sets forth her job duties and work hours for Defendants. A true and correct copy of the document Bates-stamped "Khan 308" was attached as **Exhibit D** to my Declaration in Support of Plaintiff's Motion to Compel Production of Original Documents, Motion for an Order Shortening Time, and Motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates.

8.      Defendants late-produced "Khan 308" only after Defendants had already been deposed by Plaintiff's counsel on February 18 and 19, 2009.

9.      Defendants' production of "Khan 308" on March 13, 2009 was the very first time Defendants had indicated the document even existed, despite Plaintiff's requests and deposition testimony from Mrs. Khan to the contrary.

10.      A true and correct copy of relevant excerpts from the Deposition of Roomy Khan (Vol. 1) on February 18, 2009 was attached as **Exhibit E** to my Declaration in Support of Plaintiff's Motion to Compel Production of Original Documents, Motion for an Order Shortening Time, and Motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates.

11.      I demanded to reopen Defendants' depositions, as well as the deposition of Harleen Chopra, due to the delinquent production of "Khan 308." Mrs. Khan was subsequently deposed by me for a second time on April 7, 2009. A true and correct copy of the relevant excerpts from the Deposition of Roomy Khan (Vol. 2) on April 7, 2009 was ttached as **Exhibit F** to my Declaration in Support of Plaintiff's Motion to Compel Production of Original Documents, Motion for an Order Shortening Time, and Motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates.

12.      Harleen Chopra was also subsequently deposed by me for a second time on April 7, 2009. A true and correct copy of the relevant excerpts from the Deposition of Harleen Chopra (Vol. 2) on April 7, 2009 was attached as **Exhibit G** to my Declaration in Support of Plaintiff's

1    Motion to Compel Production of Original Documents, Motion for an Order Shortening Time,

2    and Motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-off Dates.

3        13.    Immediately after Defendants produced a copy of "Khan 308" at Plaintiff's

4    deposition on March 13, 2009, I worked diligently to examine the document, including an

5    analysis of other documents produced by Defendants, because I did not believe "Khan 308"

6    contained a genuine signature from Plaintiff.  As part of this document analysis, I was able to

7    secure the assistance of a forensic document examiner, David S. Moore, by the end of March.

8        14.    I was informed by Mr. Moore that the original canceled checks for Plaintiff as

9    well as the original of "Khan 308" – or the best available, clearest copy (meaning the very first

10   copy) of the "original" – could provide him with evidence important to his analysis of "Khan

11   308."  Therefore, I prepared to ascertain at Defendants' upcoming reopened depositions whether

12   Defendants possessed the "original" or the first copy of "Khan 308," as well as the current

13   location of the original checks.

14       15.    On April 7, 2009, in response to my questions, Mrs. Khan and Ms. Chopra

15   revealed the fact that Mrs. Khan still retained the very first copy made of "Khan 308" in her

16   guesthouse basement, as well as the location of the original canceled checks in an office in her

17   guesthouse.  As a result, I obtained the necessary information that I believed supported the

18   prompt production of these documents.

19       16.    On April 7, 2009, I informed Defendants of Plaintiff's belief that Defendants may

20   have engaged in document forgery on "Khan 308."

21       17.    Immediately after I concluded the depositions of Defendants and Ms. Chopra on

22   April 7, 2009, I provided Defendants' counsel, Jonathan Hicks of Hoge Fenton Jones & Appel,

23   with a letter requesting that Defendants produce the originals, or first generation copy, of "Khan

24   308" and Plaintiff's canceled checks, by no later than April 10.   Although I had also requested

25   production of the originals, or first generation copies, of eight other documents, those documents

26   are not at issue in the present motion to compel.

27

28

18.     The next day, on April 8, 2009, I e-mailed Mr. Hicks inquiring whether Defendants would comply with Plaintiff's request, and at minimum, with the production of the first generation copy of "Khan 308" and the original canceled checks – since Mrs. Khan currently possessed these documents in her home office.

19.     In response to my e-mail on April 8, Mr. Hicks sent me an e-mail approximately 10 minutes later stating, "I assure you we are diligently working to collect these original documents, but I do not think we will have the complete set available for your inspection in our office by 2 PM on Friday [April 10].  [¶.]  My clients are aware of your request and we are working to gather these documents.  I will let you know tomorrow when we will make the documents available for your inspection in our office."  He further asserted that the documents would not be sent to Plaintiff as requested but would be made available at a "reasonable time" in defense counsel's office in San Jose.

20.     Within 30 minutes of Mr. Hicks' e-mail on April 8, I requested that he provide the basis for not releasing the documents to Plaintiff.  I also offered to enter into a stipulation to file with the Court that Plaintiff's examination of the documents would not be destructive.  In response to the implication that Defendants needed more time to "gather" the documents requested, I also stated that Defendants had ample time to produce the first generation copy of "Khan 308" and the original canceled checks, since their location had already been identified just the day before.

21.     When I did not hear back from Mr. Hicks the following day, on April 9, 2009, I sent Mr. Hicks another letter, yet again requesting a response as to whether Defendants would produce their clearest copy of "Khan 308" and the original canceled checks by April 10.  I also stated that he had provided me with no reason or legal basis for refusing to release the documents requested to Plaintiff and instead demanding an inspection in his law office.  I then set forth why Plaintiff required temporary possession of the documents requested, including the lack of portability of the laboratory equipment utilized by Plaintiff's forensic document examiner.

22.     In my letter dated April 9 to Mr. Hicks, I renewed the offer to stipulate that Plaintiff's inspection of the documents would be non-destructive and that the documents would be returned to Defendants.  I also made the further assurance that Mr. Hicks could send a firm associate to remain outside the laboratory of Plaintiff's forensic document examiner while the inspection was conducted.  In addition, I noted that the documents at issue were a discrete set of documents that had already been located and copied by Defendants, so more time beyond April 10 for their production was not reasonable.  Finally, I requested at minimum an immediate on-site inspection of the documents at Mr. Hicks' law office if Defendants continued in their refusal to release the documents directly to Plaintiff – as a necessary interim measure while Plaintiff reserved the right to move to compel their release so that Plaintiff could have a full and fair opportunity to examine the documents.

23.     In response to my letter of April 9, Mr. Hicks responded with a letter stating, "…the original documents that you requested are not currently available.  Our expert is in southern California and he will not be able to return the original documents until April 27th at the earliest."

24.     I called Mr. Hicks upon receipt of his letter on April 9.  During our telephone conversation, Mr. Hicks stated that Defendants were "out of town" and that therefore at no time "at or before Friday at 2 PM" would he have access to the documents requested.  Although I asked that Mr. Hicks inform me when Defendants would be returning from "out of town" and if I could have access to the documents upon their return, prior to sending the documents to Defendants' expert, Mr. Hicks refused.  Instead, Mr. Hicks stated that the documents would not be made available to Plaintiff's counsel until "on or after April 27" at the earliest – once the documents were returned by Defendants' expert.  When I asked if Defendants would provide the documents anytime prior to April 27, Mr. Hicks denied that request.  Moreover, Mr. Hicks refused to set forth any basis for why Defendants' expert should be provided with the documents before Plaintiff's inspection of them, despite the fact that I reminded him of Plaintiff's outstanding discovery requests, Plaintiff's repeated requests for the documents *prior to* the

1  involvement of Defendants' expert, and the imminent expiration of the expert disclosure

2  deadline.

3         25.     In telephone and e-mail exchanges on April 9, 10, and 12, Mr. Hicks and I

4  discussed the possibility of a stipulated request to extend the expert deadlines.  Mr. Hicks stated

5  that he believed such a stipulation would make Plaintiff's motion unnecessary.  In the spirit of

6  compromise, I agreed that it would be acceptable to jointly request an extension of the expert

7  deadlines, given Defendants' conduct and refusal to produce the documents before the expert

8  disclosure cut-off of April 20.  However, I informed Mr. Hicks that a stipulation to that effect

9  would not be sufficient because a discretionary Court Order was required to modify the

10  deadlines.  As such, I informed Mr. Hicks that a modification of the Case Management Order

11  could not be relied upon as certain by Plaintiff, that the timing of Defendants' production was at

12  issue because Defendants have refused to produce documents for examination by Plaintiff's

13  expert until *after* expert reports must be disclosed, and that Plaintiff was therefore left with no

14  meaningful option but to file a motion to compel.

15         26.     During the course of our meet and confer, Mr. Hicks and I continued to discuss

16  but could not agree upon a stipulation to request modification of the expert deadlines.

17         27.     On behalf of Plaintiff, I requested a stipulation that the expert disclosure cut-off

18  would occur 10 court days after April 27 or the date Defendants are ordered to produce the

19  documents requested, whichever date is earlier.  Accordingly, I further requested that Defendants

20  stipulate to a modification of the expert discovery completion date, to occur 45 days after the

21  expert disclosure deadline.  I requested the foregoing in order to adhere as closely to the current

22  case timelines as possible, and because I did not believe any other modification to the dates set

23  by the Court was necessary.  However, Mr. Hicks proposed an expert disclosure deadline of May

24  11, 2009, regardless of whether Defendants are ordered to produce the documents at issue earlier

25  than April 27, and without acknowledging that Defendants would actually produce the

26  documents in any event on April 27.   Mr. Hicks also insisted on extending the fact discovery

27  cut-off, without suggesting a date.  I did not agree to his proposal.

28

28.     I requested that Defendants stipulate to hearing Plaintiff's Motion to Compel on shortened time, but Mr. Hicks refused.

29.     During the course of my meet and confer with Mr. Hicks, he did not dispute that, pursuant to Plaintiff's discovery requests from last year, Defendants are required to produce the originals of Plaintiff's canceled checks and the copy of "Khan 308" that is the clearest copy of the putative original.

30.     When I spoke with Mr. Moore on April 8, 2009, he was prepared to examine the documents requested once he was provided timely access to them and, accordingly, to issue a report by the current expert disclosure deadline of April 20.

31.     Since the inception of this case, Defendants have engaged in a pattern of dilatory conduct.  For over seven months beginning at the Rule 26(f) conference, Plaintiff's counsel attempted to secure dates certain for Defendants' depositions.  However, Defendants effectively prevented their depositions from taking place until mid-February 2009 – first, by insisting on negotiating an overbroad protective order for all discovery conducted by Plaintiff that would allow Defendants to designate all deposition transcripts and discovery produced as "confidential"; and second, by refusing to provide Plaintiff with complete responses to written discovery requests that Plaintiff's counsel deemed necessary to adequately examine Defendants at their depositions.

32.     Defendants took six months to provide complete responses to Plaintiff's written discovery requests from June 2008 – and only after Plaintiff engaged in an extensive good faith effort to address the discovery disputes and was forced to file a motion to compel in November 2008.  Furthermore, Defendants' delinquent supplemental responses provided on December 19, 2008 included, for the first time, the names and contact information of more than a dozen potential witnesses whose identities and contact information were previously unknown to Plaintiff.  This new and highly relevant information was produced by Defendants in the eleventh hour.  As a result, Plaintiff's counsel did not have sufficient time before the previously-set

1   discovery cut-off date to locate potential third party witnesses, conduct adequate fact

2   investigation, and subpoena their depositions as well as possible documents.

3          33.    Consequently, earlier this year, Plaintiff was forced to file a Motion to Modify the

4   Case Management Schedule in order to extend the deadlines in this case, which was granted by

5   the Court on January 30, 2009.

6          34.    Plaintiff claims an hourly rate of $420 for the time that I spent on Plaintiff's

7   Motion to Compel, Motion for an Order Shortening Time, the instant Motion for Attorneys' Fees

8   and Costs, and documents filed in support thereof.

9          35.    I spent a total of 41.38 billable hours on Plaintiff's Motion to Compel, Motion for

10  an Order Shortening Time, the instant Motion for Attorneys' Fees, and the accompanying

11  Declarations in support of Plaintiff's motions, including time spent meeting and conferring with

12  Defendants' counsel, conducting legal research, reviewing written discovery and deposition

13  transcripts, and drafting the Motion to Compel, Motion for an Order Shortening Time, the instant

14  Motion for Attorneys' Fees, and the accompanying Declarations in support of Plaintiff's

15  motions.  After exercising billing discretion of a 20% reduction in my time spent at the rate of

16  $420 per hour, the total amount in attorneys' fees is $13,903.68.

17         36.    My hourly rate is derived from a survey conducted annually by my organization,

18  the LAS-ELC, which takes into account the billing rates charged by for-profit San Francisco law

19  firms for attorneys of comparable experience doing comparable work, as well as rates utilized by

20  comparable non-profit public interest organizations for the same purpose.  It is also based upon

21  other information received from private attorneys relating to the rates charged by San Francisco

22  law firms for comparable litigation.

23         37.    The hourly rate Plaintiff seeks for my time spent on Plaintiff's motions is based

24  upon my experience, expertise, and training.  I am a 1996 graduate of the University of Michigan

25  Law School.  While at Michigan, I was the Executive Articles Editor of the Michigan Journal of

26  Race & Law.  From 1997 to 2007, I was a staff attorney at the Asian Pacific American Legal

27  Center of Southern California ("APALC"), during which time I litigated numerous cases on

28

1    behalf of low-wage immigrant workers, and eventually became APALC's Senior Staff Attorney

2    for Litigation.  I joined LAS-ELC in 2007.

3          38.      On February 10, 2009, in the case entitled *Saephan v. Oakland Unified School*

4    *District,* Case No. C-06-4428, filed in the U.S. District Court, Northern District of California, an

5    award of plaintiff's attorneys' fees and costs was ordered  [Docket No. 87], including an amount

6    for my time spent on that case based on an hourly rate of $400 per hour.

7          I declare, under penalty of perjury under the laws of California and the United States, that

8    the foregoing is true and correct.  Executed this 14th day of April 2009 in San Francisco,

9    California.

10                                          /s/Christina Chung____
                                            CHRISTINA CHUNG
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28