Christopher Ho, State Bar No. 129845
Carole Vigne, State Bar No. 251829
The LEGAL AID SOCIETY
  – EMPLOYMENT LAW CENTER
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone (415) 864-8848
Facsimile (415) 864-8199

Hillary Ronen, State Bar No. 228606
Rocío Alejandra Avila, State Bar No. 252719
LA RAZA CENTRO LEGAL, INC.
474 Valencia Street, Suite 295
San Francisco, CA 94103
Telephone: (415) 575-3500
Facsimile: (415) 255-7593

Attorneys for Plaintiff VILMA SERRALTA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

VILMA SERRALTA,

                        Plaintiff,

        v.

SAKHAWAT KHAN; ROOMY KHAN; and
DOES ONE through TEN, inclusive,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.  C 08-01427 CW (MEJ)

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR ENTRY OF
DEFAULT JUDGMENT**

**Date:** [to be determined]
**Time:** [to be determined]
**Ctrm:**  Courtroom B, 15th Floor

[Hon. Maria-Elena James]

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. STATEMENT OF ISSUES ....................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................... 1

III. ARGUMENT ........................................................................................................... 9

    A. The Court Has the Inherent Power to Impose Terminating Sanctions in the Extreme Circumstances Here. ................................................................................. 9

    B. The Relevant Factors Mandate Terminating Sanctions in This Case. ........................... 13

       1. Defendants' Falsification of Evidence, and Their Actions in Furtherance Thereof, Reflects Willfulness, Bad Faith, and Fault. ..................................... 14

       2. A Nexus Exists Between Both the Falsified and the Spoliated Evidence and Defendants' Defense ............................................................................. 17

       3. Terminating Sanctions Are Warranted Here Because Lesser Sanctions Are Inappropriate In Light of Defendants' Pattern of Deception. .................................. 19

          a) Lesser Sanctions Are Inappropriate Because They Would Neither Sufficiently Punish Defendants for Their Egregious Misconduct Nor Deter Other Parties from Doing the Same. ............................................................ 20

          b) Defendants' Pattern of Deception and Discovery Abuse, Which Has No Reason to Stop, More Than Justifies Terminating Sanctions. ............... 21

       4. Defendants' Misconduct Has Prejudiced Plaintiff ..................................... 23

       5. The Public's Interest in the Expeditious Resolution of Litigation as Well as the Court's Need to Manage its Docket Strongly Favor Default Judgment, and Are Not Outweighed by Policy Favoring Disposition of Cases on Their Merits. ................................................................................. 24

IV. CONCLUSION ....................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Adriana International Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990)) ...............24

*Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991)................................................20

*Alexander v. National Farmers Organization*, 687 F.2d 1173 (8th Cir. 1982).................10

*Anheuser-Busch, Inc. v. Natural Beverage Distributings*, 69 F.3d 337 (9th Cir. 1995) ......................................................................11, 13, 15, 18, 19, 21, 22

*Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir. 1995)........................21

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989)...........................................10, 12

*Allstate Aptix Corp. v. Quickturn Design System, Inc.*, 269 F.3d 1369 (9th Cir. 2001) ...........................................................................................................11, 12, 20

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) ...............................................................9, 10

*Combs v. Rockwell International Corp.*, 927 F.2d 486 (9th Cir. 1991), *cert. denied*, 502 U.S. 859 (1991) ...........................................................................11, 17, 23

*Conn. General Life Insurance Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007).................................................................................................14, 21

*Enwere v. Terman Apartments, L.P.,* No. C 07-1239, 2009 WL 1814423, at *?, (N.D. Cal. June 23, 2009) ..............................................................................................25

*Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992) ........................................................14

*Fjelstad v. America Honda Motor Co.*, 762 F.2d 1334 (9th Cir. 1985) ....................10, 14

*Greenburg v. Roberts Props. (Greenburg III)*, 246 Fed. App'x 500, 502 (9th Cir. 2007) ...........................................................................................................11, 12, 17

*Greenburg v. Roberts Properties, LTD (Greenburg II)*, Case No. CV-04-0001-PHX-SRB, 2006 U.S. Dist. LEXIS 6776 (D. Ariz. Feb. 16, 2006)......................12, 15

*Greenburg v. Roberts Properties, LTD (Greenburg I)*, 2005 U.S. Dist. LEXIS 38094 (D. Ariz. Dec. 22, 2005) ...........................................................................12, 16

*Halaco Engineering Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988) .............10, 13, 14, 17, 23

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) .......................9

*Henry v. Gill Industrial, Inc.*, 983 F.2d 943 (9th Cir. 1993) ......................................14, 23

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003) ......................................................15

*Leon v. IDX System Corp.*, 464 F.3d 951 (9th Cir. 2006)......................................... *passim*

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962) .......................................................................9

*Malone v. U.S. Postal Serv.*, 833 F.2d 128 (9th Cir. 1987) ..........................................19, 25

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) .........10

*North Am. Watch Corp. v. Princess Ermine Jewels*, 78 6 F.2d at 1447 (9th Cir.
    1986) .......................................................................................10, 15, 16, 23, 24

*Phoceene Sous-Marine, S. A. v. U. S. Phosmarine, Inc.*, 682 F.2d 802 (9th Cir.
    1982) ........................................................................................15, 16, 20

*Prof'l Seminar Consultants v. Sino America Tech. Exch. Council*, 727 F.2d 1470
    (9th Cir. 1984) .......................................................................11, 12, 16

*Shearson Loeb Rhoades, Inc. v. Quinard*, 751 F.2d 1102 (9th Cir. 1985) .......................11

*Sun World, Inc. v. Olivarria*, 144 F.R.D. 384 (E.D. Cal. 1992) ................................ *passim*

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.*
    *Copyright Litig.)* ......................................................................18, 20

*U.S. ex rel. v. Maxxam, Inc.*, No. C-06-07497, 2009 U.S. Dist. LEXIS 30743
    (N.D. Cal. Mar. 27, 2009) ............................................................20, 22

*Valley Eng'rs v. Electric Engineering Co.*, 158 F.3d 1051
    (9th Cir. 1998) ..................................................................... *passim*

*Wyle v. R.J. Reynolds Industrial, Inc.*, 709 F.2d 585 (9th Cir. 1983) ...................11, 17, 18

*Yourish v Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999) .....................................................14

# FEDERAL STATUTES

Fed. R. Civ. P. 11, 16(f) ...................................................................................................10

Fed. R. Civ. P. 37 ......................................................................................................13, 20

Fed. R. Civ. P. 37(b)(2)(A)(ii) ...................................................................................10, 20

Fed. R. Civ. P. 37(b)(2)(A)(iii)-(v) .................................................................................20

Fed. R. Civ. P. 37(b)(2)(A)(vi) .......................................................................................20

Fed. R. Civ. P. 37(b)(2)(C) ..............................................................................................20

1    TO ALL PARTIES AND THEIR COUNSEL ON RECORD

2         PLEASE TAKE NOTICE that at a date and time to be determined, Plaintiff Vilma

3    Serralta will move the Court for an Order entering default judgment against Defendants Roomy

4    and Sakhawat Khan.  Plaintiff's Motion for an Order Shortening Time is filed concurrently

5    herewith.

6         This Motion is made on the ground that Defendants' willful document forgery, spoliation

7    of evidence, perjured testimony, and associated discovery abuses make appropriate the

8    imposition of terminating sanctions. This motion is based on this Notice of Motion; the

9    following Memorandum of Points and Authorities; the Declarations filed in support thereof; the

10   pleadings and records on file in this case; and on any other matters that may be presented at the

11   hearing on this Motion.

12                    **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I.    STATEMENT OF ISSUES**

14        Pursuant to the inherent power of this Court to impose sanctions for bad faith conduct,

15   Plaintiff seeks an Order entering default judgment against Defendants, who have willfully

16   defrauded the Court and Plaintiff through falsification and spoliation of key evidence in this

17   case. *See* Declaration of Carole Vigne in Support of Motion for Entry of Default Judgment and

18   Motion for an Order Shortening Time ("Vigne Decl.") ¶¶ 10, 22; Declaration of David S. Moore

19   in Support of Motion for Entry of Default Judgment and Motion for an Order Shortening Time

20   ("Moore Decl.") ¶¶ 8-15.  While such serious misconduct alone would merit terminating

21   sanctions, Defendants have also engaged in a pattern of egregious conduct related to this

22   falsification. *See* Vigne Decl. ¶¶ 8, 16, 19, 24-27. In light of these extraordinary circumstances,

23   default judgment against Defendants is appropriate and necessary to prevent further injustice to

24   Plaintiff and to uphold the integrity of the Court. Any lesser sanction would fail to either

25   sufficiently address the severity of Defendants' wrongdoing or to ensure a fair trial on the merits.

26   **II.    STATEMENT OF FACTS**

27        On March 13, 2008, Plaintiff Vilma Serralta ("Plaintiff") filed the instant action under the

28   Fair Labor Standards Act, the California Labor Code, and the wage orders of the California

1    Industrial Welfare Commission, alleging that Defendants Roomy Khan ("Mrs. Khan") and

2    Sakhawat Khan ("Mr. Khan") had failed to pay Plaintiff her lawful wages. *See* Compl. ¶¶ 1-2,

3    14-41, Docket No. 1.[1] In her Complaint, Plaintiff alleged that she worked up to sixteen hours per

4    day, that her meal and rest periods were insufficient or nonexistent, and that the fixed monthly

5    wage she was paid did not cover the minimum wage and overtime she was owed. *See* Compl. ¶¶

6    21-28, Docket No. 1. Defendants denied the material allegations of the Complaint, and asserted

7    in their depositions that Plaintiff had not worked the hours she alleged. *See* Defs.' Answer to

8    Compl., Docket No. 22; *see also* Deposition of Roomy Khan, Feb. 18, 2009 ("Roomy Khan Dep.

9    Vol. 1"), 65:6 – 66:8; 136:8 – 138:14, at Vigne Decl. ¶ 7, Exh. A.1. Deposition of Sakhawat

10   Khan, Feb. 19, 2009, 153:4 – 155:20; 160:22 – 162:5; 175:15 – 177:3, at Vigne Decl. ¶ 7, Exh.

11   B.

12          On June 18, 2008, Plaintiff served her Second Set of Requests for Production ("RFPs")

13   on Defendants. Vigne Decl. ¶ 3, Exhs. C, D. Those requests included RFPs 4 and 6, which

14   sought documents describing or relating to Plaintiff's job duties and work hours, and RFP 5,

15   which sought documents relating to compensation paid to Plaintiff, "including but not limited to

16   cancelled checks." Vigne Decl. ¶ 3, Exhs. C, D. Defendants responded on July 18, 2008,

17   agreeing to produce all non-privileged documents responsive to these requests.[2] Vigne Decl. ¶ 4.

18          In response to Plaintiff's RFP 5, Defendants produced payroll account ledgers and

19   summary charts of payments to Plaintiff, but not one cancelled check. Vigne Decl. ¶ 4. During

20   the February 17, 2009 deposition of Harleen Chopra, Mrs. Khan's personal assistant, more than

21   seven months after Plaintiff's requests, Plaintiff learned that Defendants in fact were in

22

23   _____

24   [1] Plaintiff filed a claim before the Department of Labor Standards Enforcement on August 2, 2007, which
     was withdrawn upon filing the instant case. Vigne Decl. ¶ 2.

25   [2] Defendants failed to respond to some of Plaintiff's other requests, forcing Plaintiff to file a Motion to
     Compel on November 24, 2008. *See* Plaintiff's Motion to Compel Further Responses. Docket No. 55.
26   Plaintiff withdrew this motion on December 23, 2008 when Defendants finally produced the requested
     documents approximately six months after Plaintiff's requests were made. *See* Notice of Withdrawal of
27   Motion to Compel. Docket No. 64. Defendants' December 2008 production included the names and
     contact information of more than a dozen potential witnesses previously unknown to Plaintiff, such that
28   Plaintiff was forced to file a motion to modify the case management schedule in this case. Docket No. 77.

1  possession of cancelled checks. *See* Deposition of Harleen Chopra, Feb. 17, 2009, 284:23 –

2  285:23, at Vigne Decl. ¶ 5, Exh. E.  These checks, facially responsive to Plaintiff's RFP 5, had

3  not yet been produced even though the production date for responsive documents had long since

4  passed. Vigne Decl. ¶ 5. Plaintiff demanded that Defendants produce the checks, and

5  photocopies thereof were produced the following day, February 18, 2009,. Vigne Decl. ¶ 6.

6        In response to Plaintiff's RFPs 4 and 6, Defendants produced only two documents, Bates-

7  stamped KHAN 124 and 125, both of which had already been produced during their initial

8  disclosures as KHAN 13 and 14, and neither of which bore Plaintiff's name or signature, or a

9  date.[3] Vigne Decl. ¶ 4. During her February 18, 2009 deposition, Mrs. Khan expressly testified

10  that other than those two documents, she was "not aware" of any other documents setting forth

11  Plaintiff's job duties. Roomy Khan Dep. Vol. 1, 70:17 – 71:10, at Vigne Decl. ¶ 8, Exh. A.2.

12        Approximately eight months after Defendants' responses to Plaintiffs' RFPs, on March

13  13, 2009 — the morning of Plaintiff's deposition — Defendants produced for the first time a

14  photocopied document Bates-stamped KHAN 308. *See* KHAN 308, at Vigne Decl. ¶ 10, Exh. J.

15  In elaborate detail, KHAN 308 purported to set forth limits on Plaintiff's job responsibilities and

16  work schedule, including specified rest periods, in a manner that neatly supported Defendants'

17  version of the facts,[4] and that expressly contradicted the material allegations of the Complaint.

18

19

---

20  [3] Defendants later confirmed in their responses to Plaintiff's interrogatories seeking to identify documents

21  related to Plaintiffs' hours and duties that KHAN 13, 14, 124, 125 and two later-produced documents were the only responsive documents they could identify. *See* Def. Sakhawat Khan's Supp. Response to Pl.'s 3d Set of Interrogatories, Nos. 7 & 9, May 7, 2009; Def. Roomy Khan's Supp. Response to Pl.'s 4th

22  Set of Interrogatories, Nos. 13 & 15, May 7, 2009; at Vigne Decl. ¶ 23 Exhs. F, G. KHAN 13, also known as KHAN 124 (hereinafter "KHAN 13/124"), appeared to be a job advertisement, and KHAN 14, also

23  known as KHAN 125 (hereinafter "KHAN 14/125"), was a letter signed by Ms. Chopra, which included an offer of employment and referred to the housekeeper's salary, duties, and hours. *See* KHAN 13/124;

24  KHAN 14/125; at Vigne Decl. ¶ 4 Exhs. H, I. Plaintiff had never previously seen or received these documents. Declaration of Vilma Serralta in Support of Motion for Entry of Default Judgment & Motion

25  for Order Shortening Time ("Serralta Decl.) ¶ 7.

26  [4] Although the two letters are similar in scope, KHAN 308 differed from KHAN 14/125 in notable ways:

27  among other differences, KHAN 308 articulated a start time of 9am and a rest period from 12pm to 4pm, in contrast to no start time and a rest period from 1pm to 4pm in KHAN 14/125, and KHAN 308 included

28  a date and a signature purported to be Plaintiff's, although Plaintiff disclaims ever signing such a document. *See* Serralta Decl. ¶ 5; Vigne Decl. ¶ 10, Exh. J.

1    Moreover, despite the fact that Plaintiff had no recollection of ever seeing or signing KHAN

2    308, it bore her purported signature. Declaration of Vilma Serralta in Support of Motion for

3    Entry of Default Judgment and Motion for an Order Shortening Time ("Serralta Decl.") ¶¶ 3-5;

4    *see* Vigne Decl. ¶ 10, Exh. J. Due to the delinquent production of KHAN 308 long after

5    responsive documents were due and after the Defendants' depositions had been taken, Plaintiff's

6    counsel reopened the depositions of Defendants and Ms. Chopra. Vigne Decl. ¶ 13. On April 7,

7    2009, Ms. Chopra testified that she signed KHAN 308, and hand-wrote the date "8/19/2002."

8    *See* Deposition of Harleen Chopra, Apr. 7, 2009 ("Chopra Dep. Vol. 2"), 320:22 – 321:16, at

9    Vigne Decl. ¶ 14, Exh. K.1. Despite Mrs. Khan's prior testimony that she was "not aware" of

10   any other documents responsive to RFPs 4 and 6, she now testified that she had repeatedly asked

11   Ms. Chopra to find KHAN 308 in particular, and had "known it all along that [KHAN 308] was

12   there." Deposition of Roomy Khan, Apr. 7, 2009 ("Roomy Khan Dep. Vol. 2"), 241:10, at Vigne

13   Decl. ¶ 16, Exh. L.1. *Compare id.* at 235:14-22; 236:5 – 237:13; 238:11 – 241:14; *with* Roomy

14   Khan Dep. Vol. 1, 70:17 – 71:10, at Vigne Decl. ¶ 8, Exh. A.2.

15        Although Mrs. Khan further testified that Ms. Chopra had found KHAN 308 *on the same

16   day* as the cancelled checks—copies of which had been produced on February 18, 2009—she

17   was unable to explain why KHAN 308 itself was not produced until March 13, 2009. Roomy

18   Khan Dep. Vol. 2, 236:5 – 237:13, 239:18 – 240:4, at Vigne Decl. ¶ 16, Exh. L.1. Because the

19   origins and authenticity of KHAN 308 were plainly in question, Plaintiff's counsel queried Mrs.

20   Khan and Ms. Chopra in their second depositions as to the whereabouts of the original of KHAN

21   308, inasmuch as it was necessary for conclusive expert inspection. Vigne Decl. ¶ 13. Ms.

22   Chopra testified that she did not keep the original of KHAN 308,[5] but that the first and only copy

23   (the "first copy") she had made of KHAN 308 had been stored in Mrs. Khan's office at

24   Defendants' residence, along with the original cancelled checks, photocopies of which had been

25

26   _____

     [5] Ms. Chopra testified that she made a copy of KHAN 308 for Mrs. Khan's records and gave the original
     document to Plaintiff. Chopra Dep. Vol. 2, 329:20 – 330:7, at Vigne Decl. ¶ 15, Exh. K.2. Plaintiff,
27   however, has been adamant not only that she never received KHAN 308 in either original or photocopied
     form, but also that she had never even seen KHAN 308 before Defendants produced it in March 2009.
28   *See* Serralta Decl. ¶¶ 4-5.

1  produced in February 2009. Chopra Dep. Vol. 2, 330:25 – 331:11, 339:9-23, at Vigne Decl. ¶ 15,

2  Exh. K.2. On the same date, Plaintiff's counsel served Defendants with a letter requesting the

3  original or best copies of KHAN 308 and the cancelled checks.[6]

4        Despite the fact that Ms. Chopra stated that these documents had been found recently,

5  and even with repeated assurances from Defendants' counsel and a statement from Mrs. Khan

6  herself that Defendants would willingly produce the first copy of KHAN 308 to Plaintiff,

7  Defendants refused to provide a date by which they would be produced. Roomy Khan Dep. Vol.

8  2, 273:11-24, at Vigne Decl. ¶ 17, Exh. L.2. Correspondence with Jonathan Hicks, at Vigne

9  Decl. ¶ 19, Exh. O.1. On April 13, 2009, after extensive meet and confer efforts had proven

10 fruitless, Plaintiff filed a motion to compel the production of those original documents.[7]

11 Plaintiff's Motion to Compel Production of Original Documents, Docket No. 86.[8] After referring

12 Plaintiff's Motion to Compel to Magistrate Judge James for consideration, Plaintiff's motion was

13 denied without prejudice, subject to re-filing as a joint letter. Notice of Reference, Docket No.

14 100.

15        On April 22, 2009, Plaintiff served Defendants with the first report by Plaintiff's forensic

16 document examiner, David S. Moore,[9] regarding the authenticity of Plaintiff's signature on

17
18 [6] Plaintiff made these requests pursuant to the General Instructions included in Plaintiff's RFPs, in which Plaintiff reserved the right to inspect originals of any copies produced, as well as any electronic metadata,
19 which would contain the document's history of creation and modification. *See* Vigne Decl. ¶ 3, Exhs. C, D. Pursuant to these Instructions, Plaintiff's April 7, 2009 letter also requested the metadata for KHAN
20 308 and KHAN 125, as well as original or best copies of several other documents, with Bates numbers KHAN 309 through KHAN 314. *See* Vigne Decl. ¶¶ 18. KHAN 309–314 were employment-related
21 letters similar in form and content to KHAN 308, but for other household employees, and were responsive to RFP 42 from Plaintiff's Third Set of RFPs, which requested documents relating to Defendants' other
22 residential employees. *See* Plaintiff's Third Set of Requests For Production, and Errata, to Roomy Khan and to Sakhawat Khan, at Vigne Decl. ¶ 9, Exhs. M and N, respectively. KHAN 309–314 were produced
23 on March 26, 2009, thirteen days after the appearance of KHAN 308. Vigne Decl. ¶ 12.

24 [7] Because of Defendants' delay in producing the original documents for expert inspection, Plaintiff concurrently filed a motion for an Order to Extend the Expert Disclosure and Expert Discovery Cut-Off
25 Times. Docket No. 85. *See also* Declaration of David S. Moore, in support thereof. Docket No. 88.

26 [8] The Statement of Facts in Plaintiff's Motion to Compel contains a more detailed factual description of the relevant events up to that point. *See* Pl.'s Mot. to Compel, 3:14 – 13:3. Docket No. 86.

27
28 [9] Mr. Moore is a certified Diplomate of the American Board of Forensic Document Examiners, has worked in the area of forensic document examination for over 35 years, including over ten years with the

KHAN 308. Vigne Decl. ¶ 20; *see* Report pertaining to Serralta v. Khan, April 15, 2009; Moore Decl. ¶ 7 Exh. 1. Since Defendants had not yet produced either the originals of the cancelled checks or the first copy of KHAN 308, this first report necessarily was based solely upon an examination of the copies of those documents that had been produced.

Based on a detailed analysis of the documents available to him at the time, which included photocopies of thirty-eight signatures on cancelled checks and KHAN 308, Mr. Moore was "virtually certain" that Plaintiff did not sign KHAN 308 and that her signature had, in fact, been falsified. Report pertaining to Serralta v. Khan, April 15, 2009, at Moore Decl. ¶ 7, Exh. 1, at 2. Mr. Moore further opined with virtual certainty that the signature on KHAN 308 was "the product of a 'cut and paste' operation in which the genuine signature of Ms. Serralta that was written as the endorsement on [cancelled check number 212][10] was 'cut' from a copy of the back of the check . . . and, after some size manipulation, this signature was 'pasted' onto what became [KHAN 308]." *Id.* Mr. Moore noted, however, that "[i]f a better quality copy of [KHAN 308] and/or the original of [check 212] can be obtained, definitive conclusions may result." *Id.* at 17. This report further emphasized the necessity for Defendants to comply with Plaintiff's request of April 7, 2009 to produce an original or best copy of these documents for inspection by Mr. Moore.

Because the report had cast considerable doubt on the authenticity of KHAN 308, on April 23, 2009, Plaintiff's counsel renewed their demand for the originals or best copies of KHAN 308 and the cancelled checks.[11] After an unnecessary delay of three weeks, during which

---

California Department of Justice, and has appeared, qualified, and testified in over 600 cases as an expert in the field of questioned documents. Mr. Moore's curriculum vitae is attached as an exhibit to his first report. Report pertaining to Serralta v. Khan, April 15, 2009, at Moore Decl. ¶ 7 Exh. 1, at Exh. A.

[10] A photocopy of check 212 was produced on February 18, 2009, and a second photocopy, Bates-stamped "KHAN 337," was produced soon thereafter. *See* Vigne Decl. ¶ 6. This motion will refer to both copies as check 212.

[11] *See supra* n.5. Plaintiff also renewed her demand for originals or best copies of KHAN 309–314 and the metadata for KHAN 308 and KHAN 125. Vigne Decl. ¶ 21. Defendants' counsel responded on April 27, 2009 that he was "working with [his] client" to gather and produce the metadata. Correspondence with Jonathan Hicks, at Vigne Decl. ¶ 21, Exh. O.2.

Defendants' counsel, gave the documents to their own expert to examine, they finally produced the putative first copy of KHAN 308 and the original cancelled checks to Mr. Moore on April 30, 2009.[12] Correspondence with Jonathan Hicks, at Vigne Decl. ¶ 21, Exh. O.2. Based upon these documents, Mr. Moore wrote a Supplemental Report dated May 22, 2009. 1st Supplemental Report pertaining to Serralta v. Khan, May 22, 2009, at Moore Decl. ¶ 22, Exh. 2. In his Supplemental Report, Mr. Moore even more strongly affirmed his prior findings that Plaintiff did not sign KHAN 308 and that Plaintiff's signature was "cut and pasted" from check 212.[13] Because he now had the opportunity to base his examination on documents that were closer to the originals than those previously provided, Mr. Moore now held "the highest degree of confidence" in his conclusion that Plaintiff's signature was forged. *Id.* at 2.[14]

In addition to confirming that the signature on KHAN 308 was falsified, Mr. Moore's Supplemental Report expressed the opinion that the document, which bore the date of August 19, 2002, in fact "was created sometime after January 21, 2005." *Id.* at 2-3. He also concluded that check 212 had been "consciously altered in an attempt to obscure that [sic] fact that it was the source of the 'cut and paste' signature depicted on [KHAN 308];" that an endorsement signature on the back of another cancelled check, number 4204,[15] was similarly "consciously altered,"

---

[12] One day earlier, on April 29, 2009, Defendants' counsel filed its first motion to withdraw as counsel. Motion to Withdraw as Attorney. Docket No. 101.

[13] In order to avoid confusion between the original and the copies of the check, identified by Mr. Moore as both K1(25) and K1(25c), *see* Moore Decl. ¶ 10 Exh. 2, this Motion will use the number printed on the face of the check, 212, to refer to both the original check and its photocopy.

[14] Despite Ms. Chopra's deposition testimony that Defendants' copy of KHAN 308 was the only copy made from the original, and therefore was a first-generation copy, *see* Chopra Dep. Vol. 2, 330:25 – 331:11, at Vigne Decl. ¶ 15 Exh. K.2, Mr. Moore noted that this putative first copy "still appeared to be a multiple generation copy." 1st Supp. Report pertaining to Serralta v. Khan, May 22, 2009 , at Moore Decl. ¶ 10 Exh. 2, at 3. However, Mr. Moore noted that such poor quality copies were common in "cut and paste" situations due to the use of one document to create another, such that "an original questioned document with an original, inked signature cannot exist." *Id.* at 8.

[15] Mr. Moore's supplemental report refers to check 4204 as K1(10). Moore Decl. ¶ 10 Ex. 2, 1st Supp. Report pertaining to Serralta v. Khan, May 22, 2009 at 2. Unlike check 212, Defendants had not previously produced a photocopy of check 4204 to Plaintiff, and therefore check 4204 does not have a corresponding Bates stamp number. Vigne Decl. ¶ 22.

perhaps "as 'practice' in preparation for ultimately altering the [check 212] signature;" and that these conscious alterations were made *after* unaltered copies of the checks had already been produced to Plaintiff in February 2009. *Id.* at 2-3, 6.[16]

Plaintiff continued to communicate with Defendants' counsel in an attempt to obtain the documents she had requested on April 7, 2009, including the metadata for KHAN 308 and KHAN 125, and the original or best copies of KHAN 309–314. Correspondence with Jonathan Hicks, at Vigne Decl. ¶ 21, Exh. O.2. However, these communications proved unfruitful, as the documents were not forthcoming, and Defendants' latest claim that the metadata had been destroyed was unaccompanied by any declaration explaining the conditions of destruction, as required.[17] Vigne Decl. ¶ 24. On May 18, 2009, after meeting and conferring several times with Defendants' counsel, Plaintiff reiterated her requests for these documents in a joint letter to Magistrate Judge James. Letter from Vigne/Hicks re: Responses to RFPs, Docket No. 110. On May 27, 2009, Judge James granted Plaintiff's motion to compel production of the metadata and the best copies of KHAN 309–314. Discovery Order Re: Plaintiff's Request for Production, Docket No. 116.

Responding to Judge James's order, Defendants produced a declaration by Mrs. Khan on June 9, stating that Defendants had already produced the best copies of KHAN 309–314 and that the metadata was unavailable because Defendants had "recycled" their computers "two years ago." Declaration of Roomy Khan, June 9, 2009, at Vigne Decl. ¶ 25, Exh. P, at 2:3-6. But this declaration, again, failed to provide the requisite information regarding the details of the

---

[16] Mr. Moore's Supplemental Report included detailed descriptions of the alterations made to the original cancelled check endorsements, including the fact that these alterations were made with different inks than the original, genuine signatures, and the opinion that they were made purposefully to conceal the "cut and paste" operation used to fabricate KHAN 308. 1st Supp. Report pertaining to Serralta v. Khan, May 22, 2009, at Moore Decl. ¶ 10, Exh. 2, at 5-6. It is particularly notable that, when comparing signatures between the photocopies of check 212 (made and produced in February 2009) and the original check 212 (produced at the end of April 2009), the differences are visible even to the untrained eye, pointing to the inescapable conclusion that the signature on the original check was altered *after* photocopies of the unaltered check 212 were made and produced to Plaintiff. *See id.* at Exh. K (juxtaposing the signature on KHAN 308 with signatures from the photocopies and the original of check 212).

[17] Pursuant to Plaintiff's General Instructions, Defendants must produce an explanatory declaration for any requested evidence that has been destroyed. Vigne Decl. ¶ 3 Exhs. C, D.

1    metadata's destruction. Correspondence with Jonathan Hicks, at Vigne Decl. ¶¶ 25 Exh. O.3.

2    Furthermore, because the only produced copies of KHAN 309–314 had been Bates-stamped,

3    better versions of the documents must have existed and been in Defendants' possession prior to

4    Bates-stamping, further demonstrating the insufficiency of Defendants' latest production. *See*

5    Vigne Decl. ¶ 25.

6        Accordingly, on July 7, 2009, and contrary to Mrs. Khan's prior sworn declaration,

7    Defendants produced <u>new</u> "best" copies of KHAN 309–314 without Bates stamps, and a new

8    declaration by Mrs. Khan describing the recycling of all computers purchased between April 11,

9    2003 and the present. Declaration of Roomy Khan Regarding Computers, Metadata, and Original

10   Documents, July 6, 2009, at Vigne Decl. ¶ 26, Exh. Q. However, because Plaintiff seeks the

11   metadata for KHAN 308 and KHAN 125 – documents purportedly created in 2002 – Mrs.

12   Khan's declaration remains insufficient. Correspondence with Jonathan Hicks, at Vigne Decl. ¶¶

13   26-27, Exh. O.4.

14       To date, Defendants have not responded to Plaintiff's concerns regarding pending

15   discovery, nor have they produced any report rebutting Mr. Moore's findings. Vigne Decl. ¶ 22.

16   **III.    ARGUMENT**

17       **A.    <u>The Court Has the Inherent Power to Impose Terminating Sanctions in the Extreme Circumstances Here.</u>**

18       As part of their inherent power to manage their own proceedings and to control the

19   conduct of those who appear before them, the federal courts have the "inherent power to impose

20   . . . sanction[s] for bad faith conduct." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991). That

21   power is "necessary to the integrity of the courts" as it enables judges to punish those who

22   "tamper[] with the administration of justice . . . [and commit] wrong[s] against the institutions

23   set up to protect and safeguard the public." *Id.* at 44 (quoting *Hazel-Atlas Glass Co. v. Hartford-*

24   *Empire Co.*, 322 U.S. 238, 246 (1944)). This inherent power is not "governed by rule or statute

25   but by the control necessarily vested in courts to manage their own affairs so as to achieve the

26   orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31

27

28

1    (1962).[18]

2       Courts have broad discretion in devising appropriate sanctions for actionable

3    misconduct:[19] logically, the more egregious the conduct, the harsher the sanction.[20] Indeed, "the

4    most severe in the spectrum of sanctions provided by statute or rule *must be available* to the

5    district court in appropriate cases, not merely to penalize those whose conduct may be deemed to

6    warrant such a sanction, but to deter those who might be tempted to such conduct in the absence

7    of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)

8    (per curiam) (emphasis added). As such the courts have, under certain "extraordinary"

9    conditions, *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988), or "extreme

10    circumstances", imposed such severe sanctions as entry of default judgment or dismissal of an

11    action. *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986);

12    *see, e.g., Nat'l Hockey League*, 427 U.S. at 643 (upholding sanction of dismissal because of

13    "respondents' 'flagrant bad faith' and their counsel's 'callous disregard' of their

14    responsibilities"); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) (upholding

15    dismissal because litigant had "stooped to the level of fraud on the court"); *Alexander v. Nat'l

16    Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982) (concluding that the severe sanction of

17    dismissal is warranted for "outrageous" conduct, such as a deliberate pattern of shuffling and

18

---

19    [18] While several rules of the Federal Rules of Civil Procedure including, for example, Fed. R. Civ. P. 11,
20    16(f), and 37(b)(2)(A)(ii)-(vii), provide for a variety of sanctions, none of these rules cover the
     falsification of evidence in this case. As such, the court must rely on its inherent power to reach the
21    conduct at issue. *See Chambers,* 501 U.S. at 50 ("Furthermore, when there is bad-faith conduct in the
     course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely
22    on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the
     statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *see also Halaco
23    Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (referring to the court's inherent power "to impose
     sanctions for discovery abuses that may not be a technical violation of the discovery rules"); *Fjelstad v.
24    Am. Honda Motor Co.,* 762 F.2d 1334, 1336 (9th Cir. 1985) (referring to the district court's invocation of
     "its inherent authority only to penalize conduct that it did not find to violate either its discovery orders or
25    the discovery rules").

26    [19] *See Chambers*, 501 U.S. at 44-45 (referencing the court's "ability to fashion an appropriate sanction for
     conduct which abuses the judicial process").

27

28    [20] Courts have an array of sanctions that may be imposed in response to abusive litigation practices. For
     an in depth analysis of the scope of available sanctions, *see infra* Section B.3.

1    hiding documents to avoid discovery).

2          In the Ninth Circuit, the entry of default judgment or dismissal is justified when "a party

3    has engaged deliberately in deceptive practices that undermine the integrity of judicial

4    proceedings." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.

5    1995). Accordingly, the Ninth Circuit has repeatedly upheld terminating sanctions when "a party

6    has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly

7    administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983);

8    *see also Anheuser-Busch*, 69 F.3d at 348 (upholding dismissal of counterclaims pursuant to

9    court's inherent power where defendant knowingly made false denials of material fact and

10   willfully failed to comply with discovery orders); *Princess Ermine Jewels*, 786 F.2d at1451

11   (upholding dismissal of counterclaims pursuant to court's inherent power where defendant's

12   failure to comply with a court order was willful and made in an attempt to mislead the court);

13   *Shearson Loeb Rhoades, Inc. v. Quinard,* 751 F.2d 1102, 1103 (9th Cir. 1985) (upholding default

14   judgment against defendants in one action and dismissal of their other action due to their willful

15   and deliberate disobedience of a discovery order, willful concealment of evidence, and attempted

16   fabrication of false evidence).

17         In particular, the Ninth Circuit has repeatedly held that falsifying evidence is grounds for

18   the imposition of terminating sanctions. *See Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488

19   (9th Cir. 1991), *cert. denied,* 502 U.S. 859 (1991) (upholding dismissal pursuant to the court's

20   inherent power and Rule 11 where plaintiff falsified parts of his deposition transcript); *Aptix*

21   *Corp. v. Quickturn Design Sys., Inc.,* 269 F.3d 1369, 1374-76 (9th Cir. 2001) (upholding the

22   dismissal of a patent infringement complaint where the plaintiff staged the disappearance and

23   reappearance of engineering notebooks, one which the district court found to be a complete fraud

24   without a single genuine entry, and another whose once-genuine entries had been altered); *Prof'l*

25   *Seminar Consultants v. Sino Am. Tech. Exch. Council*, 727 F.2d 1470, 1474 (9th Cir. 1984)

26   (upholding default judgment in suit for libel and conversion where defendant produced falsified

27   documents during discovery to support apparently untenable claims and defenses); *Greenburg v.*

28   *Roberts Props. (Greenburg III)*, 246 Fed. App'x 500, 502 (9th Cir. 2007) (upholding dismissal

of action on the grounds that plaintiff attached documents with defendant's forged signature as exhibits to his complaint); *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384, 390-91 (E.D. Cal. 1992) (imposing sanction of default judgment against defendant for committing fraud on the court by submitting a fraudulent document and for committing perjury in furtherance thereof).[21]

The reasoning behind the terminating sanctions imposed in the foregoing cases mandates the entry of default judgment in this case. As in those cases, Defendants here have deceived both Plaintiff and the court, producing a fabricated document, KHAN 308, and "tak[ing] too literally the maxim that justice is blind, for justice would actually have to be blind not to see that the signature . . . [Defendants] ha[ve] tried to pass of as authentic [is] in fact [a] forger[y]." *Greenburg v. Roberts Props., LTD (Greenburg II),* Case No. CV-04-0001-PHX-SRB, 2006 U.S. Dist. LEXIS 6776, at *15 (D. Ariz. Feb. 16, 2006). Such egregious behavior warrants terminating sanctions. *See, e.g., Aptix,* 269 F.3d at 1374-76; *Prof'l Seminar Consultants*, 727 F.2d at 1474; *Sun World*, 144 F.R.D. at 390-91. As in *Greenburg III,* where the district court's findings were based upon straightforward evidence presented by a forensic document examiner who opined that the questioned signatures of the defendant were in fact forged,[22] Mr. Moore's unrebutted reports conclude with "the highest degree of confidence" that Plaintiff did not write her purported signature on KHAN 308, and that it had therefore been falsified. *See* 246 Fed. App'x at 502; Moore Decl. ¶ 10, Exh. 2.[23]

---

[21] Courts outside the Ninth Circuit have similarly concluded that terminating sanctions are merited when falsified evidence is submitted to the court. *See, e.g., Aoude,* 892 F.2d at 1116-18 (affirming district court's dismissal of action where the plaintiff fabricated a crucial document, attached it to the complaint, and committed other dishonest acts, all in order to "gain unfair advantage" in the litigation).

[22] The district court also reached its conclusion based on defendant's affidavit attesting that he had not signed the documents in question. *See Greenburg v. Roberts Props., LTD (Greenburg I),* 2005 U.S. Dist. LEXIS 38094, at *9 (D. Ariz. Dec. 22, 2005); *Greenburg II,* 2006 U.S. Dist. LEXIS 6776, at *4-5. Plaintiff, here, has also attested that she had never even seen KHAN 308 during her employment with Defendants, nor did she ever sign such a document. *See* Serralta Decl. ¶¶ 4-5.

[23] *See also Prof'l Seminar Consultants,* 727 F.2d at 1472-73 (upholding dismissal because of falsified documents, and finding not clearly erroneous the magistrate judge's finding that the documents were false, based on two affidavits—one based on hearsay—and a letter in support of sanctions motion, even without evidentiary hearing).

Moreover, in furtherance of this forgery, Defendants have engaged in a pattern of extreme litigation misconduct, offering plainly perjured testimony, altering other documentary evidence, and employing a wide range of dilatory discovery tactics to further subvert Plaintiff's prosecution of this matter. *See infra,* Sec. B.3.b. Their actions surpass the "reprehensible" behavior of the Defendant in *Sun World*. *See* 1992 U.S. Dist. LEXIS 20847, *17 (finding that Defendant perjured himself on at least two occasions in the furtherance of fraud); Vigne Decl. ¶¶ 8, 15-19, 24-27. Taken together, the foregoing has undoubtedly created extreme circumstances, supporting the imposition of the sanction of default judgment.

### B.     The Relevant Factors Mandate Terminating Sanctions in This Case.

When determining whether to impose terminating sanctions pursuant to its inherent powers, the Court may consider several factors. The Ninth Circuit has established that for terminating sanctions to be proper, "a finding of 'willfulness, fault, or bad faith' is required." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing to *Anheuser-Busch*, 69 F.3d at 348); *see also Halaco*, 843 F.2d at 380. It is also required that "there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 348 (internal citation omitted)*; see also Halaco*, 843 F.2d at 380. Furthermore, since terminating sanctions "under a court's inherent powers are subject to much the same considerations as those under the Federal Rules of Civil Procedure," *Halaco*, 843 F.2d at 380, courts have also weighed the following factors, borrowed from analyses regarding the imposition of sanctions under Rules 16 and 37:[24] (1) the availability of less severe sanctions;[25] (2) the risk of prejudice to the party seeking sanctions;[26] (3) the public's interest in expeditious resolution of litigation; (4) the court's

---

[24] In *Anheuser-Busch*, the Ninth Circuit applied this five-factor test, usually used to review the propriety of sanctions under Rule 37, to review sanctions granted under the court's inherent powers. 69 F.3d at 348; Fed. R. Civ. P. 37. The Ninth Circuit adopted the same five-factor analysis in *Leon.* 464 F.3d at 958.

[25] *See also Halaco*, 843 F.2d at 380.

[26] The factor of "prejudice to the party victim of the misconduct" is an optional consideration in *Halaco*. 843 F.2d at 380.

need to manage its docket;[27] and (5) the public policy favoring disposition of cases on their merits. *See, e.g., Leon*, 464 F.3d at 958; *Anheuser-Busch*, 69 F.3d at 348; *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).[28] The district court "need not make explicit findings regarding each" of these five factors. *Leon*, 464 F.3d at 958.[29] Rather, termination is proper "where at least four factors support dismissal . . . or where at least three factors 'strongly' support dismissal." *Yourish v Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1263 (9th Cir. 1992)).[30]

### 1. Defendants' Falsification of Evidence, and Their Actions in Furtherance Thereof, Reflects Willfulness, Bad Faith, and Fault.

The Ninth Circuit has stated that "[f]airness demands that the severe sanction of default may not be imposed . . . in the absence of willfulness, bad faith, or fault." *Fjelstad*, 762 F.2d at 1341 (internal citation omitted). To demonstrate such willfulness, bad faith, or fault, "disobedient conduct not shown to be outside the control of the litigant" must be shown. *Henry,* 983 F.2d at 948 (quoting *Fjelstad*, 762 F.2d at 1341).

Defendants' falsification of KHAN 308 clearly satisfies this requirement. After all, "this fraud, as any fraud, was perpetuated for an improper purpose." *Sun World,* 144 F.R.D. at 389. Indeed, courts, by merely examining the evidence,[31] have repeatedly concluded that where fraud has been committed, the willfulness requirement has necessarily been met. *See, e.g., Phoceene*

---

[27] This factor, arguably analogous to the factor of "the government interests at stake" in *Halaco,* is also an optional consideration in that test. 843 F.2d at 380.

[28] As demonstrated, the analysis for the imposition of terminating sanctions in these cases remains largely the same as the test enumerated in *Halaco. Compare Leon*, 464 F.3d at 958; *Anheuser-Busch*, 69 F.3d at 348; *Henry*, 983 F.2d at 948, *with Halaco*, 843 F.2d at 380.

[29] Rather, the various factors "amount[] to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (referring to *Valley Eng'rs v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

[30] The district court's findings of fact in this regard, including findings of bad faith and prejudice, are reviewed for clear error. *Anheuser-Busch, Inc.*, 69 F.3d at 348. Dismissal pursuant to the court's inherent power is reviewed for abuse of discretion. *Id.*

[31] "[T]he falsity is subject to proof by circumstantial evidence, admissions, and other evidence." *Valley Eng'rs*, 158 F.3d at 1055.

1   *Sous-Marine, S. A. v. U. S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir. 1982) (finding that

2   when questioned about a telegram and the circumstances surrounding its dispatch, defendant

3   "told numerous contradictory stories" and "at no time . . . [came] forward and explain[ed] the

4   circumstances surrounding the telegram," and concluding that "the evidence was sufficient to

5   clearly and convincingly establish that defendant willfully deceived the court"); *Greenburg II*,

6   2006 U.S. Dist. LEXIS 6776, at \*22 (finding that, after Plaintiff forged a document, attached it

7   to his verified complaint, lied about its authenticity in his deposition, and later tampered with

8   and altered the document, "as should be clear from the above discussion [of facts,] Plaintiff's

9   actions were willful and in bad faith"); *Sun World,* 144 F.R.D. at 390 (implicitly finding

10  willfulness, bad faith, or fault where Defendant "admitted to having committed a fraud").[32]

11      These cases make clear that, given the undisputed evidence of document fraud in this

12  case,[33] the Defendants acted willfully, in bad faith, and with fault in fabricating KHAN 308. *See,*

13  *e.g., Prof'l Seminar Consultants,* 727 F.2d at 1474; *Greenburg II*, 2006 U.S. Dist. LEXIS 6776,

14  at \*22; *Sun World,* 144 F.R.D. at 390. As explained above, and as confirmed "with the highest

15  degree of confidence" by Mr. Moore's Supplemental Report, Defendants intentionally fabricated

16  and pre-dated KHAN 308, and "cut and pasted" Plaintiff's signature onto the letter.[34] 1st

---

[32] Even in cases involving less egregious conduct, courts have repeatedly found that the willfulness, bad faith, or fault requirement is satisfied by a mere examination of the facts. *See, e.g., Leon,* 464 F.3d at 959 (concluding that plaintiff's behavior amounted to "willful spoliation because he knew he was under a duty to preserve all data on the laptop, but intentionally deleted many files and then wrote a program to write over deleted documents"); *Valley Eng'rs,* 158 F.3d at 1054 (finding that "willfulness was a fair inference from the fact that, in the euphemistic phrasing of the magistrate judge, the critical witnesses' testimony was 'not credible'"); *Princess Ermine Jewels,* 786 F.2d at 1451 (finding a "willful violation of the discovery order" where appellants represented that they did not have the documents in question and later produced those very documents); *Anheuser-Busch,* 69 F.3d at 349-51 (concluding, after reviewing "the evidence in some detail," that defendant "knew almost immediately after the fire that the . . . documents survived in legible form," but nevertheless lied to plaintiff and to the court throughout the litigation by alleging that the documents had been destroyed).

[33] Ninth Circuit case law places the burden on the disobedient litigant to present evidence that the conduct was not willful, in bad faith, or with fault. *See Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003) (placing burden on defendant to "present evidence that he attempted to obtain" the subject discovery and demonstrate that production of such discovery "would be impossible" or "would subject him to civil or criminal sanctions"). However, Defendants here have not offered any evidence to counter Plaintiff's allegations of document fraud.

[34] The fabrication of KHAN 308 naturally calls into question the authenticity of other documents like KHAN 14/125 and KHAN 123, which Plaintiff also never received during her employment with

Supplemental Report pertaining to Serralta v. Khan, May 22, 2009, at Moore Decl. ¶ 10, Exh. 2, at 2. Moreover, in furtherance of this falsification, Defendants have engaged in an egregious pattern of deceit. They have offered contradictory and perjured testimony regarding the existence of KHAN 308. *See Anheuser-Busch,* 69 F.3d at 349-51; *Phoceene Sous-Marine,* 682 F.2d at 806; *Greenburg,* 2006 U.S. Dist. LEXIS 6776, at *22; *Sun World,* 144 F.R.D. at 390; Vigne Decl. ¶¶ 8, 16, Exhs. A.2, L.1. In addition, they have "consciously altered" Plaintiff's genuine signatures on two cancelled checks, one of which was the source document for KHAN 308, "in an attempt to obscure that fact." Moore Decl. ¶ 10, Exh. 2, at 2. *See Greenburg*, 2006 U.S. Dist. LEXIS 6776, at *22. They have further given contradictory testimony regarding the metadata for KHAN 308, first promising its production, then stating that it had been destroyed. *See* Vigne Decl. ¶¶ 19, 21, Exhs. O.1, O.2. The explanation provided for the destruction of the metadata of KHAN 308 is equally vague. *See Leon,* 464 F.3d at 959. *Compare* Vigne Decl. ¶ 25, Exh. P (attesting that the metadata was destroyed when the computer was recycled "two years ago"), *with* Vigne Decl. ¶ 26, Exh. Q (accounting, under penalty of perjury, for the recycling of all computers bought since April 2003—although KHAN 308 and KHAN 14/125 were purportedly created in August 2002—between November 2006 and September 2007)."[35] As such, Defendants' falsification of evidence, and egregious misconduct in furtherance of that falsification, satisfies the willfulness, bad faith, or fault requirement.

### 2. A Nexus Exists Between Both the Falsified and the Spoliated Evidence and Defendants' Defense

In the Ninth Circuit, "the misconduct penalized must relate to matters in controversy in

---

Defendants, as well as KHAN 309–314, documents comparable to KHAN 308 for other household employees. *See Princess Ermine Jewels*, 786 F.2d at 1451; *see* Serralta Decl. ¶ 7; *see* Vigne Decl. ¶ 12.

[35] If Defendants had, in fact, created KHAN 308 prior to 2007, and recycled the computer they used to create KHAN 308 in September 2007—after Plaintiff filed her wage claim with the Labor Commissioner on August 2, 2007, *see* Vigne Decl. ¶ 2—Defendants' conduct would amount to intentional destruction of the metadata. *See Leon,* 464 F.3d at 959 ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed.") (internal citation omitted).

such a way as to interfere with the rightful decision of the case." *Halaco*, 843 F.2d at 381. In other words, "[t]here must be a nexus between the party's actionable conduct and the merits of his case." *Id. See Combs*, 927 F.2d at 488 (finding that plaintiff's counsel's changes to the deposition transcript to reflect plaintiff's belief that his employer and union had intended to harm him were "of central importance" and were "crucial" to his claims of breach of collective bargaining agreement, breach of fiduciary duty, and breach of duty of fair representation); *Wyle,* 709 F.2d at 591 (finding plaintiff's false testimony about rebating to be "clearly relevant" since, although it would not have been a "complete bar" to defendant's antitrust action, it could have been used to "controvert the existence of damages or limit the amount" thereof).[36]

There is no document that could be more central to Defendants' defense than KHAN 308. *See Sun World,* 144 F.R.D. at 391 ("The court is hard put to think of any document which could be more firmly connected to the merits of this case than this one; if accepted as genuine it would have disposed of [plaintiff's] case in one fell swoop."). KHAN 308, a document that purports to detail Plaintiff's actual job responsibilities and schedule, conveniently claims to memorialize an understanding of Plaintiff's work duties and hours directly contrary to that in the Complaint, alleging that Plaintiff's responsibilities were in fact highly circumscribed and limited to a few precisely enumerated hours of the day, and even going so far as to reflect a solicitous regard for Plaintiff's rest periods.[37] *See Combs*, 927 F.2d at 488; *Greenburg III,* 246 Fed. App'x at 503; *Sun World,* 144 F.R.D. at 391; *see also* Vigne Decl. ¶ 10, Exh. J. Given that the dispute over Plaintiff's working hours is at the core of this wage and hour case, KHAN 308, suggesting that

---

[36]  *See also Greenburg III,* 246 Fed. App'x at 503 (finding that the forged documents, allegedly approved construction plans, "were the foundation of the case" involving whether tenant, facing eviction, had in fact complied with the construction plans approved by the landlord); *Sun World,* 144 F.R.D. at 391 (concluding that the nexus requirement had been met where the document that defendant fabricated, purporting to release both parties from all potential claims against one another, would have "disposed of [plaintiff's] case in one fell swoop"). *Cf. Halaco,* 843 F.2d at 381, 382 (finding that in a case litigating whether a waste disposal site was in a wetland, the issue of "whether the wastes were 'hazardous' was a peripheral matter" and "could have in no way affected the rightful decision of the case").

[37]  In fact, KHAN 308 could not possibly be better tailored to respond to Plaintiff's allegations that she worked up to sixteen hours a day without legally mandated break periods, as it states "You are to start cleaning the house after 9:00 AM . . . You are to finish your work between 9:00 AM and 12:00 PM. You are not to do any work for the Khans between 12:00 PM and 4:00 PM." *See* Vigne Decl. ¶ 10, Exh. J.

1    Plaintiff only worked the hours described therein, is a critical, if not the most critical, piece of

2    evidence in Defendants' case. If accepted as genuine, KHAN 308 could dispose of Plaintiff's

3    case entirely, or, at very least, drastically limit her amount of recovery. *See Wyle,* 709 F.2d at

4    591 (since evidence "controvert[ed] the existence of damages or limit[ed] the amount" thereof,

5    nexus was established). As such, KHAN 308 would plainly have "threaten[ed] to distort the

6    resolution of the case." *Leon*, 262 F.3d at 960.

7           Furthermore, in the spoliation context, a nexus exists if the party destroyed evidence that

8    was "relevant to the litigation and was comprised within . . . discovery requests." *See Anhueser-*

9    *Busch*, 69 F.3d at 351 (upholding dismissal where defendant suppressed documents relevant to

10   plaintiff's claims and responsive to discovery requests). Indeed, "because the relevance of . . .

11   destroyed documents cannot be clearly ascertained because the documents no longer exist, a

12   party can hardly assert any presumption of irrelevance as to the destroyed arguments." *Leon,* 262

13   F.3d at 960 (upholding dismissal where the types of files plaintiff deleted would likely have been

14   at the heart of the defense). In *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In*

15   *re Napster, Inc. Copyright Litig.)*, for example, the court found the requisite nexus where the

16   defendant systematically failed to preserve emails on its company servers, thereby destroying

17   communications that were the subject of discovery requests. 462 F. Supp. 2d 1060, 1075 (N.D.

18   Cal. 2006). Similarly, the deliberate destruction of metadata for KHAN 308, for which

19   Defendants have repeatedly failed to provide a sufficient explanation, also further supports the

20   nexus between KHAN 308 and the matters in controversy. *See Anhueser-Busch*, 69 F.3d at 351;

21   *Leon,* 262 F.3d at 960; *In re Napster,* 462 F. Supp. 2d at 1075. *Compare* Declaration of Roomy

22   Khan, June 9, 2009, at Vigne Decl. ¶ 25, Exh. P, at 2:3-6 *with* Declaration of Roomy Khan

23   Regarding Computers, Metadata, and Original Documents, July 6, 2009, at Vigne Decl. ¶ 26,

24   Exh. Q.

25

26

27

28

### 3. Terminating Sanctions Are Warranted Here Because Lesser Sanctions Are Inappropriate In Light of Defendants' Pattern of Deception.

Entry of default judgment is the only appropriate sanction in this case because any lesser sanctions would not adequately address the magnitude of Defendants' wrongdoing. Indeed, lesser sanctions need not even be considered because Defendants' pattern of deception and litigation misconduct justifiably casts grave doubt upon their fidelity to truth during the remainder of the case. The Court would effectively condone Defendants' past misconduct if it permitted them to proceed to trial, and would not deter their continuing disregard for the truth and the judicial process. Only through default judgment will Defendants' misconduct be adequately punished, and Plaintiff be assured justice.

Generally, when determining whether a court may order terminating sanctions, a court must have: "(1) . . . discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) . . . implemented alternative sanctions before ordering dismissal; and (3) . . . warned the party of the possibility of dismissal before ordering dismissal." *Leon*, 464 F.3d at 960 (quoting *Anheuser-Busch,* 69 F.3d at 352). However, in cases such as this that involve egregious circumstances, it is unnecessary for the court "to discuss why alternatives to dismissal are infeasible," *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987), or "to impose less serious sanctions first, or to give any explicit warning."[38] *Valley Eng'rs*, 158 F.3d at 1057 (upholding terminating sanctions over lesser sanctions absent explicit warning, due to defendants' willful discovery violations). *See also Leon*, 464 F.3d at 960 (upholding terminating sanctions despite the fact that the district court did not first impose lesser sanctions or provide warning of terminating sanctions).

Indeed, the moving party can justify the default sanction by "either showing that (1) no lesser sanction would adequately punish [the disobedient party] and deter other parties from engaging in the same conduct or (2) [the disobedient party] has engaged in deceptive conduct

---

[38] *See Sun World,* 144 F.R.D. at 389-90 ("the court need not order [a party] from submitting false documents or perjuring himself in order for those acts to be punishable by dismissal and the entry of default judgment. The legal obligation to refrain from committing such acts is imposed upon every party to a lawsuit.").

1    and will continue to do so. *See In re Napster,* 462 F. Supp. 2d at 1074. Here, Plaintiff can

2    demonstrate both, and default judgment should thus be entered.

3                    **a)    Lesser Sanctions Are Inappropriate Because They Would**
                            **Neither Sufficiently Punish Defendants for Their Egregious**
4                           **Misconduct Nor Deter Other Parties from Doing the Same.**

5            "In determining the appropriate sanction, courts should seek to impose a sanction [which

6    will] . . . 1) penalize those whose conduct may be deemed to warrant such a sanction; 2) deter

7    parties from engaging in the sanctioned conduct; 3) place the risk of an erroneous judgment on

8    the party who wrongfully created the risk; and 4) restore the prejudiced party to the same

9    position he would have been in absent the wrongful destruction of evidence by the opposing

10   party." *U.S. ex rel. v. Maxxam, Inc.*, No. C-06-07497, 2009 U.S. Dist. LEXIS 30743, at *23

11   (N.D. Cal. Mar. 27, 2009).

12           Among the available sanctions,[39] Plaintiff looks for guidance to those developed for the

13   destruction or spoliation of evidence. Courts have developed three types of sanctions for the

14   destruction or spoliation of evidence: 1) instructing the jury that it may infer that the evidence

15   was unfavorable to the disobedient party;[40] 2) prohibiting the disobedient party from introducing

16   designated matters into evidence;[41] or 3) imposing terminating sanctions. *See id.* at *23-24

17   (referring to *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)) *Unigard Sec. Ins. Co. v.*

18   *Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 (9th Cir. 1992). *See also Allstate Ins. Co.*

19   _____

20   [39] While not directly applicable in this case, Plaintiff has considered those sanctions available under Fed.
     R. Civ. P. 37. Striking pleadings, dismissing the action, or staying proceedings would serve no purpose in
21   this situation, and would only reward Defendants' egregious conduct. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii)-
     (v). Moreover, contempt of court and monetary sanctions would be plainly insufficient because they
22   would fail to either address Defendants' propensity to lie and fabricate evidence or to ensure a fair trial on
     the merits. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi), 37(b)(2)(C). *See also Aptix,* 269 F.3d at 1378 ("[H]aving
23   been caught in the middle of a fraud on the Court, [the Defendants] should not merely be fined or
     reprimanded and allowed to go forward with a pledge not to do it again."); *Leon,* 464 F.3d at 957 (ruling
24   that a "fine would not arm the [prevailing party] with evidence to counter [the disobedient party's]
     claim").

25
     [40] In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the
26   merits of the case, and further, that such evidence was adverse to the party that destroyed it. *See Phoceene*
     *Sous-Marine*, 682 F.2d at 806.
27
     [41] *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).
28

*v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir. 1995)).

While any order creating an adverse inference from the altered checks or the destroyed metadata would undoubtedly be appropriate,[42] it would clearly not go far enough. Defendants have engaged in grave misconduct, and cannot simply escape their fraud and repeated perjury through an adverse inference. *See Leon*, 464 F.3d at 960 ("'less drastic sanctions are not useful' because a ruling excluding evidence would be 'futile' and fashioning a jury instruction that creates a presumption in favor of [defendants] 'would leave [d]efendants equally helpless to rebut any material that [p]laintiff might use to overcome the presumption.'"). Similarly, mere exclusion of the falsified evidence or of testimony based upon such evidence would likewise not do enough. Defendants' egregious misconduct would be incongruously disregarded, as if it never occurred; this would condone, not condemn, Defendants' actions. Even prohibiting Defendant from introducing any evidence in support of their defenses contained in KHAN 308 would be insufficient for the same reason. Such lesser sanctions would hardly serve to punish Defendants for their gross litigation misconduct or ensure that it would not continue, let alone deter other parties from committing such fraud in the future.

### b)   Defendants' Pattern of Deception and Discovery Abuse, Which Has No Reason to Stop, More Than Justifies Terminating Sanctions.

Entry of default judgment is appropriate "where a 'pattern of deception and discovery abuse [makes] it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'" *Valley Eng'rs.*, 158 F.3d at 1057 (quoting *Anheuser-Busch*, 69 F.3d at 352). Indeed, in deciding whether to impose terminating sanctions, "the most critical factor is . . . truth." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). "There is no point to a lawsuit, if it merely applies laws to lies. True facts must be the foundation for any just result." *Valley Eng'rs.*, 158 F.3d at 1058. As

---

[42] In order for a court to impose an adverse inference sanction, Plaintiff must demonstrate: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that it would support that claim or defense." *In re Napster,* 462 F. Supp. 2d at 1078.

such, "[i]t is appropriate to reject lesser sanctions where the court anticipates continued

deceptive misconduct." *Anheuser-Busch*, 69 F.3d at 352 (upholding district court's finding that

defendant's pattern of deception and discovery abuses made it impossible for the district court to

conduct another trial with any reasonable assurances that the truth would be available).

Like the defendants in *Anheuser-Busch*, Defendants here have engaged in a pattern of

deception and discovery abuse. 69 F.3d at 352. They have not only falsified key evidence, but

have also engaged in dishonest conduct related to those actions—arguably worse than merely

concealing documents. *See id.* Indeed, Defendants have "consciously altered" cancelled checks,

one of which was the source document for KHAN 308, *see* Moore Decl. ¶ 10, Exh. 2, offered

perjured testimony,[43] unreasonably delayed producing relevant documents,[44] and destroyed

metadata related to KHAN 308 and KHAN 14/125.[45] Any one of these actions by Defendants

---

[43] Mrs. Khan has misled Plaintiff and the Court with conveniently concocted stories regarding KHAN 308. In her first deposition, Mrs. Khan said she was "not aware" of any other documents that "la[id] out or explain the duties [Plaintiff] was required to perform." *See* Vigne Decl. ¶ 8, Exh. A.2. Following Defendants' production of KHAN 308 two months later, however, Mrs. Khan testified under oath to a directly contradictory story: not only had she "known . . . all along" about KHAN 308, but she had even asked her assistant to look for it specifically. *See* Vigne Decl. ¶ 16, Exh. L.1. Indeed, like the defendant in *Anheuser-Busch*, Mrs. Khan appears willing "to say anything at any time in order to prevail in this litigation." 69 F.3d at 352.

[44] Despite the specific request for "cancelled checks" in RFP 5, dated June 18, 2008, the Defendants did not even produce copies of Plaintiff's cancelled checks until February 18, 2009. *See* Vigne Decl. ¶ 3, 6, Exhs. C, D.  Similarly, Defendants produced KHAN 308, responsive to RFP 4 and 6, more than eight months after the responses to the June 18, 2008 requests were due. *See* Vigne Decl. ¶ 10, Exh. J. When Plaintiff requested the originals or best copies of critical documents on April 7, 2009, Defendants further stalled, only producing the putative first copy of KHAN 308 and original cancelled checks on April 30, 2009. Defendants produced the "best copies" of KHAN 14/125 and 309–314, whose production was compelled by the May 27, 2009 court order, on July 7, 2009, almost a month after Mrs. Khan had attested to having already produced the best copies of these documents. *See* Vigne Decl. ¶¶ 25-26, Exh. P.

[45] Notwithstanding his April 27, 2009 claim to be working with his clients to gather and produce the metadata, Defendants' attorney informed Plaintiff's counsel on May 14, 2009 that Defendants no longer had the metadata as their computers had been recycled. *See* Vigne Decl. ¶ 21, Exh. O.2. In response to the May 27, 2009 court order, Mrs. Khan attested to having recycled her computers "two years ago," *see* Vigne Decl. ¶ 25, Exh. P, very possibly after Defendants learned of Plaintiff's August 2, 2007 wage claim with the DLSE. Defendants reasonably should have known that they could not simply recycle their computers and destroy evidence central to the litigation. *See Maxxam*, 2009 U.S. Dist. LEXIS 30743, at *22 ("[S]anctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, *or potential litigation,* or are reasonably calculated to lead to the discovery or admissible evidence, and destroys such documents and information."); *see also Leon*, 464 F.3d at 960 (upholding dismissal where plaintiff intentionally deleted files off his laptop); Vigne Decl. ¶

---

could possibly warrant terminating sanctions;[46] when taken together, however, Defendants' actions manifest a concerted and unremitting pattern of deception clearly justifying terminating sanctions. Through their egregious behavior and contempt for the truth, they have "mocked the authority of [the] court," and anything less than default judgment would be "an exercise in futility and [would] operate as an ill-gotten reward for [Defendants'] despicable behavior." *Sun World*, 144 F.R.D. at 391.

### 4. Defendants' Misconduct Has Prejudiced Plaintiff.

The prejudice inquiry "looks to whether the [disobedient party's] actions impaired [the other party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959.[47] Courts in the Ninth Circuit have found prejudice where parties have engaged in intentional fraud, tampered with evidence, offered perjured testimony, and employed delay tactics. In *Sun World*, for example, the court found prejudice because the party moving for sanctions "ha[d] been forced to litigate against an opponent who admittedly and intentionally committed a fraud on this court, who has perjured himself on at least two occasions, who has exercised delay tactics, [and] who has shown complete disregard for the jurisdiction of this court." 144 F.R.D. at 391. Similarly, in *Princess Ermine Jewels*, the court found prejudice when appellants produced a large number of documents which they previously told the court they did not have: "[L]ast-minute tender of documents does not cure the prejudice to opponents." 786 F.2d at 1451. Likewise, in *Leon*, the Ninth Circuit ruled that the defendant

---

2. Later, Mrs. Khan, in a more detailed explanation for the metadata destruction, accounted for all Defendants' computers since April 11, 2003, despite having claimed that both KHAN 308 and KHAN 14/125 were created in 2002. Vigne Decl. ¶ 26, Exh. Q.

[46] *See, e.g., Combs*, 927 F.2d at 488 (finding that fabricating evidence is "grounds for the imposition of the sanction of dismissal"); *Anheuser-Busch*, 69 F.3d at 352 (upholding dismissal in light of perjury and withholding of evidence); *Valley Eng'rs*, 158 F.3d at 1051 (noting that the concealment of important evidence justifies dismissal).

[47] The Ninth Circuit has sent conflicting signals regarding whether prejudice must be shown in order for terminating sanctions to be appropriate. *Compare Halaco*, 843 F.2d at 382, *with Henry*, 983 F. 2d at 948. A court in the Northern District of California has clarified that when a court is acting under its inherent authority, a district court need NOT consider prejudice to the party moving for sanctions. *See In re Napster*, 462 F. Supp. 2d at 1075 & n.4.

had been prejudiced and upheld terminating sanctions against the plaintiff where he had deleted files that were "likely to be at the heart of [defendant's] defense," and where the "spoliation 'threatened to distort the resolution' of the case . . . because any number of the . . . files could have been relevant to [defendant's] claims or defenses." 464 F.3d at 960.

As in the aforementioned cases, Defendants here have fabricated a document. In furtherance of this fraud, Defendants altered and destroyed relevant evidence, provided perjured testimony, withheld evidence, shuffled documents, and otherwise stalled discovery at almost every turn. *See Sun World,* 144 F.R.D. at 391; *Princess Ermine Jewelers,* 786 F.2d at 1451; *Leon*, 464 F.3d at 960; Vigne Decl. ¶¶ 8, 15-19, 24-27. As a result, their misconduct has "greatly impeded the resolution of the case," not only threatening the rightful decision of this matter, but also requiring Plaintiff to expend significant time and resources investigating and litigating Defendants' egregious transgressions.[48] *Leon*, 464 F.3d at 960. Given this long history of wrongdoing and the applicable precedent in this Circuit, Plaintiff here has "no doubt . . . been prejudiced." *Sun World*, 144 F.R.D. at 391.

   5.  **The Public's Interest in the Expeditious Resolution of Litigation as Well as the Court's Need to Manage its Docket Strongly Favor Default Judgment, and Are Not Outweighed by Policy Favoring Disposition of Cases on Their Merits.**

Generally, the public's interest in the expeditious resolution of litigation and the court's need to manage its docket support terminating sanctions, while the policy favoring disposition of cases on their merits does not. *Valley Eng'rs*, 158 F.3d at 1051 (citing *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990)).

Defendants have engaged in numerous abusive litigation practices including forgery, spoliation of key evidence, and perjury. This egregious conduct reveals not only Defendants' arrogant belief that they could commit such transgressions with impunity, but also their utter disregard for the efficiency and integrity of the litigation process. As in *Leon*, Defendants'

---

[48] A simple review of this case's docket reveals as such: Plaintiff's Motion to Compel, November 24, 2008, Docket No. 55; Request to Extend Discovery Deadlines & Motion to Compel Production of Original Documents, April 13, 2009, Docket Nos. 85, 86; Letters from Vigne/Hicks Re: Plaintiff's Motion to Compel, May 18, 2009, Docket Nos. 109-12.

misconduct has "'greatly impeded resolution of the case' by obscuring the factual predicate of the case" and by wasting "time and resources . . . in investigating and resolving the [forgery and] spoliation issues." 464 F.3d at 958, n.5 (holding that factors three and four weighed in favor of terminating sanctions in light of plaintiff's misconduct of destroying files). In the interest of expeditious resolution of this litigation and the court's need to manage its docket, the Court should order default judgment in Plaintiff's favor.

"The only factor weighing against dismissal is 'the public policy favoring disposition of cases on their merits,' which, standing alone, 'is not sufficient to outweigh the other four factors.'" *Id.* at 960-61 (citing *Malone,* 833 F.2d at 133 n.2. *See also Enwere v. Terman Apartments, L.P.*, No. C 07-1239, 2009 WL 1814423, at *8 (N.D. Cal. June 23, 2009) (holding that the sole countervailing interest of resolving cases on their merits was strongly outweighed by considerations of the public's interest in the expeditious resolution of litigation, the court's need to manage its docket, prejudice, and the unavailability of lesser sanctions).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests an Order entering default judgment against Defendants. A proposed order is concurrently lodged herewith.

Dated: July 27, 2009                          Respectfully submitted,

Christopher Ho
Carole Vigne
THE LEGAL AID SOCIETY –
    EMPLOYMENT LAW CENTER

Hillary Ronen
Rocio Alejandra Avila
LA RAZA CENTRO LEGAL, INC.


By:   _/S/ Carole Vigne_____
                CAROLE VIGNE

Attorneys for Plaintiff VILMA SERRALTA