1  THOMAS DAMIEN PAMILLA -- BAR NO. 259931
   PAUL BENSON MYONG & PAMILLA, LLP
2  8380 Rio San Diego Drive, Suite 800
   San Diego, California 92108
3  Phone: (877) 413-7267
   Fax: (888) 583-5670

4  LISA AGUIAR -- BAR NO. 139897
   JONATHAN D. HICKS -- BAR NO. 236981
5  HOGE, FENTON, JONES & APPEL, INC.
   Sixty South Market Street, Suite 1400
6  San Jose, California 95113-2396
   Phone: (408) 287-9501
7  Fax: (408) 287-2583

8  Attorneys for Defendants
   SAKHAWAT KHAN AND ROOMY
9  KHAN

10

11                          UNITED STATES DISTRICT COURT

12                         NORTHERN DISTRICT OF CALIFORNIA

13

14  VILMA SERRALTA,                         No. C0801427 CW

15         Plaintiff,                       **DEFENDANT'S NOTICE OF MOTION AND
                                            MOTION IN OPPOSITION TO PLAINTIFF'S
16  vs.                                     MOTION FOR ENTRY OF DEFAULT
                                            JUDGMENT**
17  SAKHAWAT KHAN; ROOMY KHAN;
    and DOES ONE through TEN,               **Date:** [to be determined]
18  inclusive,
                                            **Time:** [to be determined]
19         Defendants.
                                            **Ctrm:** Courtroom B, 15th Floor
20
                                            [Hon. Maria-Elena James]
21

22

23

24

25

26

27

28

                                          -1-                           C080 1427 CW
Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................3

I.   STATEMENT OF ISSUES........................................................................4

II.  STATEMENT OF FACTS........................................................................4

III. ARGUMENT...............................................................................................7

   A. Any alleged fraud or misconduct on the part of Defendants was not willful, in bad faith, nor through fault of their own............................................................7

   B. If Court does in fact determine misconduct on the part of Defendants, said misconduct still does not cause any prejudice to Plaintiff............................................8

   C. Although Defendants deny any wrongdoing during discovery, Plaintiff's claims may still be cured by lesser sanctions if Court determines misconduct............................9

   D. There has been no pattern of deception or discovery abuse on the part of Defendants.............................................................................................10

   E. Public Policy favors disposition of cases on their merits over the public interest in expeditious resolution of litigation and the Court's need to manage its docket.......13

IV.  CONCLUSION...........................................................................................13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anheuser-Busch, Inc. v. Natural Beverage Distributings,* 69 F. 3d 337 (9th Cir. 1995)..................................................................................................13

*Carlucci v. Piper Aircraft Corp.,* 102 F.R.D. 472, 483 (D.C.Fla. 1984)................7

*Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 167 F.R.D. 90 (D.Colo. 1996)....................................................................................................9

*Procter & Gamble Co. v. Haugen,* 179 F.R.D. 622 (D.Utah, 1998)..................12

*U.S. v. Henry,* 983 F.2d at 948 (5th Cir).............................................9, 10

Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

TO ALL PARTIES AND THEIR COUNSEL ON RECORD

PLEASE TAKE NOTICE that Defendants are filing this motion in opposition to Plaintiff's motion for Default Judgment.

This Motion is made on the grounds that Defendants have attempted to comply, in good faith, with all of Plaintiff's discovery requests. Furthermore, any contention by Plaintiffs that Defendant's discovery production has been untimely or insufficient, stands to be a result of the extensiveness and often unreasonable specificity requirements of Plaintiff's requests, and not of any intentional failure on Defendant's part. In addition, the alleged forgery of DOCUMENT 308, was unknown to defendants at the time of its production and was in no way a result of any advice or suggestion by Defendants. See Declarations of Harleen Chopra, Roomy Khan and Sakhawat Khan. Any forgery that may have been committed was done rather by the Khan's assistant, Harleen Chopra, and was done without any knowledge on the part of Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

I  SATEMENT OF ISSUES

The issues here are whether the conduct of Defendants is egregious enough to warrant a default judgment, and thus take away their opportunity to have their day in court. Plaintiff is contending that a default judgment is warranted mostly based upon alleged forgery of a certain Document KHAN 308 along with altered cancelled checks related to said KHAN 308. However, KHAN 308 was actually produced and handled by Harleen Chopra, Defendant's ex-personal assistant, with no knowledge from Defendants as to how the document was produced or who actually signed it. As this alleged fraud could not have been willfully conducted by Defendants, granting a default judgment would be unwarranted in light of Defendant's constant good faith effort in complying with Plaintiff's discovery requests.

II.  STATEMENT OF FACTS

The present suit was filed on March 13, 2008 by Plaintiff Vilma Serralta, alleging that Defendants, Roomy and Sakhawat Khan, failed to pay her lawful wages. In their answer, Defendant's denied the material allegations of Plaintiff's claim.

-4-  C080 1427 CW

Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

On June 18, 2008, Plaintiff served her second request for production, which requested production of documents related to Plaintiff's compensation. At the time of the request, Defendants produced all relevant documents they had available, including payroll account ledgers and summary charts of payments. At the time of the request, the requested cancelled checks were not directly accessible to Defendants due to their misplacement several years prior. *See* Roomy Decl. ¶ 5. Once the request was made, however, Roomy Khan directed her ex-personal assistant, Harleen Chopra, to start looking for the cancelled checks. Although Mrs. Chopra was quite sure the cancelled checks were in the Defendant's home, their exact location was unknown. After several months of searching the Defendant's immense basement, other areas of the home, and endless quantities of boxes, the checks were eventually discovered by Mrs. Chopra on February 17, 2009. Those same checks were produced to Plaintiff on February 18, 2009. *See* Roomy Decl. ¶ 6-7.

Also requested in Plaintiff's second request for production were documents related to Plaintiff's job duties and work hours, from which Defendants produced Bates stamped documents Khan 124 and Khan 125. Plaintiff points out that Roomy Khan, during her first deposition, stated that she was not aware of any other relevant document related to job duties and work hours. However, Plaintiff fails to point out that Roomy later qualified her statement in her deposition that the reason she was not aware of any other documents was because her assistant at the time, Harleen Chopra, was in charge of producing these documents and having the appropriate person sign them. (Roomy Khan Dep. Vol. 1), 70:24 – 71:10. The documents produced at the time of the request, namely Khan 124 and Khan 125, were the documents Mrs. Khan was sure her assistant had completed and which Mrs. Khan had possession. *See* Roomy Decl. ¶ 8-10. Mrs. Khan was not aware of any other documents Mrs. Chopra actually completed and had signed. Although Mrs. Khan had asked Mrs. Chopra to produce and have signed other documents, the documents produced soon after Plaintiff's requests were the ones she actually had confirmation of. *See* Roomy Decl. ¶ 8.

Defendants also produced a certain document related to Plaintiff's second RFP labeled KHAN 308 on March 13, 2009. This document, KHAN 308, was also discovered by Harleen Chopra. Although Mrs. Khan was eventually informed that Mrs. Chopra had discovered KHAN

-5-                C080 1427 CW
Defendant's Motion In Opposition to Plaintiffs' Motion for Default Judgment

308 at the same time of the cancelled checks, Mrs. Khan was not aware of this on February 18, 2009, when the checks were produced. In fact, Mrs. Khan stated in her second deposition that she was not present when Mrs. Chopra supposedly found the cancelled checks and KHAN 308 in the same box. (Roomy Khan dep. Vol. 2) 239:15. The fact is that Mrs. Chopra simply told Mrs. Khan that she had found KHAN 308 in the same box and at the same time as the cancelled checks much after February 18, 2009. See Roomy Decl. ¶ 15. Mrs. Khan took Mrs. Chopra's information to be true, as communicated in her second deposition. Mrs. Khan, however, was not actually present during the discovery of the documents to confirm this statement as true. At the time the cancelled checks were produced, Mrs. Khan had no knowledge of KHAN 308 having been discovered. See Roomy Decl. ¶ 7.

Despite Mrs. Copra's eventual statement that the cancelled checks were discovered at the same time as KHAN 308, Mrs. Chopra did not actually present KHAN 308 to Mrs. Khan until mid-March; which was the first time Mrs. Khan actually knew of its presence. See Roomy Decl. ¶ 11. Defendants, at that point, produced KHAN 308 to Plaintiff on March 13, 2009. Mrs. Khan's statements in her deposition that KHAN 308 was found on the same day as the cancelled checks, rather, reflected what Mrs. Chopra has previously told her, rather than by firsthand knowledge. The reason why Mrs. Chopra did not present KHAN 308 at the time the cancelled checks were presented, is still unknown to Defendants. See Roomy Decl. ¶ 15. Furthermore, neither Defendant ever had firsthand knowledge of the whereabouts of either the original or any copy of KHAN 308. As stated in Roomy Khan's deposition, Mrs. Chopra always had the task of producing and handling this document. (Roomy Khan Dep. Vol. 2) 241:2. Although Mrs. Chopra presented to Mrs. Khan a copy of KHAN 308 just before its production on March 13, 2009, she failed to give Defendants the original of said document. Only in late April did Mrs. Chopra present to Mrs. Khan the original KHAN 308. Mrs. Chopra communicated to Mrs. Khan that she had recently found the original, thus her delay in producing it. See Roomy Decl. ¶ 16.

Also in April, Plaintiff reiterated her request for the "best" copies of KHAN 309-314 and the metadata for KHAN 308 and KHAN 125. However, Defendants regularly communicated to their

-6-    C080 1427 CW
Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

previous attorney that they did not have knowledge of the whereabouts of any "best" copies of Khan 309-314. Rather, the best copies they could find were produced to Plaintiff earlier. Not until early July did Mrs. Chopra come forward with the "best" copies of KHAN 309-314, when she presented them to Mrs. Khan. Mrs. Chopra has never explained the delay in producing these documents. These "best" copies of KHAN 309-314 were produced to Plaintiff July 7, 2009.

As for the metadata of KHAN 308 and KHAN 125, they were discarded on the computer in which they were saved in June, 2007. *See* Roomy Decl. ¶ 19. Defendant's declaration on the matter was produced to Plaintiff in early June. As this declaration did not touch upon the computer in which KHAN 308 and KHAN 125 were created, a corrected declaration is currently being drafted detailing the origin and recycling of that particular computer. Any alleged insufficiency of the previous declaration was due to lack of recollection rather than any willful concealment.

Defendants have attempted in good faith to comply with every request Plaintiff has given them in discovery. The fact that much of the requested documents and information was created several years ago, and that many of the documents were actually handled by the ex-assistant, Harleen Chopra, rather than by Defendants, is why there has been delay in producing some of the requested information. Plaintiff perceives Defendant's responses as willful concealment and deception. However, due to the above mentioned reasons, this is not the case.

## II. ARGUMENT

### A. <u>Any alleged fraud or misconduct on the part of Defendants was not willful, in bad faith, nor through fault of their own.</u>

Very often, Courts refuse to impose sanctions in the absence of willful conduct. Carlucci v. Piper Aircraft Corp., 102 F.R.D. 472, 483 (D.C.Fla. 1984). Similarly, no willful conduct exists here. Plaintiff's motion relies in large part on the alleged forged document, KHAN 308. However, based on the deposition of Roomy Khan, it is clear that neither Defendant actually created KHAN 308 or even handled it before its production to Plaintiff. (Roomy Khan Dep. Vol. 2) 235:17-22; 236:13-22. In fact, as stated in Roomy Khan's first deposition, her ex-assistant, Harleen Chopra,

-7-

C080 1427 CW

Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

1  was the person who actually drafted all documents related to employee's job duties and who would
2  then transfer them to the appropriate party. (Roomy Khan Dep. Vol. 1 ), 70:24 – 71:10  Any
3  suspected fraud or forgery would, therefore, have been committed by the Defendant's assistant, Mrs.
4  Chopra, and not by either of the Defendants.
5       Furthermore, neither Roomy nor Sakhawat Khan had knowledge of any forgery of Khan
6  308, had it actually occurred. *See* Roomy Decl. ¶ 11 and Sakhawat Decl. ¶ 6. As stated above, Mrs.
7  Chopra was in charge of drafting the documents and transferring them over to the person who would
8  sign them. (Roomy Khan Dep. Vol. 1 ), 70:24 – 71:10  and (Harleen Chopra Dep. Vol. 2) 302: 10-
9  15. Defendants did little more than simply review them after they were written and before they
10 were transferred to the party to sign. (Roomy Khan Dep. Vol. 2) 241:2  Therefore, it was not
11 common practice for Defendants to be engaged in conduct that could lead to any type of forgery or
12 fraud with regard to these documents.
13      Although Defendants do not deny, as Plaintiff claims, that terminating sanctions may be
14 imposed when a party has engaged deliberately in deceptive practices that undermine the integrity of
15 judicial proceedings, the Khans have not engaged in deceptive practices DELIBERATELY. If
16 anything, their only fault was to trust the communication of their ex-personal assistant, Harleen
17 Chopra. Defendants have done nothing more than attempt to comply with every request of Plaintiff.
18 In short, granting a default judgment in this case would be very extreme in light of the fact that
19 Defendants have not engaged in any willful spoliation or in bad faith.
20     B.   <u>If Court does in fact determine misconduct on the part of Defendants, said</u>
21          <u>misconduct still does not cause any prejudice to Plaintiff.</u>
22      Courts have decided that if requestors are able to show spoliation, they will likely need to
23 further demonstrate through "concrete evidence" that actual harm resulted from the respondent's
24 misconduct. Gates Rubber Co. v. Bando Chemical Industries, Ltd., 167 F.R.D. 90 (D.Colo. 1996).
25 In these decisions, the trial judge will seek to impose a punishment proportional to the harm
26 suffered, so it is in the requestor's interest to demonstrate the prejudicial effect of unproduced
27 evidence.
28

-8-   C080 1427 CW
Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

1    Simply put, Plaintiff offers no argument in her motion as to any CONRETE prejudice which
2    may have been caused by Defendant's alleged misconduct. Rather, Plaintiff simply enumerates the
3    list of alleged misconduct of Defendants and concludes that it causes prejudice to Plaintiff. (*See*
4    Plaintiff's motion for default judgment, p. 23-24) However, Plaintiff must show CONCRETE
5    evidence that there is prejudice. No such evidence is presented in Plaintiff's motion.
6    A party suffers prejudice if the [opposing party's] actions impair the party's ability to go to
7    trial or threaten to interfere with the rightful decision of the case.' " Henry, 983 F.2d at 948 (quoting
8    Adriana Int'l Corp., 913 F.2d at 1412). Presently, Plaintiff still remains with all the evidence she has
9    requested, with the exception of declarations detailing the circumstances of KHAN 123, 125, and
10   308. However, said declarations are currently being drafted and will be presented to Plaintiff
11   shortly. Even if certain metadata is no longer available, such as the metadata for KHAN 125 and
12   KHAN 308, those documents are still available in other forms for Plaintiff to use at trial.
13   Furthermore, if KHAN 308 was in fact the subject of forgery, this was evidence supporting
14   Defendant's claim; not Plaintiff's. Thus, rather than granting a default judgment, the most severe
15   form of punishment in these cases, all prejudice may be avoided by simply disregarding KHAN 308
16   Plaintiff's ability to go to trial and to argue her case remains intact. The Court's ability to
17   make a rightful decision on the case also remains intact since all requested evidence and documents
18   have been produced. Simply because there has been delay in producing some of the requested
19   documents and because there has been suspected forgery on a document that can be disregarded, is
20   not sufficient reason to deny Defendants their day in court.
21   C.   Although Defendants deny any wrongdoing during discovery, Plaintiff's claims may
22        still be cured by lesser sanctions if Court determines misconduct.
23   Past case law has established that a default judgment is absolutely the most severe sanction
24   available to the Court. In most cases, the adequacy of lesser sanctions must first be determined.
25   (Adriana Int'l Corp., 913 F.2d at 1412-13) In determining whether a district court has properly
26   considered the adequacy of less drastic sanctions before dismissing a party's case, Courts have
27   considered (1) whether the district court explicitly discussed the feasibility of less drastic sanctions
28

-9-                                        C080 1427 CW
Defendant's Motion in Opposition to Plaintiffs' Motion for Default Judgment

1  and explained why such alternate sanctions would be inappropriate; (2) whether the district court
2  implemented alternative sanctions before ordering dismissal; and (3) whether the district court
3  warned the party of the possibility of dismissal before ordering dismissal. (Adriana Int'l Corp., 913
4  F.2d at 1412-13) None of the above options have been exhausted as of yet.

5      The truth is that lesser sanctions would be most appropriate in this present circumstance. At
6  the very least, KHAN 308 may be discarded as evidence, as it is only evidence which supports
7  Defendant's arguments rather than Plaintiff's. In addition, specific jury instructions regarding the
8  suspected forgery and/or fines would also be more than sufficient to avoid prejudice to Plaintiff. A
9  default judgment, however, seems extreme since there is no apparent prejudice to Plaintiff, the
10 alleged misconduct was not a result of any willful conduct by Defendants, and any number of lesser
11 sanctions the Court orders would suffice.

12     D.    There has been no pattern of deception or discovery abuse on the part of Defendants.
13     Plaintiff claims Defendants have engaged in a PATTERN of deception. In her motion,
14 Plaintiff brings up the production of the copies and the originals of the cancelled checks and their
15 alleged alteration, the production of the alleged forged document KHAN 308, the production of the
16 "best" copies of KHAN 309-314, and the metadata for KHAN 308 and 125. The production of the
17 aforementioned documents will be discussed as follows:

18     1) Cancelled Checks

19     As stated in the statement of facts, at the time of Plaintiff's second request for production,
20 the requested cancelled checks were not directly accessible to Defendants due to their misplacement
21 several years prior. *See* Roomy Decl. ¶ 5. The checks were eventually found by Harleen Chopra on
22 February 17, 2009. However, at that time, Mrs. Chopra only presented to Defendants copies of
23 those cancelled checks. Not until late April did Mrs. Chopra come forward with the originals of
24 those cancelled checks. Mrs. Chopra, at this time, has still not given a definitive answer as to why
25 the originals were not produced earlier. Had Defendants known of the existence of the originals
26 before, they would have produced them earlier.

27
28

Furthermore, Defendants were not aware of any alteration of the checks until Plaintiff brought that information forward. Again, when Mrs. Khan asked Mrs. Chopra about any alteration with the cancelled checks, no specific information was given.

### 2) KHAN 308

Plaintiff alleges misconduct due to the fact that KHAN 308 was not produced until after the copies of the cancelled checks, although they were presumably discovered at the same time, and also because KHAN 308 was allegedly forged. However, although Mrs. Chopra eventually told Mrs. Khan that the copies of the cancelled checks were found at the same time as KHAN 308, Mrs. Khan was not aware of the existence of KHAN 308 at the time of the discovery of the checks. Only later did Mrs. Chopra inform Mrs. Khan that she found KHAN 308 at the same time as the cancelled checks. Upon asking Mrs. Chopra about the delay in producing KHAN 308, she did not directly divulge that information. *See* Roomy Decl. ¶ 15.

As for the alleged forgery of KHAN 308, as stated above, Mrs. Chopra was the individual to actually create the document and handle it from its inception. Any forgery which may have occurred, therefore, was not done by Defendants, but rather by Mrs. Chopra. This may also explain the delay in producing KHAN 308, as Mrs. Chopra likely took that time to engage in the alteration. Thus, Defendants had no knowledge of any forgery of KHAN 308.

### 3) KHAN 309-314

Plaintiff alleges misconduct on the part of Defendants due to the fact that the "best" copies of KHAN 309-314 were not produced until July 7, 2009, three months after they were requested. However, as stated above, not until early July did Mrs. Chopra come forward with the "best" copies of KHAN 309-314, when she presented them to Mrs. Khan. Mrs. Chopra has never explained the delay in producing these documents. Not until early July were Defendants aware of the existence of the "best" copies of KHAN 309-314. Mrs. Khan was also not aware of the existence of these "best" copies during her declaration of June 9, 2009. Thus, the delay in producing these documents was not a result of any willful concealment of Defendants.

### 4) Metadata of KHAN 308 and KHAN 125

1     Roomy Khan's most recent declaration submitted to Plaintiff described the recycling of her computer which contained the metadata of KHAN 308 and KHAN 125. Subsequently, Plaintiff determined her declaration to be insufficient due to the fact that she only discussed computers bought starting in 2003, while KHAN 308 was created in 2002. Mrs. Khan, however, is currently drafting a new declaration with her new attorney clarifying this discrepancy. Mrs. Khan wishes to clarify that KHAN 308 and KHAN 125 were created in 2002 on a computer purchased in 2001, which was later recycled in June of 2007.

    Thus, the metadata of Khan 308 and Khan 125 was discarded with the computer well before Plaintiff's labor dispute and before this lawsuit was filed. One factor courts weigh heavily is exactly when the spoliation occurred. Ziegler, Richard F. and Seth A. Stuhl. "Spoliation issues arise in the digital era." National Law Journal 20 (16 February 1998), B09. While not dispositive, respondents are more likely to face tough sanctions if data was lost after the issuance of a protective order. In Procter & Gamble Co. v. Haugen, the court, while imposing monetary sanctions for spoliation of electronic evidence, refused to find bad faith on the respondent's part. It explained that, while the duty to preserve evidence exists independently of a court order, the presence of an order would have provided the basis necessary to judge respondent's conduct from a bad faith perspective. Procter & Gamble Co. v. Haugen, 179 F.R.D. 622 (D.Utah, 1998). The fact that the metadata of KHAN 308 and KHAN 125 was at some point discarded is not influential enough to presume bad faith on the part of Defendants, since the recycling was done prior to the filing of this lawsuit and Plaintiff's dispute with the labor board. Had Defendants known they would need to produce the evidence in a future lawsuit, they would have made sure to preserve said metadata.

    E.   <u>Public Policy favors disposition of cases on their merits over the public interest in expeditious resolution of litigation and the Court's need to manage its docket.</u>

    Courts have established that public policy favors deciding cases on their merits over default judgments when the alleged misconduct does not threaten to interfere with the rightful decision of the case. Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995). While Defendants do not deny that the Court's need to manage its docket and the public interest in

1 | expeditious resolution of litigation does prevail in some cases; this must only be adhered to when
2 | proper litigation is no longer an option due to the misconduct. As stated above, even if the Court
3 | determines that Plaintiff's allegations are true, such alleged misconduct can still be cured with lesser
4 | sanctions. All evidence requested by Plaintiff has been produced either by original or by copy.
5 | Thus, all evidence Plaintiff will need to litigate at trial she has at her disposal. Thus, because the
6 | alleged misconduct of Defendants does not threaten to interfere with the rightful decision of the
7 | case, public policy mandates that the Court allow this case to be decided on its merits.

IV.  **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court deny Plaintiff's motion for default judgment and have this case be decided on its merits.

Dated: August 5, 2009                                  Respectfully Submitted,

LISA E. AGUIAR -- BAR NO. 139897
JONATHAN D. HICKS -- BAR NO. 236981
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax: (408) 287-2583

THOMAS DAMIEN PAMILLA -- BAR NO. 259931
PAUL BENSON MYONG & PAMILLA, LLP
8880 Rio San Diego Drive, Suite 800
San Diego, CA 92108
Phone: (877) 443-7267
Fax: (888) 583-5670

By_____
Thomas Damien Pamilla

Attorneys for Defendants
SAKHAWAT KHAN AND ROOMY KHAN

-13-                                              C080 1427 CW

Defendant's Motion In Opposition to Plaintiffs' Motion for Default Judgment